**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re: | Chapter 11 |
| **AMERICAN UNAGI, INC.,**[1] | Case No. 25-10180 |
| Debtor. | |

**MOTION OF DEBTOR FOR ENTRY OF AN ORDER ON AN INTERIM AND THEN FINAL BASIS: (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO § 364 OF THE BANKRUPTCY CODE; (II) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO § 363 OF THE BANKRUPTCY CODE; (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS; (IV) GRANTING ADEQUATE PROTECTION; (V) GRANTING REQUEST FOR EXPEDITED DETERMINATION AND REQUEST FOR LIMITATION OF NOTICE REGARDING THE FIRST HEARING THEREON; AND (VI) SCHEDULING A FINAL HEARING**

> **This Motion includes a request for an expedited determination pursuant to Local Rule 9013-4 as to the request for interim relief only, with a proposed hearing <u>on October 2, 2025</u>. A statement of the facts and circumstances justifying expedited determination, as required by Local Rule 9013-4, is included herein.**

American Unagi, Inc., the above-captioned debtor and debtor-in-possession (the "**Debtor**"), by and through undersigned proposed counsel, hereby moves this Court (the "**Motion**"), pursuant to §§ 105, 361, 362, 363, 364, and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1, 4001-2, and 9013-1 of the Local Rules of the United States Bankruptcy Court for the District of Maine (the "**Local Rules**"), providing the following relief on an interim basis substantially in the form filed contemporaneously herewith (the "**Interim Order**") and, subsequently, after notice and hearing,

---

[1] The last four digits of American Unagi, Inc.'s federal taxpayer identification number are 5308, and its principal place of business is 186 One Pie Road, Waldoboro, Maine 04572.

on a final basis (the "**Final Order**"):

    (a)    authorizing and approving the Debtor, as borrower, to obtain postpetition financing from Maine Community Bank (in its capacity as prepetition and postpetition lender, the "**DIP Lender**"), as lender, up to the maximum principal amount of **$526,000.00** (the "**DIP Loan**"), subject to the terms and conditions in the Interim Order and Final Order, and the timing of advances as set forth in the Budget (as defined below);

    (b)    authorizing the Debtor to execute and enter into the DIP Loan Documents (as defined below) and to perform such other and further acts as may reasonably be required in connection with the DIP Loan and the DIP Loan Documents;

    (c)    approving, pursuant to § 364 of the Bankruptcy Code, that the DIP Obligations (as defined below) shall have priority over any and all administrative expenses under the Bankruptcy Code and all administrative claims granted pursuant to an order of the Bankruptcy Court, and providing that, subject to the terms of the Interim Order and Final Order, the DIP Obligations shall be immediately secured by valid, binding, continuing, enforceable, fully perfected, and unavoidable first priority security interests in and liens upon the DIP Collateral (as defined below), all subject only to the Carve Out (as defined below);

    (d)    authorizing, pursuant to §§ 361(a) and 363(c) of the Bankruptcy Code, the Debtor to use cash collateral (as such term is defined in § 363(a) of the Bankruptcy Code) (as so defined, the "**Cash Collateral**"), including the proceeds of the DIP Loan, on the terms and conditions set forth in the Interim Order and Final Order, and the budget attached as **Exhibit A** to the Interim Order (such budget, as may be modified or continued from time to time in accordance with the Interim Order and Final Order, the "**Budget**");

    (e)    authorizing the Debtor to grant adequate protection to the Lenders (as defined below) as provided in the Interim Order and Final Order; and

    (f)    scheduling a final hearing (the "**Final Hearing**") to consider entry of the Final Order regarding the relief sought herein and setting related deadlines.

In support of this Motion, the Debtor states as follows:

## JURISDICTION AND VENUE

1.    The United States District Court for the District of Maine (the "**District Court**") has original, but not exclusive, jurisdiction over the Debtor's chapter 11 case pursuant to 28 U.S.C. § 1334(b).  Pursuant to 28 U.S.C. § 157 and Rule 83.6 of the District Court's local rules, the District Court has authority to refer and has referred this proceeding to this Court.

2.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court has constitutional authority to enter final judgment in this proceeding.

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1408, and venue over this proceeding is proper in this district pursuant to 28 U.S.C. § 1409.

