**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re: <br><br> **AMERICAN UNAGI, INC.,**[1] <br><br> Debtor. | Chapter 11 <br><br> Case No. 25-10180 |

**INTERIM ORDER: (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO § 364 OF THE BANKRUPTCY CODE; (II) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO § 363 OF THE BANKRUPTCY CODE; (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS; (IV) GRANTING ADEQUATE PROTECTION; AND (V) SCHEDULING A FINAL HEARING**

This matter is before this Court upon the above-referenced motion [Dkt. No. ___] (the "**Motion**") filed by the Debtor[2] requesting entry of an Order (this "**Interim Order**"), pursuant to §§ 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Local Rules 2002-1, 4001-2, and 9013-1, authorizing the relief set forth in the Motion; and due and sufficient notice under the circumstances of the Motion and the interim hearing on the Motion (the "**Interim Hearing**") having been provided by the Debtor; and the Interim Hearing having been held; and upon consideration of the Motion and the record at the Interim Hearing; and it appearing that approval of the Interim Order is necessary to avoid immediate and irreparable harm pending the Final Hearing and is otherwise fair and reasonable and in the best interests of the Debtor, its estate, and parties in interest, and is essential for the continued preservation of the Debtor's business; and with the consent of the Lenders; and after

---

[1] The last four digits of American Unagi, Inc.'s federal taxpayer identification number are 5308, and its principal place of business is 186 One Pie Road, Waldoboro, Maine 04572.

[2] Capitalized terms used, but not otherwise defined in this Interim Order, shall have the meaning ascribed to such terms in the Motion.

due deliberation and consideration and good and sufficient cause appearing therefor;

**IT IS HEREBY FOUND THAT**:

A. On the Petition Date, the Debtor commenced this chapter 11 case in the Bankruptcy Court.

B. The Debtor is continuing to manage its properties as debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

C. No request for the appointment of an operating trustee or examiner has been made in this case.

D. The Bankruptcy Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

E. The Debtor's business has an immediate need to borrow under the DIP Loan and to use Cash Collateral in order to have adequate liquidity to provide for, among other things, the orderly continuation of the operation of its business, to maintain business relationships with vendors, suppliers, and customers, to make payroll, and to satisfy other working capital and operational, financial, and general corporate needs. The access of the Debtor to sufficient working capital and liquidity through the incurrence of new indebtedness from borrowed money and other financial accommodations and use of such funds is vital to the preservation and maintenance of the going concern value of the Debtor and to the success of this case.

F. Failure to grant the relief in this Interim Order would result in immediate and irreparable harm to the Debtor, its estate, and its creditors.

G. The Debtor has been unable to obtain sufficient unsecured credit solely under § 503(b)(1) of the Bankruptcy Code as an administrative expense, and the Debtor is unable to

2

obtain credit on terms equal to or more favorable than those under the DIP Loan.

H. New credit is unavailable to the Debtor without granting the DIP Lender the security interests, superpriority administrative claims, and other rights and protections as provided herein.

I. The terms of the DIP Loan were negotiated in good faith and at arm's length, and the DIP Loan Documents shall not be affected by any subsequent reversal, modification, vacatur, or amendment of this Interim Order or any other order, as provided in § 364(e) of the Bankruptcy Code. Each of the Debtor and the DIP Lender has acted in good faith in, as applicable, negotiating, consenting to, and in agreeing to provide the post-petition financing arrangements contemplated by this Interim Order and the DIP Loan Documents, and the reliance of each of foregoing parties on the assurances referred to above is in good faith.

J. The terms of the DIP Loan are the best available under the circumstances, reflect the Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

K. Good cause exists to authorize the Debtor and the DIP Lender to enter into the DIP Loan and the DIP Loan Documents, including, but not limited to, because entry of this Interim Order will minimize disruption of the Debtor as a "going concern," and the DIP Loan is in the best interest of the Debtor, its creditors, and its estate.

