**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>**AMERICAN UNAGI, INC.,**[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 25-10180 |

**MOTION OF DEBTOR (A) FOR ENTRY OF AN ORDER ON AN INTERIM AND THEN FINAL BASIS: (I) AUTHORIZING CONTINUED USE OF THE DEBTOR'S EXISTING BANK ACCOUNTS AND CASH MANAGEMENT PROCEDURES; (II) AUTHORIZING CONTINUED USE OF THE DEBTOR'S EXISTING BUSINESS FORMS AND CHECKS; AND (III) GRANTING RELATED RELIEF; AND (B) <u>FOR EXPEDITED CONSIDERATION</u>**

**This Motion includes a request for an expedited determination pursuant to Local Rule 9013-4 as to the request for interim relief only, with a proposed hearing on <u>October 2, 2025</u>. A statement of the facts and circumstances justifying expedited determination, as required by Local Rule 9013-4, is included herein.**

American Unagi, Inc., the above-captioned debtor and debtor-in-possession ("**Debtor**"), by and through undersigned proposed counsel, hereby moves this Court (the "**Motion**") for the entry of an order, substantially in the form filed herewith, pursuant to §§ 105(a), 345, and 553 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), providing the following relief, on an interim basis and then on a final basis following a final hearing: (i) authorizing the Debtor to maintain its existing Bank Accounts and Cash Management Procedures (each as defined below); (ii) authorizing the Debtor to continue using its existing business forms and checks; and (iii) granting related relief. In support of this Motion, the Debtor states as follows:

---

[1] The last four digits of American Unagi, Inc.'s federal taxpayer identification number are 5308, and its principal place of business is 186 One Pie Road, Waldoboro, Maine 04572.

**JURISDICTION, VENUE, AND PREDICATES FOR RELIEF**

1. The United States District Court for the District of Maine (the "**District Court**") has original, but not exclusive, jurisdiction over the Debtor's chapter 11 case pursuant to 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157 and Rule 83.6 of the District Court's local rules, the District Court has authority to refer and has referred this proceeding to this Court.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court has constitutional authority to enter final judgment in this proceeding.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1408, and venue over this proceeding is proper in this district pursuant to 28 U.S.C. § 1409.

4. The predicates for the relief sought herein are §§ 105(a), 345, 363, 364, 503, and 553 of the Bankruptcy Code, and Bankruptcy Rules 6003 and 6004(h).

**BACKGROUND**

**A.    The Chapter 11 Case**

5. Contemporaneously with the date of this Motion, the Debtor commenced its chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court (the "**Petition Date**").

6. The Debtor continues to operate its business and manage its property as debtor and debtor-in-possession. To date, no operating trustee, examiner, or statutory committee has been appointed in the case by the Office of the United States Trustee.

**B.    The Cash Management Procedures, Bank Accounts, And Related Payment and Cash Management Structure**

7. The Debtor is a Waldoboro, Maine-based startup that is the only U.S. producer and processor of American eel. The Debtor grows and sells live and value-added eel products to restaurants, other consumers, and distributors throughout the world. The business began in 2014

2

through raising a handful of baby eels to adult size, and in 2022, the Debtor completed construction of a multi-million dollar, 27,000-square-foot facility at the Waldoboro Business Park. The Debtor's aquaculture systems facility is the first in the United States to grow Maine eels to market size. The Debtor works with licensed harvesters in Maine, one of only two U.S. states with an elver fishery. This provides a consistent market for local fishermen and ensures the eels come from a well-managed wild stock.

8. Prior to the Petition Date, and in the ordinary course of business, the Debtor maintained certain cash management and monitoring procedures (the "**Cash Management Procedures**") to efficiently collect, monitor, transfer, and disburse funds generated by and received during the operation of its business, including to effectuate a line of credit facility with Maine Community Bank (in its capacity as prepetition and postpetition lender, the "**DIP Lender**"). The Cash Management Procedures are critical to the Debtor's ability to efficiently monitor and control its cash positions and to ensure timely and accurate payment of liabilities, among other things, for its business, and for the Debtor to maintain the proposed debtor-in-possession financing from the DIP Lender in the form of a postpetition line of credit (the "**DIP Loan**").

