UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>**AMERICAN UNAGI, INC.,**[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 25-10180 |

**MOTION OF DEBTOR FOR ENTRY OF AN ORDER: (I) AUTHORIZING THE DEBTOR TO: (A) PAY PRE-PETITION EMPLOYEE COMPENSATION; (B) PAY RELATED PAYROLL OBLIGATIONS; AND (C) CONTINUE INSURANCE AND EMPLOYEE BENEFIT PROGRAMS; AND (II) REQUEST FOR EXPEDITED DETERMINATION AND LIMITATION OF NOTICE**

**This Motion includes a request for an expedited determination and limitation of notice pursuant to Local Rule 9013-4, with a proposed hearing on October 2, 2025. A statement of the facts and circumstances justifying expedited determination and limitation of notice, as required by Local Rule 9013-4, is included herein.**

American Unagi, Inc., the above-captioned debtor and debtor-in-possession (the "**Debtor**"), moves this Court, pursuant to, inter alia, §§ 105, 363 and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 9013-1 and 9013-4 of the Local Rules of the United States Bankruptcy Court for the District of Maine (the "**Local Rules**"), for entry of an order authorizing the Debtor to pay certain prepetition employee compensation, pay related payroll and tax obligations, and continue certain insurance and employee benefit programs. In support of this Motion, the Debtor states as follows:

**JURISDICTION, VENUE AND STATUTORY BASES**

1.  The United States District Court for the District of Maine (the "**District Court**")

---

[1] The last four digits of American Unagi, Inc.'s federal taxpayer identification number are 5308, and its principal place of business is 186 One Pie Road, Waldoboro, Maine 04572.

has original, but not exclusive, jurisdiction over the Debtor's chapter 11 case pursuant to 28 U.S.C. § 1334(b). By the District Court's standing order of reference, this matter has been referred to this Court pursuant to 28 U.S.C. § 157.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court has constitutional authority to enter final judgment in this proceeding.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1408, and venue over this proceeding is proper in this district pursuant to 28 U.S.C. § 1409.

4. The statutory predicates and applicable rules for the relief sought herein are, inter alia, §§ 105(a), 363 and 507 of the Bankruptcy Code, Rules 6003 and 6004 of the Bankruptcy Rules, and Local Rule 9013-1 and 9013-4.

## BACKGROUND

### A. The Chapter 11 Case.

5. Contemporaneously hereto (the "**Petition Date**"), the Debtor commenced its chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.

6. The Debtor continues to operate its business and manage its property as debtor and debtor-in-possession. To date, no operating trustee, examiner, or statutory committee has been appointed in the case by the Office of the United States Trustee.

### B. Overview of the Debtor's Workforce.

7. The Debtor is a Waldoboro, Maine-based startup that is the only U.S. producer and processor of American eel. The Debtor grows and sells live and value-added eel products to restaurants, other consumers, and distributors throughout the world. The business began in 2014 through raising a handful of baby eels to adult size, and in 2022, the Debtor completed construction of a multi-million dollar, 27,000-square-foot facility at the Waldoboro Business Park. The

Debtor's aquaculture systems facility is the first in the United States to grow Maine eels to market size. The Debtor works with licensed harvesters in Maine, one of only two U.S. states with an elver fishery. This provides a consistent market for local fishermen and ensures the eels come from a well-managed wild stock.

8. As of the Petition Date, the Debtor had 7 full-time employees and 3 part-time employees (collectively, the "**Employees**"). Of the Employees, 6 are paid on an hourly basis and 4 are salaried.

9. The Employees are paid every other week, on Fridays, for their services in the preceding two-week period of Sunday to Saturday, with the funds required to satisfy the payroll obligations drawn from the Debtor's account on Wednesday or Thursday of each week. (The Debtor's first post-petition payroll disbursement date will be October 10, 2025.)

10. Payroll is funded and managed through Gusto as the payroll company (the "**Payroll Company**"). The Debtor pays the Payroll Company a monthly service fee totaling **$200-$250** per week (as may vary from week to week based on the number of Employees, the "**Payroll Fee**").

11. The Employees hold various positions for the Debtor that are critical to Debtor's ongoing operations and ability to meet its obligations as debtor-in-possession. Those positions include roles related to food safety, operations, accounting, sales, and various supervisory, managerial, and executive positions. The Employees' skills, knowledge, and understanding of the Debtor's business, products, and general operations, are essential to the effective operation of the Debtor's business and to successful, value-maximizing strategies in the Debtor's chapter 11 case.

