# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

| | |
|---|---|
| **In re:**<br><br>**AMERICAN UNAGI, INC.,**[1]<br><br>Debtor. | **Chapter 11**<br><br>**Case No. 25-10180** |

## MOTION FOR ENTRY OF: (I) ORDER (A) APPROVING BID PROCEDURES, (B) SCHEDULING AUCTION AND SALE HEARING, (C) APPROVING FORM AND MANNER OF NOTICE THEREOF, (D) APPROVING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (E) GRANTING RELATED RELIEF; (II) ORDER (A) APPROVING SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR, (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (C) GRANTING RELATED RELIEF

American Unagi, Inc., the above-captioned debtor and debtor-in-possession (the "**Debtor**"), hereby moves this Court (this "**Motion**"), pursuant to, among others, §§ 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"); Rules 2002, 6004, 6006, 9007, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); and Rules 2002-1 and 9014-1 of the Local Rules of the Bankruptcy Court for the District of Maine (the "**Local Rules**"), for the entry of the following:

(i) an order, substantially in the form filed herewith (the "**Bid Procedures Order**"), (a) approving procedures in connection with the potential sale of substantially all of the assets of the Debtor (the "**Bid Procedures**"); (b) scheduling the auction and hearing to consider approval of the sale, (c) approving the form and manner of notice thereof, (d) approving procedures relating to the assumption and assignment of certain executory contracts and unexpired leases, and (e) granting related relief; and

(ii) an order, substantially in the form to be filed following entry of the Bid Procedures Order (the "**Sale Order**"), (x) approving the sale of the Assets (defined below) free and clear of all liens, claims, encumbrances, and other interests (except assumed liabilities and permitted liens, if any), (y) approving the assumption and assignment

---

[1] The last four digits of American Unagi, Inc.'s federal taxpayer identification number are 5308, and its principal place of business is 186 One Pie Road, Waldoboro, Maine 04572.

of certain executory contracts and unexpired leases related thereto, and (z) granting related relief.

In support of this Motion, the Debtor respectfully states as follows:

## JURISDICTION AND VENUE

1.      The United States District Court for the District of Maine (the "**District Court**") has original, but not exclusive, jurisdiction over the Debtor's chapter 11 case pursuant to 28 U.S.C. § 1334(b).  Pursuant to 28 U.S.C. § 157 and Rule 83.6 of the District Court's local rules, the District Court has authority to refer and has referred this proceeding to this Court.

2.      This is a core proceeding under 28 U.S.C. § 157(b).

3.      Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

**A.      The Chapter 11 Case**

4.      On September 29, 2025 (the "**Petition Date**"), the Debtor commenced its chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.

5.      The Debtor continues to operate its business and manage its property as a debtor and debtor-in-possession.  To date, no operating trustee, examiner, or statutory committee has been appointed in the case by the United States Trustee.

6.      The Debtor's case is being jointly administered for procedural purposes only.

**B.      The Debtor's History and the Sale and Marketing Process**

7.      The Debtor is a Waldoboro, Maine-based startup that is the only U.S. producer and processor of American eel.  The Debtor grows and sells live and value-added eel products to restaurants, other consumers, and distributors throughout the world.  The business began in 2014 through raising a handful of baby eels to adult size, and in 2022, the Debtor completed construction

of a multi-million dollar, 27,000 square-foot facility at the Waldoboro Business Park. The Debtor's aquaculture systems facility is the first in the United States to grow Maine eels to market size. The Debtor works with licensed harvesters in Maine, one of only two U.S. states with an elver fishery. This provides a consistent market for local fishermen and ensures the eels come from a well-managed wild stock.

8.     Prior to and after the Petition Date, the Debtor, working with its advisors, including Corporate Finance Associates ("**CFA**") as its proposed business broker, considered a variety of options to maximize the value of its assets for the benefit of all parties in interest, including a debt restructuring and various sale options. Ultimately, after careful consideration, including the costs and risks of each option, the Debtor determined that the value-maximizing strategy was to pursue a going-concern sale of its assets to a buyer through chapter 11. In connection with that decision, the Debtor held discussions with several interested potential buyers prior to the Petition Date, but, ultimately, no actionable offers materialized during that time. The Debtors and CFA, however, will continue those marketing discussions after the Petition Date, including with some of those same interested parties and new parties identified after the bankruptcy filing.