## CASH COLLATERAL AND BORROWING DISCLOSURES

4.     Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, the Debtor makes the following disclosures regarding the relief sought in this Motion:

| Category | Disclosure |
|---|---|
| Borrower<br>*Bankruptcy Rule 4001(c)(1)(B)* | American Unagi, Inc. |
| Guarantor<br>*Bankruptcy Rule 4001(c)(1)(B)* | None |
| DIP Lender<br>*Bankruptcy Rule 4001(c)(1)(B)* | Maine Community Bank |
| DIP Loan Commitment<br>*Bankruptcy Rule 4001(c)(1)(B)* | The DIP Loan shall be available in the maximum principal amount of **$526,000**, with the DIP Lender to continue making advances under the DIP Loan after the Petition Date in accordance with the Budget.  As set forth in the RSA (defined below), upon entry of the Interim Order, the DIP Loan shall include the sum of **$150,000** that was advanced by the DIP Lender to the Debtor immediately prior to the Petition Date (the "**Initial Restructuring Loan**").<br><br>All obligations arising under the DIP Loan, including the Initial Restructuring Loan, and including interest and reasonable attorneys' fees of the DIP Lender, are referred to herein as the "**DIP Obligations**." |
| Term<br>*Bankruptcy Rule 4001(b)(l)(B)(iii), 4001(c)(1)(B)* | The DIP Loan shall mature and become payable in full on December 5, 2025, unless extended by the DIP Lender in writing. |
| Conditions of Borrowing<br>*Bankruptcy Rule 4001(c)(1)(B)* | The DIP Loan shall be conditioned upon entry of an order by the Bankruptcy Court approving the terms of the DIP Loan through the Interim Order, and upon execution by the Debtor of typical, commercially reasonable loan documents containing customary protections for DIP lenders and that are reasonably satisfactory to the DIP Lender (the "**DIP Loan Documents**"). |

| Interest Rate<br>*Bankruptcy Rule 4001(c)(1)(B)* | The interest rate as set forth in the applicable loan documents, which such rate is a fluctuating rate equal to the National Prime Rate as published daily in the Wall Street Journal (which rate was 7.25% as of September 25, 2025), plus 0% per annum, with a floor rate of 4.50%, calculated on a 360-day year. |
|---|---|
| Expenses and Fees<br>*Bankruptcy Rule 4001(c)(1)(B)* | The DIP Lender shall be entitled to reasonable attorneys' fees and costs in accordance with the DIP Loan Documents. However, there shall be no pre-payment, origination, or other entry or exit fees under the DIP Loan. |
| Budget<br>*Bankruptcy Rule 4001(c)(1)(B)* | See **Exhibit A** to Interim Order.<br><br>Following the Petition Date and until the DIP Loan is approved on a final basis, the Debtor shall only disburse proceeds of the DIP Loan and Cash Collateral for payment of actual expenses necessary to avoid immediate and irreparable harm. |
| DIP Loan Liens and DIP Collateral<br>*Bankruptcy Rule 4001(c)(l)(B)(i)* | Subject to the Carve Out, the DIP Obligations shall be secured by first priority liens (the "**DIP Liens**") on all of the Debtor's pre-petition and post-petition assets, including all assets that secured the Debtor's prepetition obligations to the DIP Lender as of the Petition Date, other than Avoidance Actions[2] and the proceeds thereof (collectively, the "**DIP Collateral**"). Upon entry of the Interim Order, the DIP Liens shall be valid, binding, enforceable, and fully perfected liens on the DIP Collateral securing the DIP Obligations.<br><br>In addition, subject to the Carve Out, all DIP Obligations shall be treated as an allowed super-priority administrative expense claim under § 364(c)(1) of the Code (the "**Superpriority DIP Claim**"). |
| Name of each entity with a potential interest in Cash Collateral<br>*Bankruptcy Rule 4001(b)(1)(B)(i)* | The DIP Lender holds a security interest in Cash Collateral. The Finance Authority of Maine ("**FAME**") also holds an interest in Cash Collateral. Pursuant to that certain Restructuring Support Agreement among the Debtor, the DIP Lender, and FAME attached hereto as **Exhibit 1** (as amended from time to time, the "**RSA**"), FAME consents to the use of Cash Collateral and the terms of the DIP Loan as set forth herein, including subordination of FAME's direct loan and loan guaranty to the DIP Loan and related liens.<br><br>The DIP Lender and FAME are referred to herein as the "**Lenders**." |

---

[2] As used herein, "**Avoidance Actions**" shall mean the claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code and under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and similar statutes or common law.