L. **THE DEBTOR, ON BEHALF OF ITSELF AND ITS ESTATE, STIPULATES AND AGREES TO THE FOLLOWING AS TO THE DIP LENDER (PROVIDED THAT SUCH STIPULATIONS SHALL NOT BE EFFECTIVE OR BINDING ON ANY PARTY (INCLUDING THE DEBTOR AND ITS ESTATE) UNTIL ENTRY OF THE FINAL ORDER):**

    (i)    As of September 23, 2025, the Debtor was indebted to the DIP Lender in the following amounts (exclusive of collection costs): (x) Term Loan - **$2,543,403.50**, (y) First LOC - **$2,342,216.61**, and (z) Second LOC - **$596,862.42**; and

    (ii)    Prior to the Petition Date, to secure the Term Loan, the First LOC, and the Second LOC, the Debtor granted to the DIP Lender (in its capacity as prepetition lender), and the DIP Lender held, valid, binding, perfected, and non-avoidable first, second, and fourth priority liens, respectively, on all of the Debtor's property as existed immediately prior to the Petition Date, including Cash Collateral.

M.    **THE DEBTOR, ON BEHALF OF ITSELF AND ITS ESTATE, STIPULATES AND AGREES TO THE FOLLOWING AS TO FAME (PROVIDED THAT SUCH STIPULATIONS SHALL NOT BE EFFECTIVE OR BINDING ON ANY PARTY (INCLUDING THE DEBTOR AND ITS ESTATE) UNTIL ENTRY OF THE FINAL ORDER):**

    (i)    As of September 23, 2025, the Debtor was indebted to FAME in the amount of **$967,401.59** (exclusive of collection costs); and

    (ii)    Prior to the Petition Date, to secure FAME's direct loan, the Debtor granted to FAME, and FAME held, valid, binding, perfected, and non-avoidable third priority liens on all of the Debtor's property as existed immediately prior to the Petition Date, including Cash Collateral.

N.    **Subject to entry of the Final Order, the Debtor shall waive rights of surcharge as to the Lenders under § 506(c) of the Bankruptcy Code and waive the right to assert the doctrine of marshaling as to the Lenders. Further, subject to entry of the Final Order, the Debtor shall waive the right to asset the "equities of the case" doctrine as to the Lenders under § 552(b) of the Bankruptcy Code.**

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.    **Disposition**. The Motion is **GRANTED** on an interim basis as set forth in this Interim Order.

2. **Cash Collateral and Budget**. Subject to the terms of this Interim Order, the Debtor is authorized to use Cash Collateral (including proceeds of the DIP Loan) in accordance with and to the extent set forth in the Budget (attached hereto as **Exhibit A**) on an interim basis, with recognition that the timing of revenue and expenses may be different (including falling in different weeks) than as projected in the Budget.

3. **Immediate Effect**. Notwithstanding any provision of the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules to the contrary, this Interim Order shall take effect immediately upon entry on the docket, and shall remain in effect until such time as otherwise ordered by this Court pursuant to the procedures set forth herein (with such period from the Petition Date through the end of the effectiveness of this Interim Order being referred to herein as the "**Interim Cash Collateral Period**").

4. **Permitted Variance**. The Debtor's use of Cash Collateral, including the proceeds advanced by the DIP Lender under the DIP Loan, during the Interim Cash Collateral Period shall be limited to One Hundred Ten Percent (110%) of the aggregate expenditures as set forth in the Budget (including any subsequent or modified Budget), with recognition that the timing of revenue and expenses may be different than as projected.

5. **Authorization to Borrow**. Upon entry of this Interim Order, the Debtor is deemed to have, and is authorized and empowered to: (i) enter into the DIP Loan Documents; and (ii) borrow on an interim basis from the DIP Lender under the DIP Loan, solely up to the amounts set forth in the applicable weeks in the Budget constituting the Interim Cash Collateral Period, subject to the terms and conditions of this Interim Order and the DIP Loan Documents. In addition, subject to the Carve Out, all DIP Obligations incurred under this Interim Order shall be treated as an allowed superpriority administrative expense claim under § 364(c)(1) of the Code (the

"**Superpriority DIP Claim**").