9. As part of the Cash Management Procedures, as of the Petition Date, the Debtor maintained two bank accounts at the DIP Lender: an operating account and a savings account (collectively, the "**Bank Accounts**"). The operating account has been used to fund business expenses of the Debtor, including payroll and other operating expenses, and to receive incoming payments, including from sales and draws of loan proceeds under various debt facilities (including from the DIP Lender). The savings account historically contains a de minimis amount of funds

3

and is not used for day-to-day operations.[2]

### C. Existing Business Forms

10. In the ordinary course of business, the Debtor uses checks that contain the Debtor's name and address printed thereon (the "**Business Forms**"). To minimize administrative expense and delay, the Debtor requests authority to continue to use its Business Forms substantially in the forms existing immediately prior to the Petition Date until such time as the existing Business Forms are exhausted.

## RELIEF REQUESTED

11. By this Motion, the Debtor seeks the entry of an order, first on an interim basis and then on a final basis following a final hearing: (i) authorizing the Debtor to maintain the Bank Accounts and Cash Management Procedures; (ii) authorizing the Debtor to continue using the Business Forms; and (iii) granting related relief, including (subject to the Bankruptcy Code and all applicable orders of this Court) authority to deposit funds into and withdraw funds from the Bank Accounts consistent with prepetition practices, including, but not limited to, checks, wire transfers, automated clearinghouse transfers, electronic funds transfers, and other debits, and to treat the Bank Accounts for all purposes as debtor-in-possession accounts.

## BASIS FOR RELIEF

### A. This Court Should Authorize the Debtor to Maintain the Bank Accounts and Cash Management Procedures.

12. The U.S. Trustee Operating Guidelines (the "**UST Guidelines**") require debtors-in-possession to, among other things, close all existing bank accounts and open new debtor-in-possession bank accounts; open a new set of books and records as of the commencement date of

---

[2] Although not used for normal operations, the Debtor proposes to maintain the savings account at the DIP Lender to be used as a segregated escrow account as may be needed in the case, including for an adequate assurance utility deposit.

the case; and make all disbursements of estate funds by check with a notation representing the reason for the disbursement. These requirements are intended to provide a clear line of demarcation between prepetition and post-petition transactions and operations, and to prevent a debtor's inadvertent payment of prepetition claims.

13. The Bank Accounts are not maintained at banking institutions approved by the United States Trustee for Region One. The Debtor, therefore, seeks a waiver of the UST Guidelines' requirement for the closure of the Bank Accounts and opening of new postpetition bank accounts for the Debtor at depositories authorized by the U.S. Trustee.

14. Maintenance of the Bank Accounts and the Cash Management Procedures will greatly facilitate the Debtor's operations in chapter 11. The continued maintenance of the Bank Accounts, in particular, is of paramount importance to secure and facilitate, on an orderly basis, the postpetition financing in the form of the DIP Loan. That is, as a condition for being the debtor-in-possession lender (including under the Restructuring Support Agreement), the DIP Lender is requiring the Debtor's cash to be maintained in the Bank Accounts with the DIP Lender. If strictly enforced in this case, the requirement to close and open new accounts would cause a severe disruption in the Debtor's activities, would frustrate and delay implementation of the DIP Loan, and would impair the Debtor's ability to obtain postpetition financing and to operate in chapter 11 under terms acceptable to the DIP Lender.

15. To require the Debtor to close the Bank Accounts and reestablish separate new accounts—and to otherwise disrupt the Cash Management Procedures to comply with the UST Guidelines—also would require considerable time and expense to the Debtor's estate by imposing a significant resetting of the Debtor's long-standing practices, while affording limited benefits. The commencement of the chapter 11 case will already place a strain on the Debtor's relationships

with its employees, customers, and vendors, all of whom are important to the Debtor's continued operations and reorganizations. Requiring the Debtor to open new accounts and to change all payment information would not only cause delay, confusion, and disruption in the Debtor's operations, but would also jeopardize the Debtor's relationships with these parties and the availability of necessary postpetition financing through the proposed DIP Loan.

16. Likewise, the Debtor submits that maintenance of the Bank Accounts and the Cash Management Procedures will ensure streamlined operations while avoiding unnecessary, additional administrative burdens on the Debtor's relatively small management team. Permitting the Debtor to continue using the Bank Accounts and the existing Cash Management Procedures is, therefore, essential to a smooth and orderly transition of the Debtor into chapter 11 and to avoid disruption of its business and operations. This consideration is even more relevant in light of the Debtor seeking to conduct an expedited sale process of its assets, thus limiting the length of time of this chapter 11 case.