12. Further, just as the Debtor depends on the Employees to operate its business on a daily basis, the Employees also depend on the Debtor. In an effort to minimize the personal hardship to the individuals and to maintain morale and stability in the Debtor's business operations

during this critical juncture, the Debtor seeks authority to continue to pay and honor (subject to applicable Orders of this Court and the Bankruptcy Code) amounts arising under or in connection with the Debtor's pre-petition obligations to the Employees, all as set forth in more detail herein.

### C. Summary of Workforce Obligations

13. The Debtor is responsible for wage and salary obligations to its Employees. The Employees are owed and have accrued various prepetition payroll payments that were not yet paid or otherwise realized in the ordinary course as of the Petition Date. The Debtor is not, at this time, requesting authority to pay any Employee an amount exceeding the amount entitled to priority under § 507(a)(4) of the Bankruptcy Code. The Debtor does not seek to modify the amount of compensation paid to any "insider" of the Debtor through this Motion.

14. As of the Petition Date, the Employees were owed and had accrued various sums for wages as set forth above for pre-Petition Date services (the "**Employee Compensation Obligations**"). The average gross wages in recent weeks were approximately **$21,000.00** (and approximately **$22,500.00** with employer-side taxes), which is composed of approximately **$11,000.00** for hourly Employees and **$11,500.00** for salaried Employees.[2] Because each payroll distribution is for services previously provided in the prior two weeks, a pro rata portion of the Employee Compensation Obligations paid after the Petition Date will constitute compensation for prepetition services.

15. The Debtor also withholds taxes and other withholdings from wages and salaries as required by federal, state, and local laws. In particular, these laws require the Debtor to withhold amounts related to federal and state income taxes, Social Security and Medicare taxes, and certain wage garnishments for remittance to the appropriate federal, state, or local authorities, or other

---

[2] The Debtor will provide a copy of the payroll register to the Office of the United States Trustee for the pre-petition period consistent with the relief sought herein.

third parties (collectively, the "**Withheld Amounts**"). The Debtor also is required to pay additional amounts for the employers' contributions to Social Security and Medicare taxes (such taxes and withholdings, together with the Withheld Amounts, the "**Payroll Taxes**"). A portion of the Payroll Taxes will relate to prepetition services for the reasons set forth herein.

16. In addition, the Debtor provides the following benefits to eligible Employees (such benefit programs, the "**Employee Benefit Programs**" and the Debtor's payment obligations in providing the Employee Benefit Programs to eligible Employees, the "**Benefit Obligations**"):

(a) Health insurance provided through Anthem, with the Debtor funding 47-57% of the premiums for such coverage;

(b) Dental insurance through Humana, with the Debtor funding 100% of the premiums for such coverage;

(c) Reimbursement to Employees for purchases made by Employees on behalf of the Debtor in the ordinary course, which amount is de minimis and funded through accounts payable, and the Debtor funds approximately $1,300/month for employee housing; and

(d) Simple IRA with the Debtor matching 3% of contributions as elected by 6 Employees.

17. The Employee Compensation Obligations, the Payroll Fee, the Payroll Taxes, and the Benefit Obligations are collectively referred to herein as the "**Payroll Obligations**."

**D.    Summary of Insurance Programs**

18. The Debtor also maintains the following insurance coverage necessary to operate its business and protect the estate, and pursuant to which the Debtor is required to fund certain premiums and other obligations, a portion of which may include prepetition obligations due to the timing of coverage and invoicing (collectively, the "**Insurance Obligations**"):

- **Workers' Compensation Insurance** – MEMIC (covers employee workplace injuries);
- **General Liability Insurance** – Sunderland Marine Insurance Company (covers premises and operations liability);
- **Commercial Property** – Nationwide (covers business physical assets);

- **Commercial Package** – Nationwide (covers property and liability);
- **Commercial Umbrella** – Nationwide (extends coverage of underlying commercial package and commercial property policies);
- **Automobile Insurance** – Covers company vehicles;
- **Directors & Officers (D&O) Insurance** – Chubb (covers management liability);
- **Aquaculture Mortality Insurance** – Howden Insurance Brokers Limited (paid to OneGroup NY Inc. dba Thomas Gregory Associates Insurance Brokers) (covers eel stock losses with certain limitations); and
- **Life Insurance** – American General Life (covers CEO & founder).

## RELIEF REQUESTED

19. To minimize the personal hardship that Employees will suffer if any Payroll Obligations are not paid when due or as expected, and to maintain morale and continuity of the Debtor's workforce and business operations during this critical time, as well as to ensure ongoing insurance coverage, the Debtor requests entry of an Order, substantially in the form filed herewith, authorizing the Debtor to pay the Payroll Obligations, maintain the Employee Benefit Programs in the ordinary course, and to fund the Insurance Obligations in the ordinary course.