### C.    Reservation of Rights to Identify a Stalking Horse Bidder

9.     The Debtor believes that designating one or more parties to serve as a stalking horse bidder in connection with the sale of the Assets may further the goal of maximizing the value of the Assets. The Debtor, therefore, reserves the right to seek approval of a stalking horse bidder upon separate motion and notice.

### D.    Milestones for the Sale Process

10.    The Bid Procedures are designed to comply with the following milestones (the "**Milestones**") negotiated between the Debtors, Maine Community Bank (the "**MCB**") and the

Finance Authority of Maine ("**FAME**" and, together with the MCB, the "**Lenders**") as part of the terms of the Lenders' consent to the Debtor's ongoing use of cash collateral and MCB's willingness to provide debtor in possession financing to enable the Debtor to operate through the sale process, each as reflected in the Restructuring Support Agreement (as amended, the "**RSA**") attached hereto as **Exhibit A**:

    (a)    An order approving the Bid Procedures shall be entered on or before **October 16, 2025.**[2]

    (b)    Competing bids shall be due on or before **November 18, 2025**.

    (c)    An auction shall be held on or before **November 19, 2025**.

    (d)    The hearing to consider the sale shall be held on or before **November 20, 2025**.

    (e)    The sale shall close on or before **December 5, 2025**.

**E.**    **Supplemental Disclosures**

11.    The Debtor submits the following additional disclosures regarding the proposed sale process:

| Category | Disclosure |
|---|---|
| Assets that are subject of the Motion | All assets of the Debtor, which may include, without limitation, inventory, accounts receivable, equipment, machinery, furniture, fixtures, vehicles, parts, intellectual property, trademarks and trade names, contracts (including lease agreements), customer lists, marketing materials, and permits and licenses (as transferable). |
| Market value of the Assets | To be determined through Bid Procedures |
| Balance due for liens on certain Assets as of September 23, 2025 | MCB:    Term Loan - $2,543,403.50<br>First LOC - $2,342,216.61<br>Second LOC - $596,862.42 |

---

[2] The RSA (Section 1(d)(i)) states that it is a milestone for the Court to enter an order approving the Bid Procedures "no later than ten (10) business days after the date of the filing of the Bid Procedures and Sale Motion." That date is October 16, 2025.

| (exclusive of collection costs) | FAME: $967,401.59 |
|---|---|
| Applicable sections of the Bankruptcy Code and procedural rules | Sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code; Rules 2002, 6004, 6006, 9007, 9008, and 9014 of the Bankruptcy Rules; and Local Rules 2002-1 and 9014-1 |

## **RELIEF REQUESTED**

12.     By this Motion, **first**, the Debtor seeks entry of the Bid Procedures Order substantially in the form filed herewith:

    (a)     approving the Bid Procedures attached to the Bid Procedures Order as **Exhibit 1** in connection with the sale (the "**Sale**") of the Assets;

    (b)     scheduling an auction (the "**Auction**") and sale hearing (the "**Sale Hearing**") with respect to the Sale;

    (c)     approving the form and manner of notice of the Sale;

    (d)     approving procedures for the proposed assumption and assignment (the "**Assumption Procedures**") of certain assumed contracts and leases; and

    (e)     granting related relief.

13.     **Second**, following completion of the process set forth in the Bid Procedures, the Debtor intends to seek entry of the Sale Order at the Sale Hearing, providing the following relief:

    (a)     if an Auction is conducted, authorizing and approving the sale of the Assets to the bidder(s) that the Debtor, in consultation with the Lenders, determines to have submitted the highest and/or best bid for the Assets (including a sole bidder if no Auction occurs, the "**Successful Bidder(s)**") (or, if the Successful Bidder(s) fail to consummate the Sale, to the bidder with the next-highest or second-best bid at the Auction for the Assets (the "**Backup Bidder**")), free and clear of liens, claims, encumbrances, and other interests (other than any assumed liabilities and permitted liens);

    (b)     if an Auction is not conducted, authorizing and approving the Sale of the Assets to the Successful Bidder(s) if acceptable to the Debtor, in consultation with the Lenders, free and clear of liens, claims, encumbrances, and other interests (other than any assumed liabilities and permitted liens);

    (c)     authorizing the assumption and assignment of assumed contracts and leases (as will be identified) to the Successful Bidder(s) (or Backup Bidder, as applicable); and

(d)      granting certain related relief.