| | |
|---|---|
| Purpose for use of Cash Collateral and the DIP Loan<br>*Bankruptcy Rule 4001(b)(1)(B)(iii)* | The Debtor seeks immediate entry of the Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and Local Rule 4001-2. The Debtor has an immediate need for use of the Cash Collateral in the amount and in the manner set forth in the Budget. Use of Cash Collateral on both an interim and final basis is necessary to avoid immediate and irreparable harm to the Debtor and its estate because, without the use of Cash Collateral, the Debtor will not have the funds necessary to maintain and operate its business and assets, to sell or otherwise liquidate its assets, to provide financial information, and to pay other expenses necessary to maximize the value of the Debtor's estate in chapter 11, including payroll, utilities, and administrative expenses. |
| Modification of Automatic Stay<br>*Bankruptcy Rule 4001(b)(1)(B)(iii)* | The Interim Order contains a modification of the automatic stay following an Event of Default as to available remedies. |
| Material terms, including duration of the use of Cash Collateral and the proceeds of the DIP Loan<br>*Bankruptcy Rule 4001(b)(1)(B)(iii)* | The Debtor shall be authorized to use the advances under the DIP Loan and Cash Collateral in accordance with the initial Budget attached to the Interim Order as **Exhibit A** and subsequent Budgets to be filed at later dates according to Orders of this Court.<br><br>The Debtor's use of Cash Collateral shall be conditioned upon the Debtor's compliance with the Budget, with the understanding that the timing of revenue and expenses may vary from projections, and with the allowed variance that the Debtor's aggregate disbursements shall be limited to 110 percent (110%) of projected aggregate disbursements in the Budget. |
| Liens, cash payments, or other adequate protection to be provided to each entity with an interest in Cash Collateral<br>*Bankruptcy Rule 4001(b)(1)(B)(iii)* | Pursuant to the Interim Order, and each subject to the Carve Out, the Lenders shall be provided with adequate protection to the extent of any diminution after the Petition Date in their respective interest in Cash Collateral as of the Petition Date, including the following:<br><br>(i) Through an increase in Cash Collateral from the Petition Date during the relevant time period, as reflected in the Budget;<br><br>(ii) Through the Adequate Protection Liens and Continuing Liens (as defined below); and<br><br>(iii) To the extent the Adequate Protection Liens and Continuing Liens are insufficient to cover the Adequate Protection Obligations (as defined below) in their entirety, the remaining, unsatisfied Adequate Protection Obligations due to the Lenders shall constitute allowed administrative claims against the Debtor to the extent provided by § 507(b) of the Bankruptcy Code. |

5

| | |
|---|---|
| Carve Out<br>*Bankruptcy Rule 4001(b)(1)(B)(iii)* | Notwithstanding anything to the contrary in the Interim Order or Final Order, all liens and claims, including, without limitation, the DIP Liens granted herein and the DIP Obligations and the prepetition claims of the Lenders, shall be subject and subordinate to any claim for U.S. Trustee Fees pursuant to 28 U.S.C. § 1930 and allowed professional fees incurred by proposed counsel for the Debtor (Bernstein Shur Sawyer & Nelson, PA) up to the maximum amount of **$150,000.00**, Ripcord Consulting up to the maximum amount of **$35,000.00**, and the broker retained by the Debtor up to the amount of its allowed commission (Ripcord Consulting, Bernstein Shur Sawyer & Nelson, PA, and such retained sales broker, together, the "**Professionals**") (the items described above shall be referred to herein collectively as the "**Carve Out**"). The Carve Out shall be senior to any lien, security interest, mortgage, or other charge held or asserted by the Lenders, which liens are perfected and unavoidable without any filing or other action by the Professionals or the U.S. Trustee. Further, in accordance with the Carve Out, once a payment is disbursed to the applicable Professional under the Budget (the "**Budgeted Professional Fee Payments**"), such Budgeted Professional Fee Payment shall constitute a dollar for dollar payment toward satisfying the Carve Out and shall no longer be subject to any liens, claims, or interests of the DIP Lender, FAME, or any other party and shall be held by such Professional exclusively for the payment of allowed compensation of such Professional in these cases, <u>provided</u> that in the event the Budgeted Professional Fee Payments exceed the amount of allowed compensation as to the applicable Professional, such unused fund (the "**Returned Professional Fees**") shall be returned by the applicable Professional to the Debtor's estate and, upon return to the Debtor, the liens of the Lenders shall automatically reattach to such Returned Professional Fees. |
| Events of Default<br>*(Bankruptcy Rule 4001(b)(1)(B)(iii))* | The following shall be events of default (each, an "**Event of Default**") as to the DIP Loan and use of cash collateral unless waived by the Lenders in writing in its sole discretion: (i) as to the DIP Lender only, failure by the Debtor to pay principal, interest, or any other amounts when due under the DIP Loan; (ii) the chapter 11 case is dismissed or converted to a chapter 7 case, or a trustee or examiner with expanded powers is appointed, without the prior written consent of the Lenders; (iii) the Debtor uses the proceeds of the DIP Loan or Cash Collateral in violation of the Budget (subject to timing and other permitted variances); (iv) the failure to satisfy any of the Sale Milestones (as defined below) without the written consent of the Lenders; (v) the Debtor grants or consents to any lien equal or senior to the liens of the Lenders (other than the DIP Liens); or (vi) the occurrence of any other Event of Default under the RSA that remains uncured for a period of five (5) |