6. **DIP Liens**. Subject to the Carve Out, all obligations under the DIP Loan (the "**DIP Obligations**") shall be secured by first priority liens (the "**DIP Liens**") on all of the Debtor's assets, including all assets that secured the Debtor's obligations to the DIP Lender as of the Petition Date, other than Avoidance Actions and the proceeds thereof (collectively, the "**DIP Collateral**"). Upon entry of the Interim Order, the DIP Liens shall be valid, binding, enforceable, and fully perfected liens on the DIP Collateral. No Cash Collateral or DIP Loan proceeds may be used to investigate or prosecute any challenge or claim related to the Lenders or their respective claims or liens against the Debtor or the estate.

7. **Additional DIP Loan and Cash Collateral Terms and Conditions**.

a. **Reporting**. On or before the Thursday of each week, the Debtor shall deliver to the DIP Lender (through its counsel or an appointed representative) and FAME (through its counsel or an appointed representative) a line-by-line variance report that compares actual cash receipts and disbursements of the Debtor with corresponding amounts provided for in the Budget in the prior week.

b. **Adequate Protection**. Pursuant to this Interim Order, the Lenders shall be provided with adequate protection to the extent of any diminution in the value of the DIP Lender's or FAME's respective interests in Cash Collateral or other property of the estate from and after the Petition Date as a result of the use of Cash Collateral after the Petition Date or the newly incurred postpetition obligations under the DIP Loan (such established diminution in value after the Petition Date for each's interests, the "**Adequate Protection Obligations**"), liens on all assets of the Debtor and its estate (other than the proceeds of Avoidance Actions), all which shall exist in the same order of priority that existed as of the Petition Date between the Lenders (but all junior to the

DIP Liens and the Carve Out) (the "**Adequate Protection Liens**").

   c. **Continuing Liens**. In addition to the Adequate Protection Liens to the Lenders, pursuant to § 552 of the Bankruptcy Code, the Lenders shall continue to hold liens, rights as assignee, and/or security interests in any and all proceeds, products, offspring, or profits acquired by the Debtor after the Petition Date to the same extent and validity, and in the same priority, as the Lenders held liens, rights as assignee, and/or security interests in the Debtor's assets as of the Petition Date (the "**Continuing Liens**").

   d. **Automatic Perfection**. The DIP Liens, Adequate Protection Liens, and Continuing Liens shall be valid, binding, enforceable, and fully perfected without the necessity of the execution, filing, or recording of security agreements, pledge agreements, financing statements, or other agreements.

   e. **Events of Default**. The following shall be events of default (each, an "**Event of Default**") as to the DIP Loan and use of cash collateral unless waived by the Lenders in writing in its sole discretion: (i) as to the DIP Lender only, failure by the Debtor to pay principal, interest, or any other amounts when due under the DIP Loan; (ii) the chapter 11 case is dismissed or converted to a chapter 7 case, or a trustee or examiner with expanded powers is appointed, without the prior written consent of the Lenders; (iii) the Debtor uses the proceeds of the DIP Loan or Cash Collateral in violation of the Budget (subject to timing and other permitted variances); (iv) the failure to satisfy any of the Sale Milestones (as defined below) without the written consent of the Lenders; (v) the Debtor grants or consents to any lien equal or senior to the liens of the Lenders (other than the DIP Liens); or (vi) the occurrence of any other Event of Default under the RSA that remains uncured for a period of five (5) business days after the receipt of written notice of such breach.

   f. **Remedies**.  If any Event of Default shall have occurred and be continuing, the Lenders may, by written notice to the Court, the Debtor, and the United States Trustee take any or all of the following actions: (1) as to the DIP Lender only, declare the DIP Loan to be suspended or terminated, whereupon the DIP Loan shall be suspended or terminated and the DIP Lender shall have no obligation to make further advances; (2) as to the DIP Lender only, declare the DIP Obligations to be immediately due and payable, without presentment, demand, protest, or (except as provided above) other notice of any kind, all of which are hereby expressly waived by the Debtor; or (3) terminate the Debtor's ability to use the proceeds of the DIP Loan and Cash Collateral, subject to the Carve Out (provided that the Debtor and any other party shall have the right to seek relief from the Bankruptcy Court to continue the use of Cash Collateral, including on an expedited or emergency basis, with all objections to such relief reserved).

   g. **Milestones**.  Further, unless otherwise agreed by the Lenders, the Debtor shall comply with the following milestones (collectively, the "**Sale Milestones**"):

    (i) The Bankruptcy Court shall have entered an order approving the Bid Procedures (as defined in the RSA) no later than ten (10) business days after the Petition Date, with qualified bids due no later than November 18, 2025.