17. To guard against improper transfers resulting from the postpetition honoring of prepetition checks, the Debtor will promptly notify the DIP Lender not to honor checks drawn on the Bank Accounts before the Petition Date, except upon limited Court-approved exceptions. Subject to a prohibition against honoring prepetition checks or offsets without specific authorization from this Court, the Debtor requests that it be authorized to maintain and continue the use of the Bank Accounts in the same manner and with the same account numbers, styles, and document forms as those employed prepetition.

18. Moreover, no parties in interest will be harmed by the continued use of the Bank Accounts because the Debtor will implement appropriate mechanisms to ensure that the Debtor will not make unauthorized payments on account of prepetition obligations. In addition, parties in

interest and the U.S. Trustee can adequately monitor the flow of funds into and out of the Bank Accounts through the required monthly operating reports or such other reporting as may be required or ordered in this case (such as the proposed weekly cash collateral reporting), all of which will reflect transactions in the Bank Accounts. In light of such protective measures and the disclosure obligations, the Debtor submits that the relief requested herein is in the best interests of the estate and creditors, and that compliance with the UST Guidelines would be unnecessary and inefficient.

19. Section 363(c)(1) of the Bankruptcy Code authorizes the debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing," 11 U.S.C. § 363(c)(1), and § 105(a) empowers this Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title," 11 U.S.C. §§ 105(a). The purpose of these sections is to provide a debtor-in-possession with the flexibility to engage in the ordinary transactions required to operate its business without undue oversight by creditors or a court. See Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne), 114 F.3d 379, 384 (2d Cir. 1997).

20. Accordingly, the Debtor respectfully requests that this Court allow it to maintain the Bank Accounts and the Cash Management Procedures in the ordinary course as was done before the Petition Date and as described herein, and to the extent necessary, waive compliance with the UST Guidelines and other appliable law.

**B.     Cause Exists to Waive the Deposit and Investment Guidelines of § 345(b) of the Bankruptcy Code.**

21. To the extent applicable, the Debtor requests that this Court waive the requirements of § 345(b) of the Bankruptcy Code on an interim basis and permit it to maintain its deposits in its Bank Accounts in accordance with its existing deposit practices until such time as the Debtor obtains the Court's approval to deviate from the guidelines imposed under § 345(b) of the

7

Bankruptcy Code on a final basis.

22. Section 345(a) of the Bankruptcy Code authorizes deposit or investment of the money of the estate, such as cash, as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits and investments that are not "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States," the estate must require a bond in favor of the United States secured by the undertaking of a U.S. Trustee-approved corporate surety. A court may, however, dispense with this undertaking "for cause." 11 U.S.C. § 345(b).

23. The Debtor requests an interim waiver of the requirements of § 345(b) of the Bankruptcy Code to the extent such requirements are inconsistent with the Debtor's current practices. Given the security of the Cash Management Procedures, and the fact that the Bank Accounts are established at a stable, well-regarded, FDIC-insured local banking institution (and that the Debtor does not anticipate any daily ending balance to exceed $250,000 during this case), the Debtor submits that good cause exists to grant an interim waiver of the requirements of § 345(b) in the manner requested herein.

C. **The Debtor Should Be Permitted to Continue to Use Existing Business Forms**

24. The UST Guidelines require debtors to indicate their debtor-in-possession status on all checks.

25. To avoid disruption of operations and unnecessary expenses, the Debtor requests authorization to continue to use the existing Business Forms, substantially in the form existing immediately before the Petition Date, until the Debtor's supply of existing Business Forms is exhausted and new forms can be obtained.

26. Requiring the Debtor to reprint the Business Forms to indicate that the Debtor is a

8

"Debtor-in-Possession" would impose an unnecessary burden and expense on the Debtor. The Debtor submits that parties in interest—including vendors and employees—will not be prejudiced if the Debtor is authorized to continue to use the Business Forms substantially in the form existing immediately before the Petition Date until the supply of such Business Forms is exhausted. Such parties will undoubtedly be aware of the Debtor's status as debtor-in-possession, and, thus, changing the Business Forms would be an unnecessary additional expense and unduly burdensome. Accordingly, the Debtor requests that this Court authorize it to use the Business Forms existing immediately before the Petition Date.