## BASIS FOR RELIEF

### A.    Certain of the Payroll Obligations Are Entitled to Priority Treatment.

20. Pursuant to § 507(a)(4) of the Bankruptcy Code, the unpaid, prepetition Payroll Obligations are entitled to priority treatment in an amount up to **$15,150.00** for each individual. See 11 U.S.C. § 507(a)(4). The Debtor is not seeking, in this Motion, authority to pay any Employee Compensation Obligations in amounts that exceed **$15,150.00** per any individual Employee. As the Debtor is seeking authority to pay, in total, less than the individual limit established under § 507(a)(4), the Debtor submits that granting the relief sought in the Motion affects only the timing of payments and would not have a negative impact on recoveries for other parties in interest. Indeed, satisfaction of the Payroll Obligations, and maintenance of the Employee Benefit Programs, will enhance value for the benefit of all parties in interest by ensuring

that the Employees continue to provide vital services to the Debtor and its customers at a critical juncture in the chapter 11 case.

  B.  **Payment of Certain Obligations Is Required by Law.**

  21.  The Debtor, as part of the relief sought in this Motion, request authority to continue to remit Payroll Taxes to the appropriate entities. These amounts principally represent earnings that governments and judicial authorities have designated for withholding from paychecks. Indeed, certain withholdings likely are not property of the Debtor's estate because the Debtor has withheld such amounts on another party's behalf. Accordingly, continued remittance of the Payroll Taxes will not harm or prejudice parties in interest and should be authorized. In addition, the Debtor is required to maintain certain insurance coverage in chapter 11, such that payment of the Insurance Obligations is consistent with the Debtor's obligations as debtor-in-possession.

  C.  **This Court Should Authorize the Debtor to Satisfy the Payroll Obligations and Maintain the Employee Benefit Programs in the Ordinary Course, and Pay the Insurance Obligations.**

  22.  A debtor in possession is authorized to operate its business while maintaining a "fiduciary duty to act in the best interest of the estate as a whole, including its creditors, equity interest holders and other parties in interest." LaSalle Nat'l Bank v. Perelman, 82 F. Supp. 2d 279, 292 (D. Del. 2000). Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). The CoServ court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." Id. Moreover, the "fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs." NLRB v. Bildisco & Bildisco, 465 U.S. 513, 528 (1984).

7

23. Consistent with a debtor's duties in chapter 11, this Court may grant the relief requested herein pursuant to §§ 105(a) and 363 of the Bankruptcy Code and the "necessity of payment" doctrine. See 11 U.S.C. §§ 105(a), 363(b), and 363(c). The "necessity of payment" doctrine functions in a chapter 11 reorganization as a mechanism by which a bankruptcy court can exercise its equitable power to allow payment of critical prepetition obligations not expressly authorized by the Bankruptcy Code. See, e.g., In re Penn Cent. Transp. Co., 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the doctrine "permit[s] immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid"); In re Quality Interiors, Inc., 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("A general practice has developed … where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment.").

24. Additionally, § 363(c)(1) provides, "[i]f the business of the debtor is authorized to be operated under section . . . 1108 . . . the trustee . . . may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). If any party in interest does not consent to such use of property, such use may still be permitted by court order after notice and a hearing. 11 U.S.C. § 363(c)(2). Further, § 363(b)(1) states, in pertinent part, that: "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although § 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, bankruptcy courts routinely authorize use of a debtor's assets if such use is based upon the sound business judgment of the debtor. See In re SW Bos. Hotel Venture, LLC, No. 10-14535-JNF, 2010 WL 3396863, at *3 (Bankr. D. Mass. Aug. 27,

8

2010) ("Courts approve a Chapter 11 debtor in possession's use, sale or lease of property of the estate where the debtor has used reasonable business judgment and articulated a business justification for such use.").

25. Here, the Debtor is a debtor-in-possession permitted to operate the business and may pay the Payroll Obligations, continue the Employee Benefit Programs, in the ordinary course, and to fund the Insurance Obligations. Further, its ability to satisfy the Payroll Obligations is indispensable to the reorganization of the Debtor's business, and the Employees' morale directly affects their effectiveness and productivity. Consequently, it is critical that the Debtor continue, in the ordinary course, those personnel procedures that were in effect prior to the Petition Date. If such obligations are not timely paid postpetition, however, some individuals likely would suffer personal hardship, may be unable to pay their daily living expenses, may lose insurance, and may discontinue their employment with the Debtor. A loss of employees, workforce morale, and goodwill at this juncture would undermine the Debtor's stability, and, undoubtedly, would have an adverse effect on the Debtor, its customers, the value of its assets and business, and its ability to achieve its objectives in chapter 11.