## THE PROPOSED SALE AND SALE SCHEDULE

14.      By this Motion, the Debtor requests that this Court approve the following general timeline under the Bid Procedures, which are intended to comply with the Milestones:

(a)      **Bid Deadline**: Bids for the Assets (in form and substance as set forth in the Bid Procedures) must be received by no later than **November 18, 2025** (the "**Bid Deadline**").

(b)      **Auction**: The Auction, if necessary, shall be held on **November 19, 2025, at 10:00 a.m.,** or such other time as may be ordered by the Court.

(c)      **Sale Objection Deadline**: Objections to the Sale shall be filed and served no later than **November 20, 2025, at 10:00 AM**.

(d)      **Assumed Contracts Objection Deadline**: Objections to the potential assumption and assignment of any contract or lease, including proposed cure amounts, shall be filed and served no later than **November 20, 2025, at 10:00 AM**.

(e)      **Sale Hearing**: The Sale Hearing shall be held on **November 20, 2025, at 1:00 p.m.**

15.      The Debtor believes, including based on consultation with CFA, that this timeline provides a reasonable prospect of receiving the highest and/or best offer(s) under the circumstances without unduly prejudicing the estate, while still ensuring that the Sale can proceed in accordance with the Milestones and with the Lenders' support.  The Debtor further believes that the proposed timeline, including the Milestones, is sufficient to complete a fair, robust, and open sale process that will maximize the value received for the Assets.  CFA (which, together with the Debtor, has already has conducted limited pre-petition marketing) will use the time following entry of the Bid Procedures Order to continue actively marketing the Assets in an attempt to solicit the highest or best bids available.  The Debtor believes that the relief requested by this Motion is in the best interests of creditors, other stakeholders, and all other parties in interest, and should be approved.

## THE BID PROCEDURES

### A.    The Bid Procedures

16.    The Bid Procedures were developed to permit an efficient (but sufficient) marketing and sale process, to promote participation and active bidding, and to ensure that the highest or best offer is received for the Assets, all in compliance with the Milestones.  The Bid Procedures describe, among other things, the requirements for prospective purchasers to participate in the bidding process, the availability and conduct of due diligence, the deadline for submitting a competing bid, and the method and factors for determining qualifying bids.  The Bid Procedures also recognize the obligations to maximize the value of the Assets and, as such, do not impair the ability to consider all qualified bid proposals.

### B.    The Auction and Sale

17.    If more than one qualified bid is received by the Bid Deadline, the Debtor shall conduct the Auction to determine the highest and best qualified bid in accordance with the Bid Procedures.

### C.    Form and Manner of Notice

18.    On or within two (2) business days after entry of the Bid Procedures Order, the Debtor shall cause a copy of the Bid Procedures Order, the Bid Procedures, and the Cure and Possible Assumption and Assignment Notice (defined below) to be served on: (a) the Office of the United States Trustee for the District of Maine; (b) the holders of the 20 largest, non-insider unsecured claims against the Debtor; (c) any other parties with known secured claims against the Debtor or their counsel, if known; (d) all parties that have executed a non-disclosure agreement (if any) with CFA; (e) the Internal Revenue Service; (f) all state and local taxing authorities with an interest in the Assets; (g) the Attorney General for the State of Maine; (h) all other known governmental agencies with an interest in the Sale and transactions proposed thereunder; (i) all

other parties known or reasonably believed to have asserted an interest in the Assets; (j) the counterparties to the assumed contracts and leases (the "**Assumed Contract Counterparties**"); (k) the Debtors' insurance carriers; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002.

**D.    Summary of the Assumption Procedures**

19.    Pursuant to the Bid Procedures Order, notice of the proposed assumption and assignment of the assumed contracts and leases, the proposed cure amounts relating thereto, and the rights, procedures, and deadlines for objecting thereto, shall be provided in separate notices, attached to the Bid Procedures Order as **Exhibit 2** (the "**Cure and Possible Assumption and Assignment Notice**") to be sent to the applicable Assumed Contract Counterparties.