|  | business days after the receipt of written notice of such breach.<br><br>If any Event of Default shall have occurred and be continuing, the Lenders may, by written notice to the Court, the Debtor, and the United States Trustee take any or all of the following actions: (1) as to the DIP Lender only, declare the DIP Loan to be suspended or terminated, whereupon the DIP Loan shall be suspended or terminated and the DIP Lender shall have no obligation to make further advances; (2) as to the DIP Lender only, declare the DIP Obligations to be immediately due and payable, without presentment, demand, protest, or (except as provided above) other notice of any kind, all of which are hereby expressly waived by the Debtor; or (3) terminate the Debtor's ability to use the proceeds of the DIP Loan and Cash Collateral, subject to the Carve Out (provided that the Debtor and any other party shall have the right to seek relief from the Bankruptcy Court to continue the use of Cash Collateral, including on an expedited or emergency basis, with all objections to such relief reserved).<br><br>Unless otherwise agreed by the Lenders, the Debtor shall comply with the following milestones as set forth in the RSA (collectively, the "**Sale Milestones**"):<br><br>(i)   The Bankruptcy Court shall have entered an order approving the Bid Procedures (as defined in the RSA) no later than ten (10) days after the Petition Date, with qualified bids due no later than November 18, 2025.<br><br>(ii)  The Debtor shall conduct an auction under the Bid Procedures on or before November 19, 2025.<br><br>(iii) The Bankruptcy Court shall have entered an order approving and authorizing the Sale Transaction (as defined in the RSA) no later than November 20, 2025.<br><br>(iv)  The Sale Transaction has closed no later than December 5, 2025. |
|---|---|
| Amount of debt encumbering the Cash Collateral as of September 23, 2025 (exclusive of collection costs; terms as defined below) | **DIP Lender**: Term Loan - $2,543,403.50<br>          First LOC - $2,342,216.61<br>          Second LOC - $596,862.42<br><br>**FAME**: $967,401.59 |
| Reservation of Rights<br>*(Bankruptcy Rule 4001(b)(1)(B)(iii))* | Except as provided in the Interim Order or Final Order, neither the Debtor nor the Lenders waive any of their rights under the Bankruptcy Code, any applicable law, or the relevant transaction documents. |

| | |
|---|---|
| Waivers/Additional Terms | **Subject to the Final Order, the Debtor shall waive rights of surcharge as to the Lenders under § 506(c) of the Bankruptcy Code and waive the right to assert the doctrine of marshaling relating to the Lenders.  Further, all parties are advised that the Final Order may contain stipulations, waivers, releases, and other terms subject to special notice under the Local Rules, as set forth below and in the proposed Interim Order filed herewith.** |

## General Background

5.      Contemporaneously hereto (the "**Petition Date**"), the Debtor commenced its chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.

6.      The Debtor continues to operate its business and manage its property as debtor and debtor-in-possession pursuant to §§ 1007(a) and 1108 of the Bankruptcy Code.  To date, no operating trustee, examiner, or statutory committee has been appointed in the case by the Office of the United States Trustee.

7.      The Debtor is a Waldoboro, Maine-based startup that is the only U.S. producer and processor of American eel.  The Debtor grows and sells live and value-added eel products to restaurants, other consumers, and distributors throughout the world.  The business began in 2014 through raising a handful of baby eels to adult size, and in 2022, the Debtor completed construction of a multi-million dollar, 27,000-square-foot facility at the Waldoboro Business Park.  The Debtor's aquaculture systems facility is the first in the United States to grow Maine eels to market size.  The Debtor works with licensed harvesters in Maine, one of only two U.S. states with an elver fishery.  This provides a consistent market for local fishermen and ensures the eels come from a well-managed wild stock.

## Summary of Interests in Cash Collateral

8.    **Maine Community Bank**.  On or about August 26, 2021, the DIP Lender made to the Debtor: (a) that certain construction term loan (Loan A) in the original principal amount of **$2,500,000.00** (the "**Term Loan**"); and (b) that certain line of credit loan (Loan B) in the maximum principal amount of **$2,200,000.00** (the "**First LOC**").  The Term Loan and the First LOC are secured by first and second priority liens, respectively, on all or substantially all of the Debtor's assets, including Cash Collateral.  Additionally, on or about March 22, 2023, the DIP Lender made to the Debtor that certain additional line of credit loan in the maximum principal amount of **$575,000.00** (the "**Second LOC**"), secured by a fourth lien on all or substantially all of the Debtor's assets, including Cash Collateral.

9.    **FAME**.  On or about August 26, 2021, FAME made to the Debtor that certain economic recovery loan in the maximum principal amount of **$1,000,000.00**, secured by a third priority lien on all or substantially all of the Debtor's assets, including Cash Collateral.  Additionally, FAME provided a 50% pro rata guarantee to the DIP Lender related to the First LOC.

**The Debtor's Need for the Use of Cash Collateral and Post-Petition Borrowing**

10.    As reflected in the Budget, the Debtor has an immediate and critical need for the use of Cash Collateral in the earliest days of the chapter 11 case and beyond.  Access to the use of Cash Collateral will allow the Debtor to fund necessary and imminent expenses required for the Debtor to maintain operations, as well as for the Debtor to fund other necessary expenses in chapter 11, such as employee payroll, independent contractor obligations, utility services, and other operating costs, which the Debtor believes will preserve and maximize the value of the estate.