    (ii) The Debtor shall conduct an auction under the Bid Procedures on or before November 19, 2025.

    (iii) The Bankruptcy Court shall have entered an order approving and authorizing the Sale Transaction (as defined in the RSA) no later than November 20, 2025.

    (iv) The Sale Transaction has closed no later than December 5, 2025.

   h. **Limited Waiver of Automatic Stay**.  The automatic stay provisions of § 362 of the Bankruptcy Code are modified exclusively as to the Lenders only to the extent necessary to enable them to implement the provisions of this Interim Order.

   i. **Binding Nature of Adequate Protection Liens**.  No obligation, payment,

transfer or grant of security under this Interim Order shall be: (a) stayed, restrained, voidable, avoidable or recoverable under any section of the Bankruptcy Code or any other applicable law; or (b) subject to avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaim, cross-claim, defense or any other challenge under any section of the Bankruptcy Code or any other applicable law by any person or entity.

8. **Carve Out**. Notwithstanding anything to the contrary in this Interim Order, all liens and claims, including, without limitation, the DIP Liens granted herein and the DIP Obligations and the prepetition claims of the Lenders, shall be subject and subordinate to any claim for U.S. Trustee Fees pursuant to 28 U.S.C. § 1930 and allowed professional fees incurred by proposed counsel for the Debtor (Bernstein Shur Sawyer & Nelson, PA) up to the maximum amount of **$150,000.00**, Ripcord Consulting up to the maximum amount of **$35,000.00**, and the broker retained by the Debtor up to the amount of its allowed commission (Ripcord Consulting, Bernstein Shur Sawyer & Nelson, PA, and such retained sales broker, together, the "**Professionals**") (the items described above shall be referred to herein collectively as the "**Carve Out**"). The Carve Out shall be senior to any lien, security interest, mortgage, or other charge held or asserted by the Lenders, which liens are perfected and unavoidable without any filing or other action by the Professionals or the U.S. Trustee. Further, in accordance with the Carve Out, once a payment is disbursed to the applicable Professional under the Budget (the "**Budgeted Professional Fee Payments**"), such Budgeted Professional Fee Payment shall constitute a dollar-for-dollar payment toward satisfying the Carve Out and shall no longer be subject to any liens, claims, or interests of the DIP Lender, FAME, or any other party and shall be held by such Professional exclusively for the payment of allowed compensation of such Professional in these

cases, <u>provided</u> that in the event the Budgeted Professional Fee Payments exceed the amount of allowed compensation as to the applicable Professional, such unused fund (the "**Returned Professional Fees**") shall be returned by the applicable Professional to the Debtor's estate and, upon return to the Debtor, the liens of the Lenders shall automatically reattach to such Returned Professional Fees.  Nothing in this Interim Order shall permit any Professional to apply payments received to any fees and expenses absent further Order of this Court allowing such compensation.

9. **Proof of Claim Waiver**.  The Lenders are hereby relieved of any requirement to file proofs of claim in the Debtor's bankruptcy case with respect to the claims set forth herein.

10. **Survival**. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any orders which may be entered: (i) confirming any chapter 11 plan in the chapter 11 case; (ii) converting the chapter 11 case to a case under chapter 7 of the Bankruptcy Code; (iii) to the extent authorized by applicable law, dismissing the chapter 11 case; (iv) withdrawing of the reference of the chapter 11 case from the Court; or (v) providing for abstention from handling or retaining of jurisdiction of the chapter 11 case in the Court.  The terms and provisions of this Interim Order shall: (a) continue in these or any other superseding cases under the Bankruptcy Code; (b) be valid and binding on all parties in interest, including, without limitation, any official committee appointed in the case, any chapter 11 trustee, examiner, or chapter 7 trustee, or other fiduciary appointed in the chapter 11 case or any successor case and their respective successors and assigns; and (c) continue, notwithstanding any dismissal of the Debtor's bankruptcy case.