## **EXPEDITED DETERMINATION OF INTERIM APPROVAL**

27. The Debtor is unable to continue its business operations without the ability to access the DIP Loan and will suffer immediate and irreparable harm to the detriment of all creditors and other parties in interest absent such relief. Moreover, the Debtor's ability to borrow under the DIP Loan and finance its operations through the use of cash collateral is vital to the preservation and maintenance of the value of the Debtor's assets. The Debtor, therefore, submits that expedited determination of the interim relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor, its estate, and its creditors, including by disrupting the Debtor's ability to access the DIP Loan and pay necessary expenses incurred in connection with administering the chapter 11 case, if the Debtor were unable to maintain the Bank Accounts and continue the Cash Management Procedures in a manner satisfactory to the DIP Lender. **The Debtor requests an expedited hearing on the interim relief sought in this Motion on October 2, 2025.**[3]

---

[3] In the event that this case is assigned to the Portland court location, the Debtor respectfully requests that the October 2, 2025 hearing be scheduled for the morning of October 2 due to scheduled hearings at 1:00 PM with the Bangor court in which undersigned counsel have pending matters. If this case is assigned to the Bangor court location, then the Debtor proposes to schedule first-day matters at the standing 1:00 PM hearing time.

**BANKRUPTCY RULE 6003 IS SATISFIED AND REQUEST FOR WAIVER OF STAY**

28. The Debtor submits that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted on an interim basis pending a final hearing on the Motion.

29. Any disruption to the Cash Management Procedures and use of the Bank Accounts would harm the Debtor and its estate. Without maintaining these systems, the Debtor would be unable to obtain postpetition financing and be burdened by a more onerous (and impossible) process relating to the DIP Loan, jeopardizing its chapter 11 case. This, along with the possibility that third parties would refuse to provide essential services in the event the Debtor fails to remit payment, could cause diminution in the value of the Debtor's estate to the detriment of all parties in interest. Accordingly, the Debtor respectfully submits that it has satisfied the "immediate and irreparable harm" standard of Rule 6003 of the Bankruptcy Rules and seeks authority to continue to maintain its banking and cash management practices in the ordinary course of business.

30. The Debtor further seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[an] order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." As set forth above, the relief requested herein is essential to prevent irreparable damage to the Debtor's operations, going-concern value, and its efforts to pursue a restructuring of the business.

31. Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rule 6003 and 6004(h).

32. Finally, to the extent any of the relief requested herein is granted only on an interim basis, the Debtor requests that this Court grant such interim relief and set a final hearing on the

remaining portions of the Motion as necessary, with appropriate notice and time for objections.

## LIMITED NOTICE

33. Considering the request for expedited determination, notice via regular mail would not provide sufficient notice of an expedited hearing on this Motion to parties in interest, and providing notice through overnight mail to all parties in interest would be burdensome and costly to the bankruptcy estate.

34. The Debtor requests limited notice and proposes serving notice of this Motion and of any expedited hearing thereon via e-mail, telephone, or overnight mail, if necessary, on the following parties: (a) the United States Trustee; (b) the Debtor's secured creditors or, if applicable, to counsel representing them; (c) the top twenty (20) non-insider unsecured creditors of the Debtor or, if applicable, to counsel representing such holders; (d) applicable federal and state taxing authorities; and (e) any attorney of record or party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the circumstances of the Debtor's chapter 11 case and the nature of the relief sought herein, the Debtor submits that no further notice of this Motion or of an expedited hearing thereon is required.

35. The Debtor has made and will make a good faith effort to advise all affected parties of the time and date of the hearing.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter an order substantially in the form filed herewith, granting the relief requested herein.

Dated: September 29, 2025

Respectfully submitted,
**BERNSTEIN, SHUR, SAWYER & NELSON, P.A.**

*/s/ D. Sam Anderson*
D. Sam Anderson, Esq.
Adam R. Prescott, Esq.
100 Middle Street
PO Box 9729, Portland, Maine 04104
Telephone: (207) 774-1200
Facsimile: (207) 774-1127
sanderson@bernsteinshur.com
aprescott@bernsteinshur.com

*Proposed Counsel to the Debtor and Debtor in Possession*