26. Thus, the relief requested herein is both necessary to the Debtor's successful chapter 11 case and grounded in the Debtor's sound business judgment. Accordingly, the Debtor submits that this Court should grant the relief sought herein.

D. **The Request for Expedited Relief and Limitation of Notice Pursuant to Local Rule 9013-4 is Appropriate.**

27. The Debtor requests that this Court schedule an expedited hearing on this Motion so that the Debtor can fulfill the Payroll Obligations, continue the Employee Benefit Programs, fund the Insurance Obligations, and continue operating the business for the benefit of the estate and creditors.

28. If this Motion is not approved before the Debtor's next payroll obligations are due to be drawn by the Payroll Company and disbursed to employees on October 10, 2025, the Debtor's business operations—and prospects for a successful sale—will be severely harmed because the Debtor will be unable to make ordinary payroll payments. As stated above, the Debtor's ability to continue to compensate Employees without interruption is critical to customers' and other key constituents' support of the Debtor's chapter 11 case. Further, any disruption or delay in payments to Employees postpetition could result in a negative reaction among Employees, customers, creditors, and others, and it is of the utmost importance for the Debtor that they maintain strong relationships and support in the chapter 11 case as they work to reorganize in a timely, cost-effective manner. Thus, the Debtor seeks an expedited hearing on this Motion **on October 2, 2025**,[3] so that the Debtor may promptly reassure Employees in the opening days of this case that regular compensation payments will be made and benefits will continue to be provided, settle quickly into the chapter 11 case, timely process payroll amounts and obligations for timely disbursement in the ordinary course, and pay the Insurance Obligations when due in the ordinary course to avoid any risk to ongoing insurance coverage.

29. The Debtor, therefore, also requests limited notice and proposes serving notice of this Motion and any expedited hearing thereon on the following parties: (a) the United States Trustee; (b) the Debtor's secured creditors or, if applicable, to counsel representing them; (c) the top twenty (20) non-insider unsecured creditors of the Debtor or, if applicable, to counsel representing them; (d) applicable federal and state taxing authorities; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtor will serve notice via email or

---

[3] In the event that this case is assigned to the Portland court location, the Debtor respectfully requests that the October 2, 2025 hearing be scheduled for the morning of October 2 due to scheduled hearings at 1:00 PM with the Bangor court in which undersigned counsel have pending matters. If this case is assigned to the Bangor court location, then the Debtor proposes to schedule first-day matters at the standing 1:00 PM hearing time.

10

facsimile when known. The Debtor submits that, in light of the nature of the relief requested herein, no other or further notice of this Motion need be given.

30. The Debtor will make a good faith effort to advise all affected parties of the time and date of the hearing, once established.

### BANKRUPTCY RULE 6003 IS SATISFIED AND A WAIVER OF BANKRUPTCY RULE 6004(H) IS WARRANTED

31. Pursuant to Bankruptcy Rule 6003, this Court may authorize payment of a prepetition claim within twenty-one (21) days after the Petition Date if such relief is necessary to avoid immediate and irreparable harm. As described above, the Employees are essential to the reorganization of the Debtor. Failure to pay the Payroll Obligations and Insurance Obligations in the first twenty-one (21) days of the case would lead to the disruption of the Debtor's operations and reorganization efforts. Accordingly, and for the reasons set forth in greater detail above, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003.

32. In addition, the Debtor seeks a waiver of any stay of the effectiveness of the Order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[u]nless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h). As set forth above, the relief requested herein is essential to prevent irreparable damage to the Debtor's operations (including maintain insurance coverage) and to the Employees, and that the relief is integral to the Debtor's efforts in chapter 11. Accordingly, the Debtor submits that sufficient cause exists to justify a waiver of the stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

### CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter an Order,

substantially in the form filed herewith, granting the relief requested herein.

Dated:   September 29, 2025

Respectfully submitted,
**BERNSTEIN, SHUR, SAWYER & NELSON, P.A.**

*/s/ D. Sam Anderson*
D. Sam Anderson, Esq.
Adam R. Prescott, Esq.
100 Middle Street
PO Box 9729
Portland, Maine 04104
Telephone: (207) 774-1200
Facsimile: (207) 774-1127
sanderson@bernsteinshur.com
aprescott@bernsteinshur.com

*Proposed Counsel to the Debtor and Debtor in Possession*