## BASIS FOR RELIEF

**A.    The Relief Sought in the Bid Procedures Order is in the Best Interests of the Estate and Should Be Approved.**

**1.    The Proposed Notice of the Bid Procedures and the Sale Process is Appropriate and Sufficient.**

20.    The Debtor seeks authority to sell the Assets through a competitive bidding and Auction process.  The Debtor, through CFA, will conduct an extensive marketing process (and already have been doing so, pre-petition).  The Bid Procedures are designed to elicit bids from one or more parties and to encourage a robust auction of the Assets, thus maximizing the value of the Debtor's estate for the benefit of creditors and other stakeholders.

21.    Under Bankruptcy Rule 2002(a) and (c), the Debtor is required to notify creditors of the proposed sale of the Assets, including a disclosure of the time and place of any auction, the terms and conditions of a sale, and the deadline for filing any objections.  The Debtor respectfully submits that the Bid Procedures Order is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale.  The Debtor further submits that notice of this

Motion and the related hearing to consider entry of the Bid Procedures Order, coupled with the Cure and Possible Assumption and Assignment Notice, as provided for herein, constitutes good and adequate notice of the Sale and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002.

### 2.    The Bid Procedures Are Appropriate and Will Maximize Value.

22.    Bid procedures may be approved when they provide a benefit to a debtor's estate by maximizing the value of the debtor's assets.  See In re Edwards, 228 B.R. 552, 361 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate.").  Courts have made clear that a debtor's business judgment is entitled to deference with respect to the procedures to be used in selling an estate's assets.  See In re Schipper, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification'") (internal citations omitted)); see also In re Integrated Resources, Inc., 147 B.R. 650, 656-57 (S.D.N.Y. 1992) (bid procedures negotiated by a trustee are to be reviewed in accordance with the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid").  Courts recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and, therefore, appropriate in the context of bankruptcy transactions.  See, e.g., In re O'Brien Envtl. Energy, Inc., 181 F.3d 527, 537 (3d Cir. 1999); Integrated Resources, 147 B.R. at 659 (bid procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets").

23.    The Debtor submits that the Bid Procedures will establish the parameters under which the value of the Assets may be tested at the Auction.  The Bid Procedures will increase the likelihood the Debtor will receive the greatest possible consideration because they will ensure a competitive and fair bidding process.  Specifically, the proposed Bid Procedures contemplate an

open auction process with minimum (but appropriate) barriers to entry and provide potential

bidding parties with sufficient time to perform due diligence and acquire the information necessary

to submit a timely and well-informed bid.  At the same time, the proposed Bid Procedures provide

the Debtor with a robust opportunity to consider competing bids and select, in consultation with

the Lenders, the highest or best offer for the completion of the Sale.

<blockquote>

**3.      The Proposed Notice Procedures for the Assumed Contracts and Leases Are Appropriate.**
</blockquote>

24.      The Sale contemplates the assumption and assignment of the assumed contracts and

leases to the Successful Bidder arising from the Auction (if conducted).  The Bid Procedures

specify the process by which the Debtor will serve Cure and Possible Assumption and Assignment

Notices and the procedures and deadline for Assumed Contract Counterparties to Assumed

Contracts to file and serve Cure or Assignment Objections.  Except as may otherwise be agreed,

at the closing of the Sale, the Successful Bidder shall cure those defaults under the assumed

contracts and leases that need to be cured in accordance with § 365(b) of the Bankruptcy Code, by

payment of the undisputed cure amount (the "**Cure Amount**").  The Debtor determined the Cure

Amounts based on a careful, good faith review of their books and records, to identify the amounts

owed as of the Petition Date.

25.      As set forth in the Bid Procedures Order, the Debtor also requests that any party

that fails to object to the proposed assumption and assignment of any assumed contracts and leases

be deemed to consent to the assumption and assignment of the applicable assumed contracts and

leases pursuant to § 365 of the Bankruptcy Code on the terms set forth in the Sale Order, along

with the Cure Amounts identified in the Cure and Possible Assumption and Assignment Notice.

26.      The Debtor believes that the Assumption Procedures are fair and reasonable,

provide sufficient notice to the Assumed Contract Counterparties of the potential assumption and

assignment of their assumed contracts and leases, and provide certainty to all parties in interest

regarding their obligations and rights with respect thereof.  Accordingly, the Debtor requests that

this Court approve the Assumption Procedures set forth in the Bid Procedures Order.