11.    The Debtor commenced this chapter 11 case to maximize the value of its estate for the benefit of all parties in interest.  Prior to the Petition Date, the Debtor explored a range of options to address its ongoing challenges related to maintaining sufficient cash flow to satisfy its

debt and operational obligations. To complement its cash flow from operations, the Debtor sought

out a variety of funding options to provide necessary liquidity both before and after the Petition

Date, including to fund general operating expenses. Ultimately, the Debtor and the DIP Lender,

with the involvement and consent of FAME, negotiated the RSA and the DIP Loan to provide that

liquidity to facilitate a going-concern sale process.

12.     The DIP Loan was thoroughly evaluated by the Debtor and its advisors, and the

DIP Loan was the subject of arm's-length and good faith negotiations before the Petition Date,

with both parties represented by counsel. The Debtor, therefore, submits that the DIP Loan will:

(a) ensure the continued, uninterrupted operation of its businesses as the Debtor pursues a value-

maximizing chapter 11 process; (b) assure the Debtor's customers, employees, counterparties,

utilities, and business partners that the Debtor is well-capitalized during the pendency of the

chapter 11 case and will continue to meet its postpetition obligations; and (c) make available

sufficient funding for the Debtor to pay necessary expenses incurred in connection with

administering the chapter 11 case.

## **RELIEF REQUESTED**

13.     The Debtor requests entry of the Interim Order and, after notice and hearing, the

Final Order, granting the relief sought herein.

## **BASIS FOR RELIEF**

### I.     **This Court Should Authorize the Debtor to Obtain Postpetition Financing and Grant the DIP Liens and other Rights and Privileges to the DIP Lender.**

14.     Bankruptcy courts have authority to permit debtors-in-possession to obtain

postpetition financing pursuant to § 364 of the Bankruptcy Code. Of relevance here, § 364(c)

provides that if the debtor-in-possession "is unable to obtain unsecured credit allowable under

section 503(b)(1) … as an administrative expense," the court may authorize

the obtaining of credit or the incurring of debt—

> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

> (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).  Further, § 364(d) provides that after notice and hearing, a bankruptcy court

may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—

> (A) the trustee is unable to obtain such credit otherwise; and

> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).  In evaluating proposed postpetition financing under § 364 of the

Bankruptcy Code, courts perform a qualitative analysis and often consider various factors,

including whether:

> (a)  unencumbered credit or alternative financing without superpriority status is available to the debtor;

> (b)  the credit transactions are necessary to preserve assets of the estate;

> (c)  the terms of the credit agreement are fair, reasonable, and adequate;

> (d)  the proposed financing agreement was negotiated in good faith and at arm's-length and entry thereto is an exercise of sound and reasonable business judgment and in the best interest of the debtors' estate and their creditors; and

> (e)  the proposed financing agreement adequately protects prepetition secured creditors.

See, e.g., In re Los Angeles Dodgers LLC, 457 B.R. 308, 312 (Bankr. D. Del. 2011); In re Aqua

Assoc., 123 B.R. 192 (Bankr. E.D. Pa. 1991).

15.     For the reasons discussed herein (as may be supported by evidence at a hearing on this Motion, as necessary), the Debtor submits that it satisfies the standards required to access postpetition financing under §§ 364(c) and 364(d) of the Bankruptcy Code.

16.     First, in demonstrating that credit is not available without the protections afforded by § 364(c) or 364(d) of the Bankruptcy Code, a debtor need only make a good faith effort.  See, e.g., In re Snowshoe Co., 789 F.2d 1085, 1088 (4th Cir. 1986) (holding "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable"). Moreover, where few lenders likely can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing."  In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd sub nom., Anchor Sav. Bank FSB v. Sky Valley, Inc., 99 B.R. 117, 120 n.4 (N.D. Ga. 1989).  Given its current financial condition, financing arrangements, and debt and capital structure (including the prepetition liens held by the Lenders), the Debtor does not believe it could identify actionable alternative sources of financing other than that offered by the DIP Lender on terms more favorable than those under the DIP Loan, and the Debtor is not able to obtain unsecured credit allowable as an administrative expense under § 503(b)(1) of the Bankruptcy Code.  Prior to agreeing to the DIP Loan, the Debtor sought out additional financing sources, including through other existing lenders and investors; those efforts did not result in an actionable financing source.  Accordingly, the Debtor submits that, as is customary in these situations, similar credit is not available to the Debtor without the liens sought through the Interim Order.

17.     Second, as a debtor-in-possession, the Debtor has a fiduciary duty to protect and maximize the value of its estate.  See In re Mushroom Transp. Co., 382 F.3d 325, 339 (3d Cir. 2004).  The DIP Loan, if approved, will provide working capital critical to fund the Debtor's day-

to-day operations, expenses, and the chapter 11 case, which will provide a path for the Debtor to execute its restructuring strategy.  Without access to the DIP Loan, the Debtor would experience cash shortfalls after the Petition Date almost immediately, which would result in immediate and irreparable harm to the business and deplete the going-concern value of such business and assets. The Debtor also would face challenges in administering the chapter 11 case without the liquidity provided by the DIP Loan.  The Debtor's ability to maintain business relationships with its employees, vendors, suppliers, utilities, and customers, to satisfy other working capital and operational needs, and to otherwise finance its operations during the chapter 11 case is essential to the Debtor's continued viability and to ensure a value-maximizing process.