11. **Adequate Notice**. The Debtor provided adequate notice of the Motion to parties in interest, as reflected in the certificate of service accompanying the Motion, which notice this Court finds to be appropriate and adequate under Bankruptcy Rules 2002 and 4001.

12. **Final Hearing and Related Deadlines**.

    a.    The Final Hearing on the Motion shall take place before this Court on **October __, 2025, at __:__ .m.**

    b.    The Debtor shall file and serve a proposed Final Order and revised Budget, if applicable, **on or before October __, 2025**.

    c.    Objections, if any, to the relief requested in the Motion being granted on a final basis shall be filed with this Court and served upon counsel for the Debtor, the DIP Lender, and FAME, on all parties appearing in the case, and on the Office of the United States Trustee, **on or before October __, 2025**.

13. **Immediate Effect**. This Interim Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable effective immediately.

Date: _____                          _____

                                                                United States Bankruptcy Judge
                                                                District of Maine

**Exhibit A**
**Interim Budget**

| American Unagi | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Week Number (Post-Petition) | WEEK 1 | WEEK 2 | WEEK 3 | WEEK 4 | WEEK 5 | WEEK 6 | WEEK 7 | WEEK 8 | WEEK 9 | WEEK 10 |
| Fiscal Period | 2025-40 | 2025-41 | 2025-42 | 2025-43 | 2025-44 | 2025-45 | 2025-46 | 2025-47 | 2025-48 | 2025-49 |
| For Week Ending Friday: | 3-Oct | 10-Oct | 17-Oct | 24-Oct | 31-Oct | 7-Nov | 14-Nov | 21-Nov | 28-Nov | 5-Dec |
| Beginning Cash Balance | 17,137.03 | 30,249.26 | 19,711.83 | 29,335.13 | 26,706.39 | 36,643.17 | 34,368.12 | 26,901.07 | 28,822.22 | 27,247.37 |
| **Cash Outflows:** | | | | | | | | | | |
| **Key Payments** | | | | | | | | | | |
| Feed (purchasing locally by the pallet) | 5,000 | | 15,000 | | | 15,000 | | | 15,000 | |
| Roberts Chemicals, Alpha Chemicals, Harcrocs Chemicals | 1,363 | 4,988 | 3,000 | | 4,988 | 3,000 | | | 3,000 | 3,001 |
| Centrail Maine Power Regular Bill | | | | 11,450 | | | 10,605 | | | |
| Central Maine Power Deposit, Water & Sewer | | | | 10,000 | | | | | | |
| Dead River (Fuel - pay as we go) | | | 2,000 | | | | 2,000 | | | |
| Maine Oxy (Oxogen; usage and rental) | 7,000 | | | | | 7,000 | | | | |
| Revision Community Impact Partners (Solar) | | | 10,152 | | | | | | | |
| Interstate (Pump out of waste from the fish - approx. every other week) | 1,500 | | 1,500 | | 1,500 | | 1,500 | | 1,500 | |
| Water Quality Compliance & Maine Environmental Labs | 450 | | | | | 450 | | | | |
| Americold Logistics/Ice Cube (Freezer Storage) | | | 800 | | | 800 | | | | |
| Packedge (packaging for forzen product) | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 |
| Town of Waldoboro (Property Taxes) | | | | | | | 15,750 | | | |
| Waldoboro Business Park (Property Lease) | 2,500 | | | | | 2,500 | | | | 2,500 |
| Memic (Workers Compensation) | | | | | | | 3,491 | | | |
| Nationwide (Commerical Property, Commerical Package, Commerical Umbrella) | | 4,421 | | | | 4,421 | | | | 4,421 |
| One Group (Mortality Insurance) | | 20,929 | | | | | | | | |