**B.    Approval of the Proposed Sale Is Appropriate and in the Best Interests of the Estate.**

> **1.    The Sale of the Assets Should Be Authorized Pursuant to § 363 of the Bankruptcy Code.**

27.    The authority to sell assets conferred upon a debtor-in-possession by § 363(b) of

the Bankruptcy Code includes the sale of substantially all the assets of an estate.  See In re Coastal

Cable T.V., Inc., 24 B.R. 609, 611 (B.A.P. 1st Cir. 1982) (vacated on other grounds) ("A sale of

all or most of a debtor's assets may occur prior to confirmation of a plan."); Otto Preminaer Films,

Ltd. v. Qintex Entm't., Inc. (In re Qintex Entm't Inc.), 950 F.2d 1492, 1495 (9th Cir. 1991)

("Section 363 of the Code allows a debtor to sell assets of the estate . . . including a sale of

substantially all the assets of the estate.").  The power to approve a sale under § 363(b) is "within

the sound discretion of the trial court."  Coastal Cable T.V., 24 B.R. at 611.  "[A] chapter 11 debtor

may sell all or substantially all its assets pursuant to section 363(b) prior to confirmation of a

chapter 11 plan, when the court finds a good business reason for doing so."  In re General Motors

Corp., 407 B.R. 463, 491 (Bankr. S.D.N.Y. 2009); see also In re AMR Corp., 490 B.R. 158, 164

(Bankr. S.D.N.Y. 2013).

28.    The Debtor satisfies the requirement that it have a "sound business purpose" for the

sale of the Assets.  The Debtor considered various restructuring alternatives prior to commencing

the chapter 11 case and determined that a sale of the Assets under § 363(b) will maximize the value

of the estate for the benefit of all stakeholders.  First, the Debtor believes that the Sale will

maximize the Assets' value by allowing a party to bid on assets that would have substantially less

value on a stand-alone or liquidation basis, including because the Debtor's assets include

11

perishable inventory, as well as specialized equipment with a limited universe of users.  Second,

the sale of the Assets will be subject to competing bids, enhancing the Debtor's ability to receive

the highest or otherwise best value for the Assets.  Ultimately, the Successful Bid, after being

subject to a "market check" in the form of the Auction and accepted by the Debtor in the exercise

of its reasonable business judgment, will constitute the highest and best offer for the Assets, and,

at this time, the Debtor believes will provide a greater recovery for the estate than any known or

practically available or feasible alternative.  See, e.g., In re Trans World Airlines, Inc., No. 01-

00056, 2001 WL 1820326, at *4 (Bankr. D. Del. 2001) (while a "section 363(b) sale transaction

does not require an auction procedure . . . the auction procedure has developed over the years as

an effective means for producing an arm's-length fair value transaction").

29.    As such, the Debtor's determination to explore selling the Assets through an

Auction process and subsequently to enter into the asset purchase agreement with the Successful

Bidder will be a valid and sound exercise of the Debtor's business judgment.  The Debtor will

submit evidence at the Sale Hearing to support these conclusions, as appropriate.

**2.     Adequate and Reasonable Notice of the Sale Will Be Provided.**

30.    The Bid Procedures Order will: (i) be served in a manner that provides at least 21-

days' notice of the date, time, and location of the Sale Hearing following entry of the Bid

Procedures Order; (ii) inform parties in interest of the deadlines for objecting to the Sale or the

assumption and assignment of the assumed contracts and leases; and (iii) otherwise include all

information relevant to parties interested in or affected by the Sale.  Significantly, the form and

manner of such notice will have been approved by this Court pursuant to the Bid Procedures Order,

after notice and a hearing, before it is served on parties in interest.

**3.     The Sale and Purchase Price Will Reflect a Fair-Value Transaction.**

31.     The Debtor and CFA will market the Assets and solicit offers consistent with the

Bid Procedures, including, without limitation, by providing acceptable bidders with access to the

data room, confidential information memorandum, and other requested information.  In this way,

the number of bidders that are eligible to participate in the competitive Auction process will be

maximized.

**4.     The Sale of the Assets Should Be Free and Clear of Claims and Interests
Pursuant to § 363(f) of the Bankruptcy Code.**

32.     The Debtors submit that it is appropriate to sell the Assets free and clear of all liens,

claims, encumbrances, and other interests pursuant to § 363(f) of the Bankruptcy Code, with any

such claims and interests not released at closing attaching to the net sale proceeds of the Assets,

as and to the extent applicable.