18.     Third, in considering whether the terms of postpetition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and the proposed lender.  See In re L.A. Dodgers, 457 B.R. at 312 (approval of debtor-in-possession financing requires terms that are "fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender"); In re Farmland Indus., Inc., 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003) (although many of the terms favored the lenders, "taken in context, and considering the relative circumstances of the parties," the court found them to be reasonable); Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Elingsen McLean Oil Co., Inc.), 65 B.R. 358, 365 n.7 (W.D. Mich. 1986) (recognizing a debtor may have to enter into "hard bargains" to acquire funds for its reorganization).  Here, given the urgent need of the Debtor to obtain financial stability for the benefit of all parties in interest, the Debtor submits that the terms of the DIP Loan (including the DIP Collateral and interest rate) are fair, appropriate, reasonable, and in the best interests of the Debtor, its estate, and its creditors.  The DIP Loan, moreover, was negotiated extensively by the Debtor and the DIP Lender, in good faith and at

13

arm's-length as required by § 364(e) of the Bankruptcy Code, with all parties represented by counsel. The Debtor, therefore, believes that this requirement is satisfied.

19.     Fourth, a debtor's decision to enter into a postpetition lending facility under § 364 of the Bankruptcy Code is governed by the business judgment standard. See In re Trans World Airlines, Inc., 163 B.R. 964, 974 (Bankr. D. Del 1994) (noting that the interim loan, receivable facility, and asset based facility were approved because they "reflect[ed] sound and prudent business judgment [were] reasonable under the circumstances and in the best interests of TWA and its creditors"); Ames Dep't Stores, Inc., 115 B.R. at 40 ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest"). Courts grant a debtor-in-possession considerable deference in acting in accordance with its business judgment in obtaining postpetition secured credit, so long as the agreement to obtain such credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code. See, e.g., In re L.A. Dodgers, 457 B.R. at 313 ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."). Here, the Debtor submits that entry into the DIP Loan is consistent with the exercise of the Debtor's reasonable business judgment, including the Debtor's careful analysis with its advisors regarding its liquidity needs during the case and available sources of cash.

20.     Fifth, the Debtor submits that the DIP Lender should be deemed a good-faith lender under the Bankruptcy Code. Specifically, § 364(e) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith,

whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).  Section 364(e) protects a good-faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal.  Here, the DIP Loan is the result of: (i) the Debtor's reasonable judgment that the DIP Lender provided the best postpetition financing alternative available under the circumstances; and (ii) extended arm's-length, good-faith negotiations between the Debtor and the DIP Lender (and their respective counsel).  The Debtor submits that the terms and conditions of the DIP Loan are reasonable under the circumstances, and the proceeds of the DIP Loan will be used only for purposes that are permissible under the Bankruptcy Code, as more particularly set forth in the Budget.  Accordingly, the Debtor requests that this Court find that the DIP Lender is a "good faith" lender within the meaning of § 364(e) of the Bankruptcy Code and is entitled to all of the protections afforded by that section.

## II.    **This Court Should Authorize the Debtor to Use Cash Collateral and Grant Adequate Protection and Related Rights to the Lenders.**

21.    To the extent the DIP Lender's and FAME's consent to the use of the DIP Loan proceeds and Cash Collateral is not sufficient to use such proceeds, the Debtor seeks authority to use the proceeds in accordance with the Budget to fund critical and necessary expenses (subject to permitted timing and other variances).

22.    Section 541(a) provides that the "commencement of a case . . . creates an estate" that is comprised of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case" and "[a]ny interest in property that the estate acquires after the commencement of the case."  11 U.S.C. § 541(a).  Section 362(a) provides that "a petition filed

under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—(3)

any act to obtain possession of property of the estate or of property from the estate or to exercise

control over property of the estate." 11 U.S.C. § 362(a)(3).

23.     Section 363(a) of the Bankruptcy Code provides the following definition of cash

collateral:

> . . . cash, negotiable instruments, documents of title, securities, deposit accounts, or
> other cash equivalents whenever acquired in which the estate and an entity other
> than the estate have an interest and includes the proceeds, products, offspring, rents,
> or profits of property and the fees, charges, accounts or other payments for the use
> or occupancy of rooms and other public facilities in hotels, motels, or other lodging
> properties subject to a security interest as provided in section 552(b) of this title,
> whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

24.     Section 363(c)(2) of the Bankruptcy Code provides that a debtor may use cash

collateral as long as: (a) each entity that has an interest in such cash collateral consents; or (b) the

bankruptcy court, after notice and a hearing, authorizes such use, sale, or lease in accordance with

the provisions of the section.  See 11 U.S.C. § 363(c)(2).  Section 363(e) provides, in turn, that "on

request of an entity that has an interest in property . . . proposed to be used, sold or leased, by the

trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as

is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).