| Anthem/Humana (Health Insurance) | 4,550 | 546 | | | | 4,550 | 546 | | | 4,550 |
| Payroll ( All inclusive) | - | 24,004 | - | 24,004 | - | 24,004 | | 24,004 | | 24,004 |
| Mook Seafarm (Transport Truck) - May require to transport to a customer | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| Ocean Express (Transport Truck) - May require to transport to a customer | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| FFE (Transport Truck) - May require to transport to a customer, as needed. | | 475 | | | | 475 | | | | 475 |
| Ripcord Consulting - Contract CFO (Estimated Hourly Billing, Weekly Invoices) | | 10,500 | | 10,500 | | 10,500 | - | 10,500 | - | 10,500 |
| Special Counsel (Placeholder Row) | | | | | | | | | | |
| Sales Commissions (For live or bait sales of eel) | 3,500 | | 3,500 | | | 3,500 | | | 3,500 | |
| Fisherman Payments | | | | | | | | | | |
| **Total Key Payments** | **27,463** | **67,463** | **37,552** | **57,554** | **8,088** | **77,800** | **35,492** | **36,104** | **24,600** | **51,051** |
| | | | | | | | | | | |
| Bankruptcy - Ch 11 Counsel (Bernstein Shur) | | | 50,000 | | | 50,000 | | | | 50,000 |
| Bankruptcy - US Trustee Fees (Quarterly) | | | 250 | | | | | | | |
| Broker for Sale of Business (success fee not included in budget) | | | 7,500 | | | 7,500 | | | | 7,500 |
| **Bankruptcy & Broker Sale Costs** | **-** | **-** | **57,750** | **-** | **-** | **57,500** | **-** | **-** | **-** | **57,500** |
| | | | | | | | | | | |
| Credit Card moving to ACH/Checks | 1,325 | 1,325 | 1,325 | 1,325 | 1,325 | 1,325 | 1,325 | 1,325 | 1,325 | 1,325 |
| **General Supplies & Subscriptions** | **1,325** | **1,325** | **1,325** | **1,325** | **1,325** | **1,325** | **1,325** | **1,325** | **1,325** | **1,325** |
| **Subtotal Cash Outflows** | **28,788** | **68,788** | **96,627** | **58,879** | **9,413** | **136,625** | **36,817** | **37,429** | **25,925** | **109,876** |
| Available Cash Before Receipts | (11,651) | (38,539) | (76,915) | (29,544) | 17,293 | (99,982) | (2,449) | (10,528) | 2,897 | (82,629) |
| **Cash Inflows:** | | | | | | | | | | |
| Accounts Receivable Collections | - | - | - | - | - | - | - | - | - | - |
| Sales (Normal Course of Business) | | 19,350 | 19,350 | 19,350 | 19,350 | 19,350 | 19,350 | 19,350 | 19,350 | 19,350 |
| Holiday Sales Push (Due Upon Receipt) | | | | | | | | | | 30,000 |
| Adjustments (Uncollectable A/R) | 6,901 | 6,901 | 6,901 | 6,901 | | | | | | |
| **Subtotal Cash Inflows** | **6,901** | **26,251** | **26,251** | **26,251** | **19,350** | **19,350** | **19,350** | **19,350** | **19,350** | **49,350** |
| *Beginning line of credit balance (DIP Loan)* | *150,000* | *185,000* | *217,000* | *297,000* | *327,000* | *327,000* | *442,000* | *452,000* | *472,000* | *477,000* |
| + Debt Draw (DIP Loan) | 35,000 | 32,000 | 80,000 | 30,000 | - | 115,000 | 10,000 | 20,000 | 5,000 | 49,000 |
| - Debt Paydown | - | - | - | - | - | - | - | - | - | - |
| **Ending DIP Loan Balance** | **185,000** | **217,000** | **297,000** | **327,000** | **327,000** | **442,000** | **452,000** | **472,000** | **477,000** | **526,000** |
| Ending Cash Balance | 30,249 | 19,712 | 29,335 | 26,706 | 36,643 | 34,368 | 26,901 | 28,822 | 27,247 | 15,721 |