33.     Section 363(f) of the Bankruptcy Code provides that:

The trustee may sell property under [§ 363(b)] free and clear of any interest in such
property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free
and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to
be sold is greater than the aggregate value of all liens on such
property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable
proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  "Because the language of § 363(f) is in the disjunctive, courts can approve a

sale if any one of the five conditions is satisfied."  BAC Home Loans Servicing LP v. Grassi, 2011

WL 6096509, at *5 (B.A.P. 1st Cir. Nov. 21, 2011).

34.     First, in relation to the consent requirements of § 363(f)(2), the Debtor will work to obtain consent from potential lienholders on the Assets, including the Lenders.  Further, this Court should deem any potential lienholder or other interest holder of any type to consent to the free and clear sale under § 363(f)(2) to the extent such interest holder does not timely object to the sale transaction after notice thereof.  See BAC Home Loans, 2011 WL 6096509, at *5 ("This Panel, as well other courts in this circuit and nationally, views silence as implied consent sufficient to satisfy the consent requirement for approving a sale under § 363(f)(2).") (citing cases); In re Colarusso, 295 B.R. 166, 175 (B.A.P. 1st Cir. 2003), aff'd, 382 F.3d 51 (1st Cir. 2004) (failure to object to the sale was consent under § 363(f)(2)).

35.     Second, in relation to the requirements of § 363(f)(3), it is anticipated that the sale of the Assets may generate sufficient proceeds to satisfy some or all of the properly perfected, non-avoidable liens against the Assets (based on allocation of the sale proceeds and subject to any reservation of rights regarding any such liens).

36.     Third, under § 363(f)(4), to the extent a bona fide dispute exists as to any liens or interests, the Debtor may sell free and clear of such liens and interests, with those liens or interests attaching to the sale proceeds for future determination and allocation (if any).

37.     Fourth, under § 363(f)(5), this Court is empowered to authorize the sale free and clear of any claim or interest as long as that creditor receives the value of its collateral.  See In re Boston Generating, LLC, 440 B.R. 302, 332 (Bankr. S.D.N.Y. 2010); In re Beker Indus. Corp., 63 B.R. 474, 477 (Bankr. S.D.N.Y. 1986); In re Oneida Lake Dev., Inc., 114 B.R. 352, 356-57 (Bankr. N.D.N.Y. 1990).  Interest holders, including secured creditors, could be compelled to accept a money satisfaction of their respective interests pursuant to § 363(f)(5) of the Bankruptcy Code. See, e.g., In re James, 203 B.R. 449, 453 (Bankr. W.D. Mo. 1997); In re Grand Slam U.S.A., Inc.,

178 B.R. 460, 461-62 (E.D. Mich. 1995).   Courts considering this issue have held that the "cramdown" provision under the Bankruptcy Code constitutes a "legal or equitable proceeding" and permits a sale under § 363(f)(5).  See, e.g., Grand Slam, 178 B.R. at 464; In re Levitt & Sons, LLC, 384 B.R. 630, 648 (Bankr. S.D. Fla. 2008); In re Gulf States Steel, Inc. of Ala., 285 B.R. 497, 508 (Bankr. N.D. Ala. 2002); Scherer v. Fed. Nat. Mortg. Ass'n (In re Terrace Chalet Apartments, Ltd.), 159 B.R. 821, 829 (N.D. Ill. 1993).  Any liens against the Assets released under § 363(f)(5), therefore, shall attach to the cash proceeds received from the sale of the Assets in the same force, effect, and priority as such liens had prior to the closing of the Sale, subject to all rights and defenses of the Debtor or any party in interest.

38.   For avoidance of doubt, the Milestones and related sale requirements in any final cash collateral order in this case as to the Lenders shall continue to apply to the sale of the Assets, including the requirement that any sale order under § 363(f) shall provide that the gross proceeds (other than carve-outs) from the Lenders' collateral shall be paid and applied to the indefeasible payment of the Lenders' secured claims at closing.  The Lenders' consent to any sale and release of any liens held by the Lenders under § 363(f) shall remain subject to such requirements, and all such rights of the Lenders are reserved.