25.     Section 362(d)(1) of the Bankruptcy Code provides for adequate protection in

property due to the imposition of the automatic stay.  See 11 U.S.C. § 362(d)(1).  Although § 361

provides examples of forms of adequate protection, such as granting replacement liens and

administrative claims, courts must decide what constitutes sufficient adequate protection on a case-

by-case basis.  See Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev.

Grp., Inc.), 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate

protection is made on a case by case basis."); In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("[T]he determination of adequate protection is a fact-specific inquiry . . . left to the vagaries of each case . . . .") (citation and quotation omitted).  The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use after commencement of the bankruptcy case.  See In re Carbone Cos., 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral); In re Cont'l Airlines, Inc., 154 B.R. 176, 180-81 (Bankr. D. Del. 1993) (adequate protection for use of collateral under § 363 is limited to use-based decline in value).

> **A.**     **Adequate Protection Obligations and Liens, Superpriority Claims, and Other Protections**

26.     As adequate protection for the Debtor's use of Cash Collateral, as well as to provide adequate protection based on any newly incurred postpetition obligations under the DIP Loan that might give rise to an adequate protection claim of FAME, and pursuant to Bankruptcy Code §§ 361, 363(c)(2), 363(e), and § 364(d) (as applicable), the Lenders shall be granted, solely to the extent of any diminution in the value of DIP Lender's or FAME's respective interests in Cash Collateral or other property of the estate from and after the Petition Date (such diminution in value after the Petition Date for each's interests, the "**Adequate Protection Obligations**"), liens on all assets of the Debtor and its estate (other than the proceeds of Avoidance Actions), subject to the Carve Out, all which shall exist in the same order of priority that existed as of the Petition Date between the Lenders (but all junior to the DIP Liens and the Carve Out) (the "**Adequate Protection Liens**").

27.     In addition to the Adequate Protection Liens, pursuant to § 552 of the Bankruptcy Code, the Lenders shall continue to hold liens, rights as assignee, and/or security interests in any

and all property of the Debtor to the same extent and validity, and in the same priority, as the Lenders held liens, rights as assignee, and/or security interests in the Debtor's assets at the Petition Date (the "**Continuing Liens**").

28.    The Continuing Liens and the Adequate Protection Liens shall be valid, binding, enforceable, and fully perfected without the necessity of the execution, filing, or recording of security agreements, pledge agreements, financing statements, or other agreements.

29.    In addition, as further adequate protection, to the extent the Adequate Protection Liens are insufficient to cover the Adequate Protection Obligations in their entirety, the remaining, unsatisfied Adequate Protection Obligations due to the DIP Lender or FAME shall constitute allowed administrative claims against the Debtor to the extent provided by § 507(b) of the Bankruptcy Code, subject to the Carve Out.

30.    **In the Final Order, the Debtor, on behalf of itself and its estate, intends to stipulate and agree to the certain provisions otherwise restricted by LBR 4001-2: (a) acknowledging the amount of the Lenders' claims; (b) acknowledging the validity, perfection, extent, and non-avoidability of the Lenders' liens; (c) waiving the right to surcharge the Lenders' collateral under § 506(c) of the Bankruptcy Code; (d) waiving the right to assert the doctrine of marshaling as to the Lenders; and (e) waiving the right to assert the "equities of the case" doctrine as to the Lenders under § 552(b) of the Bankruptcy Code.**

## EXPEDITED DETERMINATION OF INTERIM APPROVAL

31.    Bankruptcy Rules 4001(b)(2) and 4001(c)(2) provide that a final hearing on a motion to use cash collateral or obtain credit, respectively, may not be commenced earlier than fourteen (14) days after the service of such motion.  Upon request, however, the court may conduct a preliminary, expedited hearing on the motion and authorize the use of cash collateral and the

obtaining of credit on an interim basis "to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2), (c)(2).  Pursuant to Local Rule 9013-4, the Debtor seeks expedited determination for use of Cash Collateral on an interim basis, as it has an immediate and critical need for the use of Cash Collateral in the earliest days of the chapter 11 case and beyond.

32.    The Debtor believes that all or substantially all of its available cash on the Petition Date constitutes Cash Collateral.  Access to the DIP Loan and the use of Cash Collateral is necessary for the Debtor to fund expenses required for the Debtor to maintain operations, as well as for the Debtor to fund other necessary expenses in chapter 11, such as employee payroll, utility services, and other operating costs (including purchasing new inventory and paying for services critical to business operations), which the Debtor believes will preserve and maximize the value of the estate.  Accordingly, the Debtor seeks an expedited hearing on this Motion so that it can maintain its operations without any interruption.