### 5.   The Assets and the Assumed Contracts Should Be Sold Free and Clear of Successor Liability.

39.   The Debtor proposes that the Sale Order provide that the Successful Bidder shall not have any successor liability relating to the Debtor or the Assets to the maximum extent permitted by law.  Although § 363(f) of the Bankruptcy Code provides for the sale of assets "free and clear of any interests," the term "any interest" is not defined anywhere in the Bankruptcy Code. Courts, however, have held that a buyer of a debtor's assets pursuant to a § 363 sale takes free from successor liability resulting from pre-existing claims.  See Amphenol Corp. v. Shandler (In

re Insilco Techs., Inc.), 351 B.R. 313, 322 (Bankr. D. Del. 2006) (stating that a § 363 sale permits

a buyer to take ownership of property without concern that a creditor will file suit based on a

successor liability theory).   Under § 363(f) of the Bankruptcy Code, the Successful Bidder is

entitled to know that the Assets are not tainted by claims that could be asserted against the

Successful Bidder after the Sale is completed (other than agreed assumed liabilities, if any).

Absent that ruling, the value of the Assets could be compromised.   Accordingly, the Sale Order

should state that the Successful Bidder is not liable as a successor under any theory of successor

liability, for interests that encumber or relate to the Assets.

> **6.    The Sale Has Been Proposed in Good Faith and Without Collusion, and the Successful Bidder Will Be a "Good-Faith Purchaser" Entitled to the Full Protection of Bankruptcy Code § 363(m); and the Sale of the Assets Does Not Violate Bankruptcy Code § 363(n).**

40.    The Debtor requests that, at the Sale Hearing, the Court find that the Successful

Bidder is entitled to the benefits and protections provided by § 363(m) of the Bankruptcy Code in

connection with the Sale of the Assets.

41.    Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

42.    Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold

pursuant to § 363 from the risk it will lose its interest in the purchased assets if the order allowing

the sale is reversed on appeal, as long as such purchaser purchased or leased the assets in "good

faith."   Although the Bankruptcy Code does not define "good faith," courts have held a purchaser

shows its good faith through the integrity of its conduct during the course of the sale proceedings,

finding that, where there is a lack of such integrity, a good faith finding may not be made.  See, e.g., Abbotts Dairies of Pa., 788 F.2d at 147 ("Typically, the misconduct that would destroy a [buyer's] good faith status at a judicial sale involves fraud, collusion between the [proposed buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); In the Matter of Andy Frain Servs., Inc., 798 F.2d 1113 (7th Cir. 1986) (same); In re Sasson Jeans, Inc., 90 B.R. 608, 610 (S.D.N.Y. 1988) (same).

43.    The Debtor anticipates that a Successful Bidder arising from the Auction, if applicable, would be a "good faith purchaser" within the meaning of § 363(m) of the Bankruptcy Code, and the resulting purchase agreement would be a good-faith agreement on arm's-length terms entitled to the protections of § 363(m) of the Bankruptcy Code.  As set forth in more detail above, the consideration to be received by the Debtor pursuant to the Sale will be subject to a market process by virtue of the Debtor's marketing efforts and the Auction, and will be substantial, fair, and reasonable.  Further, where—as the Debtor anticipates will be the case here—there is no indication of any "fraud or collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders" or similar conduct, there is no cause that would permit the Sale to be avoided pursuant to § 363(n).  Finally, the Successful Bidder's offer will be evaluated and approved by the Debtor in consultation with its advisors.

44.    Moreover, because there will be no fraud or improper dealing of any kind, the Sale does not constitute an avoidable transaction pursuant to § 363(n) of the Bankruptcy Code, and, as a result, the purchaser should receive the protections afforded good faith purchasers by § 363(m) of the Bankruptcy Code.  Accordingly, the Debtor requests that the Court make a finding at the Sale Hearing that the agreement reached with the Successful Bidder was at arm's length and is

entitled to the full protections of § 363(m) of the Bankruptcy Code. The Debtor will submit evidence at the Sale Hearing to support these conclusions, as appropriate.