33.    The Debtor is unable to continue its business operations without the ability to use Cash Collateral and access the DIP Loan in accordance with the Budget and will suffer immediate and irreparable harm to the detriment of all creditors and other parties in interest absent such relief. Moreover, the Debtor's ability to borrow under the DIP Loan and finance its operations through the use of Cash Collateral is vital to the preservation and maintenance of the value of the Debtor's assets.  The Debtor, therefore, submits that expedited determination of the interim relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor, its estate, and its creditors, including by disrupting the Debtor's ability to pay necessary expenses incurred in connection with administering the chapter 11 case (as set forth in the Budget).  **The Debtor, therefore, requests an expedited hearing on the interim relief sought in this Motion on**

19

**October 2, 2025**.[3]

## REQUEST FOR FINAL HEARING AND RELATED DEADLINES

34.     Pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2), the Debtor requests that this Court set a date for a Final Hearing on the Motion that is as soon as practicable, but in no event later than fourteen (14) days following the Petition Date, and fix related deadlines before the Final Hearing, as set forth in the Interim Order.

## BANKRUPTCY RULE 6003 HAS BEEN SATISFIED AND BANKRUPTCY RULE 6004 SHOULD BE WAIVED

35.     Certain aspects of the relief requested in the Motion may, if granted, be subject to Bankruptcy Rule 6003.  Pursuant to Bankruptcy Rule 6003, a court may grant such relief if it is necessary to avoid immediate and irreparable harm.  The Debtor submits that the facts set forth herein demonstrate that the relief requested is necessary to avoid immediate and irreparable harm to the Debtor, and, thus, Bankruptcy Rule 6003 has been satisfied.  Additionally, to the extent that any aspect of the relief sought herein constitutes a use of property under § 363(b) of the Bankruptcy Code, the Debtor seeks a waiver of the 14-day stay under Bankruptcy Rule 6004(h).  As described above, the relief that the Debtor seeks in this Motion is immediately necessary in order for the Debtor to be able to continue to operate its business and preserve the value of its estate. Accordingly, the Debtor submits that a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h) is appropriate.

## RESERVATION OF RIGHTS

36.     Except to the extent set forth in the Interim Order, nothing contained herein is or

---

[3] In the event that this case is assigned to the Portland court location, the Debtor respectfully requests that the October 2, 2025 hearing be scheduled for the morning of October 2 due to scheduled hearings at 1:00 PM with the Bangor court in which undersigned counsel have pending matters.  If this case is assigned to the Bangor court location, then the Debtor proposes to schedule first-day matters at the standing 1:00 PM hearing time.

should be construed as: (a) an admission as to the validity of any claim against the Debtor or the existence of any lien against the Debtor's property; (b) a waiver of the Debtor's rights to dispute any claim or lien on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim would constitute an allowed claim; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to § 365 of the Bankruptcy Code; or (f) a limitation on the Debtor's rights under § 365 of the Bankruptcy Code to assume or reject any executory contract with any party.  Nothing contained in the Interim Order will be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid, except to the extent otherwise ordered.

## LIMITED NOTICE

37.    Considering the request for expedited determination, notice via regular mail would not provide sufficient notice of an expedited hearing on this Motion to parties in interest, and providing notice through overnight mail to all parties in interest would be burdensome and costly to the bankruptcy estate.

38.    The Debtor requests limited notice and proposes serving notice of this Motion and of any expedited hearing thereon via e-mail, telephone, or overnight mail, if necessary, on the following parties: (a) the United States Trustee; (b) the Debtor's secured creditors or, if applicable, to counsel representing them; (c) the top twenty (20) non-insider unsecured creditors of the Debtor or, if applicable, to counsel representing such holders; (d) applicable federal and state taxing authorities; and (e) any attorney of record or party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the circumstances of the Debtor's chapter 11 case and the nature of the relief sought herein, the Debtor submits that no further notice of this Motion or of an expedited hearing thereon is required.

39.    The Debtor has made and will make a good faith effort to advise all affected parties

21

of the time and date of the hearing.

### **CONCLUSION**

WHEREFORE, the Debtor respectfully requests that this Court enter the Interim Order and

then the Final Order, granting the relief requested in the Motion and such other and further relief

as this Court deems fair and appropriate.


Dated:    September 29, 2025                    Respectfully submitted,
                                                **BERNSTEIN, SHUR, SAWYER &**
                                                **NELSON, P.A.**

                                                */s/ D. Sam Anderson*
                                                D. Sam Anderson, Esq.
                                                Adam R. Prescott, Esq.
                                                100 Middle Street
                                                PO Box 9729, Portland, Maine 04104
                                                Telephone: (207) 774-1200
                                                Facsimile: (207) 774-1127
                                                sanderson@bernsteinshur.com
                                                aprescott@bernsteinshur.com

                                                *Proposed Counsel to the Debtor and Debtor in*
                                                *Possession*