## C. The Assumption and Assignment of the Proposed Assumed Contracts and Leases Should Be Approved.

45. A debtor is authorized to assume an executory contract and/or unexpired lease provided that, at the time of assumption, the debtor: (a) cures, or provides adequate assurance that the debtor will promptly cure, any default; (b) compensates, or provides adequate assurance that the debtor will promptly compensate, the counterparty for any actual pecuniary loss resulting from any default; and (c) provides adequate assurance of future performance under the executory contract or unexpired lease. See 11 U.S.C. § 365(a), (b)(1). A default based upon the filing of the bankruptcy case or the insolvency or financial condition of the debtor need not be cured. See 11 U.S.C. § 365(b)(2). The standard applied in determining whether an executory contract or unexpired lease should be assumed is the "business judgment" test, which requires a debtor to determine that the requested assumption or rejection would be beneficial to its estate. See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp., 872 F.2d 36, 40 (3d Cir. 1989).

46. In the case of an assumption and assignment, the purchaser or assignee provides the adequate assurance of future performance. See 11 U.S.C. § 365(f)(2). The Bankruptcy Code does not define the term "adequate assurance," and courts have found that "the term 'adequate assurance' was intended to be given a practical, pragmatic construction." In re DBSI, Inc., 405 B.R. 698, 708 (Bankr. D. Del. 2009). Adequate assurance is "something less than an absolute guarantee." Id. Counterparties to assumed contracts and leases will have the opportunity to object to adequate assurance of future performance by Successful Bidder. Accordingly, the Debtor submits that the assumption and assignment of the assumed contracts and leases as set forth herein should be approved.

47.    Here, this Court should approve the decision to assume and assign the proposed assumed contracts and leases in connection with the Sale as a sound exercise of the Debtor's business judgment.  First, the proposed assumed contracts and leases are essential to inducing the best offer for the Assets, particularly if the buyer requires the ongoing use of the Debtor's leased real property.  Second, it is unlikely any purchaser would want to acquire the Assets unless the proposed contracts and leases that generate value are transferred in the transaction.  Third, the proposed assumed contracts and leases will be assumed and assigned as part of a process approved by the Court pursuant to the Bid Procedures Order and, thus, will be reviewed by key constituents in this chapter 11 case.  Accordingly, the Debtor submits that the assumption and assignment of the proposed assumed contracts and leases, if required by the Successful Bidder, should be approved as a sound exercise of the Debtor's business judgment.

48.    To assist in the assumption, assignment, and sale of the proposed assumed contracts and leases, the Debtor also requests the Sale Order approving the sale of the Assets provide that anti-assignment provisions in the assumed contracts and leases shall not restrict, limit, or prohibit the assumption, assignment, and sale of the proposed assumed contracts and leases and are deemed and found to be unenforceable anti-assignment provisions within the meaning of § 365(f) of the Bankruptcy Code.  Section 365(f)(1) of the Bankruptcy Code permits a debtor to assign unexpired leases and contracts free from such anti-assignment restrictions.  The Debtor submits that the Bid Procedures Order complies with applicable law and will provide sufficient notice and opportunities to object to permit assignment of the assumed contracts and leases at closing.

49.    Finally, the Debtor requests that they be relieved from any further liability with respect to the proposed assumed contracts and leases after assumption and assignment to the Successful Bidder.  See 11 U.S.C. § 365(k).

**D.      Relief Pursuant to Bankruptcy Rules 6004(h) and 6006(d) Is Appropriate.**

50.      Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."   Additionally, Bankruptcy Rule 6006(d) provides an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."   The Debtor requests that the Sale Order be effective immediately upon its entry by providing the 14-day stay under Bankruptcy Rules 6004(h) and 6006(d) be waived.   The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented.   See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d).   To maximize the value received from the Assets, and to ensure that the Successful Bidder is free to close the Sale as soon as possible after entry of the Sale Order, the Debtor hereby requests that the Court waive the 14-day stay periods under Bankruptcy Rules 6004(h) and 6006(d).

WHEREFORE, the Debtor respectfully requests that this Court: (i) enter the Bid Procedures Order; (ii) enter the Sale Order at the Sale Hearing; and (iii) grant such other and further relief as is just and proper.

Dated:   October 1, 2025

Respectfully submitted,
**BERNSTEIN, SHUR, SAWYER & NELSON, P.A.**

_/s/ Adam R. Prescott_
Adam R. Prescott, Esq.
D. Sam Anderson, Esq.
100 Middle Street
PO Box 9729
Portland, Maine 04104
Telephone: (207) 774-1200
Facsimile: (207) 774-1127
sanderson@bernsteinshur.com
aprescott@bernsteinshur.com

_Proposed Counsel to the Debtor and Debtor in Possession_