**Exhibit A**
**RSA and First Amendment**

Docusign Envelope ID: 768E8FB1-BBAA-48A1-83FA-9042CB458760

Case 25-10180    Doc 16-1    Filed 10/01/25    Entered 10/01/25 15:23:06    Desc Exhibit
A - Restructuring Support Agreement and First Amendment    Page 2 of 11

*Execution Version*

# RESTRUCTURING SUPPORT AGREEMENT

This RESTRUCTURING SUPPORT AGREEMENT (this "**Agreement**") is entered into by and among: (i) American Unagi, LLC ("**American Unagi**"), (ii) Maine Community Bank (including as successor to Gorham Savings Bank, "**MCB**"), and (iii) Finance Authority of Maine ("**FAME,**" together with MCB, the "**Lenders**"). The Lenders and American Unagi are each referred to herein as a "**Party**" and, collectively, as the "**Parties**."

**WHEREAS**, on or about August 26, 2021, MCB (as lender) made to American Unagi (as borrower): (i) that certain construction term loan (Loan A) in the original principal amount of **$2,500,000.00** (the "**MCB Term Loan**"); and (ii) that certain line of credit loan (Loan B) in the maximum principal amount of **$2,200,000.00** (the "**MCB LOC**"); and

**WHEREAS**, as of September 23, 2025, the balance owed under the MCB Term Loan was **$2,342,216.61** (exclusive of costs of collection), and the balance owed under the MCB LOC was **$2,543,403.50** (exclusive of costs of collection); and

**WHEREAS**, the MCB Term Loan and the MCB LOC are secured by first and second priority liens, respectively, on all or substantially all of the assets of American Unagi, including, without limitation, leasehold interests, rents, cash, inventory, equipment, accounts, and accounts receivable (collectively, as set for more specifically in the applicable security agreements, the "**Collateral**"); and

**WHEREAS**, on or about August 26, 2021, FAME (as lender) made to American Unagi (as borrower) that certain economic recovery loan in the maximum principal amount of **$1,000,000.00** (the "**FAME Direct Loan**"); and

**WHEREAS**, the FAME Direct Loan is secured by a third priority lien on the Collateral, junior only to the liens of MCB that secure the MCB Term Loan and the MCB LOC; and

**WHEREAS**, as of September 23, 2025, the balance owed under the FAME Direct Loan was **$967,401.59** (exclusive of costs of collection), and

**WHEREAS**, on or about March 22, 2023, MCB (as lender) made to American Unagi (as borrower) that certain additional line of credit loan in the maximum principal amount of **$575,000.00** (the "**MCB 2nd LOC**"); and

**WHEREAS**, the MCB 2nd LOC is secured by a fourth priority lien on the Collateral, junior to the liens securing the MCB Term Loan, MCB LOC, and FAME Direct Loan; and

**WHEREAS**, as of September 23, 2025, the balance owed under the MCB 2nd LOC was **$596,862.42** (exclusive of costs of collection), and

**WHEREAS**, in addition to the FAME Direct Loan, FAME has provided a 50% pro rata guarantee to MCB as to the MCB LOC; and

**WHEREAS**, the Parties have engaged in good faith, arms' length negotiations and agreed to enter into certain restructuring transactions in accordance with the terms and conditions set forth in this Agreement and to facilitate the orderly, going-concern sale of the Collateral and other assets

Docusign Envelope ID: 768E8EB4-BDAA-48A1-835A-9042CB458760

Case 25-10180    Doc 16-1    Filed 10/01/25    Entered 10/01/25 15:23:06    Desc Exhibit
A - Restructuring Support Agreement and First Amendment    Page 3 of 11

*Execution Version*

of American Unagi (the "**Restructuring**"); and

**WHEREAS**, the Restructuring shall be implemented through the commencement of a voluntary case (the "**Chapter 11 Case**") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Maine (the "**Bankruptcy Court**").

**NOW, THEREFORE**, in consideration of the promises and mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. Effective Date. This Agreement shall be effective upon the date on which counterpart signature pages to this Agreement shall have been executed and delivered by all Parties (the "**Effective Date**").

2. Bankruptcy Process and Milestones.

    (a) Commencement of the Chapter 11 Case. American Unagi agrees that, as soon as reasonably practicable, but in no event later than September 29, 2025 (the date on which the filing of the Chapter 11 Case actually occurs, the "**Petition Date**"), American Unagi shall file with the Bankruptcy Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and any and all other documents necessary to commence the Chapter 11 Case.

    (b) Debtor-in-Possession Loan. To facilitate the Restructuring and help fund the Chapter 11 Case, MCB shall provide a loan to American Unagi in the maximum principal amount of **$526,000.00**, which shall be disbursed to American Unagi in the sum of **$150,000.00** prior to the Petition Date (and no later than one (1) business day after execution of this Agreement by all Parties) (the "**Initial Restructuring Loan**") as a protective advance under the MCB Term Loan, and the balance through an increase under the MCB LOC after the Petition Date (the "**Post-Petition Restructuring Loan**" and, together with the Initial Restructuring Loan, the "**DIP Loan**"). After the Petition Date, upon entry of the interim order approving the DIP Loan, the Initial Restructuring Loan shall be transferred to be deemed an obligation arising under the MCB LOC, along with the Post-Petition Restructuring Loan. The DIP Loan shall accrue interest at the rate under the applicable loan documents on amounts actually advanced. The proceeds of the Initial Restructuring Loan shall be allocated as follows: (i) **$25,000.00** shall be disbursed immediately to Bernstein, Shur, Sawyer, & Nelson, PA to fund pre-petition legal fees and costs, and (ii) **$125,000.00** shall be used by American Unagi for ordinary course working capital expenses as may be pre-approved by the Lenders in their reasonable discretion.

    (c) DIP Motion and Milestones. On the Petition Date, American Unagi shall file a motion (the "**DIP Motion**") for approval of the DIP Loan (on an interim and then final basis, subject to applicable notice periods), as well as a proposed form of order, each of which shall be in form and substance reasonably satisfactory to the Lenders. The DIP Motion shall seek approval to include as a "roll up" the Initial Restructuring Loan with the Post-Petition Restructuring Loan within the approved DIP Loan upon entry of a final order granting the DIP Motion. The DIP Loan shall also be subject to the following terms and

conditions:

 (i) It shall be a milestone under this Agreement that the Bankruptcy Court has approved the DIP Loan on an interim basis no later than three (3) business days after the Petition Date and on a final basis no later than thirty (30) days after the Petition Date.

 (ii) The DIP Loan shall: (i) be secured by a first priority lien on all assets of American Unagi, including the Collateral (exclusive of avoidance causes of action and subject to the Carve Out (defined below)); (ii) be subject to entry into commercially reasonable loan documents for a loan of such type (to the extent such documents are required by MCB); and (iii) mature and be payable in full on or before the closing date of the Sale Transaction (defined below).

 (iii) Following the Petition Date and until the DIP Loan is approved on a final basis, American Unagi shall only disburse proceeds of the DIP Loan and cash collateral for payment of actual expenses necessary to avoid immediate and irreparable harm.

(d) <u>Sale Pleadings and Related Milestones</u>.  Within three (3) business days of the Petition Date, American Unagi shall file a motion (the "**Bid Procedures and Sale Motion**") for approval of bidding procedures (the "**Bid Procedures**") and the sale of all or substantially all of its assets (the "**Sale Transaction**"), which Bid Procedures and Sale Motion and related proposed orders shall be in form and substance reasonably satisfactory to the Lenders.

 (i) It shall be a milestone under this Agreement that the Bankruptcy Court shall have entered an order approving the Bid Procedures no later than ten (10) business days after the date of the filing of the Bid Procedures and Sale Motion, with qualified bids due under the Bid Procedures no later than November 18, 2025.

 (ii) It shall be a milestone under this Agreement that American Unagi conduct an auction under the Bid Procedures and related to the Sale Transaction on or before November 19, 2025.

 (iii) It shall be a milestone under this Agreement that the Bankruptcy Court shall have entered an order approving and authorizing the Sale Transaction no later than November 20, 2025.

 (iv) It shall be a milestone under this Agreement that Sale Transaction has closed no later than December 5, 2025.

(e) <u>Broker</u>.  Within three (3) business days after the Petition Date, American Unagi shall file an application for Bankruptcy Court approval of an investment banker or other similar commercial sales broker (the "**Broker**") to market the assets for sale in the Chapter 11 Case.  The Broker and the agreed compensation to be paid to the Broker (the "**Broker Commission**") shall be subject to approval of the Lenders, which such approval shall not be unreasonably withheld.

Case 25-10180 Doc 16-1 Filed 10/01/25 Entered 10/01/25 15:23:06 Desc Exhibit
A - Restructuring Support Agreement and First Amendment Page 5 of 11

*Execution Version*

(f) <u>Cash Collateral</u>. Provided that American Unagi is not in default of this Agreement, and subject to approval of the Bankruptcy Court upon the filing of the DIP Motion, which shall be in form and substance reasonably satisfactory to the Lenders, the Lenders shall consent to the use of cash collateral during the Chapter 11 Case on an interim and then final basis in accordance with the Federal Rules of Bankruptcy Procedure and Local Rules, <u>provided</u>, <u>however</u>, that such consent shall be subject to and conditioned upon entry of interim and final orders by the Bankruptcy Court authorizing the use of cash collateral in accordance with the terms and conditions set forth below (the "**Cash Collateral Terms**"), which shall be binding upon and inure to the benefit of all parties in interest in the bankruptcy case, including American Unagi and its estate, MCB, FAME, and their respective successors and assigns (<u>provided</u> that the Lenders acknowledge that certain of the Cash Collateral Terms are subject to entry of a final order and shall not be approved by the Bankruptcy Court on an interim basis in accordance with the applicable bankruptcy rules):

(i) Allowance of the claims of the Lenders in the amounts set forth above as of the Petition Date, without offset and defenses, and without the need for the Lenders to file proofs of claim;

(ii) Stipulation as to priority, validity, and extent of the liens granted to the Lenders as of the Petition Date;

(iii) Waiver of surcharge rights under section 506(c) of the Bankruptcy Code;

(iv) Waiver of rights under section 552(b) of the Bankruptcy Code and acknowledgement that the Lenders are entitled to continuing liens under section 552(b);

(v) Waiver of all claims and causes of action by the Debtor or its estate against the Lenders;

(vi) Obligation to provide weekly variance reporting to the Lenders on the Thursday of each week for the prior Sunday to Saturday period (which weekly reporting shall be provided by American Unagi starting upon the first disbursement under the Initial Restructuring Loan, including prior to the Petition Date);

(vii) Adequate protection to the Lenders in the form of replacement liens, continuing liens, and super priority administrative expense claims to the extent of any diminution in the value of MCB's or FAME's interest in cash collateral after the Petition Date;

(viii) Budget approved by the Lenders (the "**Budget**"), and obligation of American Unagi to use cash collateral (including proceeds of the DIP Loan) only to pay expenses in accordance with the Budget, <u>provided</u> that the aggregate actual disbursements by American Unagi shall not exceed 110% of the aggregate forecasted disbursements in the Budget. For the avoidance of doubt, no cash collateral or DIP Loan proceeds may be used to investigate or prosecute any

Docusign Envelope ID: 768E8FB4-BBAA-48A1-83EA-9042CB458760

Case 25-10180    Doc 16-1    Filed 10/01/25    Entered 10/01/25 15:23:06    Desc Exhibit
A - Restructuring Support Agreement and First Amendment    Page 6 of 11

*Execution Version*

challenge or claim related to the Lenders or their respective claims or liens against American Unagi; and

(ix) Carve out for payment of United States Trustee fees and professional fees incurred in the Chapter 11 Case by Bernstein Shur in the maximum amount of **$150,000.00**, compensation to the Broker in the amount of the Broker Commission, and professional fees of Ripcord Consulting in the amount of **$35,000.00** (collectively, the "**Carve Out**"), which Carve Out shall be senior to all liens and claims (including, without limitation, MCB's liens, FAME's liens, adequate protection liens, super-priority administrative expense claims, administrative expense claims, and all liens securing the DIP Loan), provided that the balance remaining under the Carve Out shall be reduced dollar-for-dollar by amounts funded under the Budget to the applicable Carve Out professional with cash collateral and DIP Loan proceeds (as set forth in more detail in the applicable cash collateral orders).

(g) Bank Accounts. Within three (3) business days after the Petition Date, American Unagi shall file a motion for authority to maintain its bank account(s) at MCB during the Chapter 11 Case, which motion and related order shall be in form and substance reasonably satisfactory to the Lenders.

(h) Participation in the Chapter 11 Case. Nothing in this Agreement shall limit MCB's or FAME's rights to: (i) appear and participate as a party in interest in any matter to be adjudicated in the Chapter 11 Case, so long as such appearance and positions advocated in connection therewith are not inconsistent with this Agreement; or (ii) enforce any of their rights under this Agreement.

3. Forbearance. During the period commencing on the Effective Date and ending on the termination of this Agreement in accordance with its terms, the Lenders hereby agree to forbear from the exercise of any rights or remedies they may have under or related to the loans set forth above or any other document and under applicable United States or foreign law or otherwise, in each case, with respect to any of the existing or anticipated defaults or events of default.

4. Extensions. Any of the deadlines or milestones set forth in this Agreement may be extended by mutual agreement of the Lenders, in writing, each in their sole discretion.

5. Winddown Budget. In order to provide for an efficient winddown of the Chapter 11 Case and exit from Chapter 11, in addition to the Carve Out, the Lenders agree to leave with American Unagi at closing the sum of **$50,000.00**, which shall be used exclusively to fund allowed expenses related to the winddown and closure of the Chapter 11 Case (including through a liquidating plan, dismissal, or conversion to Chapter 7, as may be determined by American Unagi), provided that so long as any MCB or FAME obligations remain outstanding, American Unagi shall not disburse funds from the winddown budget without the prior consent of the Lenders (which consent shall not be unreasonably withheld).

6. Events of Default and Remedies.

(a) "**Event of Default**" shall mean any of the following:

Page **5** of **8**

Docusign Envelope ID: 768E8FB4-BBAA-48A1-83EA-9042CB458760

Case 25-10180    Doc 16-1    Filed 10/01/25    Entered 10/01/25 15:23:06    Desc Exhibit
A - Restructuring Support Agreement and First Amendment    Page 7 of 11

*Execution Version*

(i) The breach in any material respect by any Party of any of the undertakings, representations, warranties, or covenants set forth herein which remains uncured for a period of five (5) business days after the receipt of written notice of such breach;

(ii) The breach of any deadline or milestone set forth in this Agreement, unless such deadline is extended with the written consent of the Lenders, without any cure right;

(iii) An examiner with expanded powers or a trustee shall have been appointed in the Chapter 11 Case without the prior written consent of the Lenders, without any cure right;

(iv) American Unagi grants or consents to any lien in the Chapter 11 Case equal or senior to the liens of MCB or FAME (other than the liens securing the DIP Loan) without the prior written consent of the Lenders, without any cure right;

(v) Dismissal of the Chapter 11 Case or conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code without the prior written consent of the Lenders, without any cure right; or

(vi) American Unagi defaults pursuant to the terms and conditions of any cash collateral order entered by the Court or cash collateral agreement or stipulation approved by the Court unless said default is timely cured in accordance with the applicable cash collateral order, agreement, or stipulation.

(b) <u>Effect of Event of Default</u>. Upon the occurrence of an Event of Default, American Unagi shall have no further right to request or receive draws on the DIP Loan or to use cash collateral. Any Party shall have the right to seek relief from the bankruptcy court, including on an expedited or emergency basis, and to object to any request for relief.

(c) The Parties obligations under this Agreement shall automatically terminate immediately upon payment in full of all obligations owed to the Lenders, <u>provided</u> that the protections granted to the Lenders under Section 2(f) above and in any orders related to cash collateral and the DIP Loan, shall remain valid, binding, and enforceable.

7. <u>Amendments and Waivers</u>. Except as otherwise expressly set forth herein, this Agreement may not be waived, modified, amended, or supplemented except in a writing signed by all Parties.

8. <u>Governing Law; Jurisdiction; Waiver of Jury Trial</u>.

(a) This Agreement shall be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the Bankruptcy Code and the laws of the State of Maine, without giving effect to the conflict of laws principles thereof.

(b) Each of the Parties irrevocably agrees that any legal action, suit, or

Docusign Envelope ID: 768E8EB1-BDAA-48A1-835A-9042CB458760

Case 25-10180    Doc 16-1    Filed 10/01/25    Entered 10/01/25 15:23:06    Desc Exhibit
A - Restructuring Support Agreement and First Amendment    Page 8 of 11

*Execution Version*

proceeding (each, a "**Proceeding**") arising out of or relating to this Agreement brought by any Party or its successors or assigns shall be brought and determined in any federal or state court in the State of Maine, <u>provided</u> that if the Chapter 11 Case is commenced, any Proceeding must be brought in the Bankruptcy Court.

(c)    EACH PARTY HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER THEORY).

9.    <u>Prior Negotiations; Entire Agreement</u>.  This Agreement constitutes the entire agreement of the Parties, and supersedes all other prior negotiations, with respect to the subject matter hereof and thereof.

10.    <u>Counterparts</u>.  This Agreement may be executed in several counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be one and the same agreement.  Execution copies of this Agreement delivered by facsimile or PDF shall be deemed to be an original for the purposes of this paragraph.

11.    <u>Settlement Discussions</u>.  This Agreement is part of a proposed settlement of matters that could otherwise be the subject of litigation among the Parties. Pursuant to Rule 408 of the Federal Rules of Evidence, any applicable state rules of evidence, and any other applicable law, foreign or domestic, this Agreement and all negotiations relating thereto shall not be admissible into evidence in any Proceeding other than a Proceeding to enforce its terms.

12.    <u>No Solicitation; Adequate Information</u>.  This Agreement is not and shall not be deemed to be a solicitation for votes for the acceptance of a plan for the purposes of the Bankruptcy Code or otherwise or a solicitation to tender or exchange any securities.

*[SIGNATURE PAGE FOLLOWS]*

*Execution Version*

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and delivered by their respective duly authorized officers, solely in their respective capacity as officers of the undersigned and not in any other capacity, as of the date first set forth above.

**American Unagi, LLC**

Date: 9/24/2025

By: *Sara Rademaker*
Name: Sara Rademaker
Title: CEO

**Maine Community Bank**

Date: 9/24/2025

By: *Karl Suchecki*
Name: Karl Suchecki
Title: EVP

**Finance Authority of Maine**

Date: 9/24/2025

By: *Christopher Roney*
Name: Christopher Roney
Title: General Counsel

Docusign Envelope ID: 054EED0C-406C-4D3E-A1B8-3517DC376846

Case 25-10180   Doc 16-1   Filed 10/01/25   Entered 10/01/25 15:23:06   Desc Exhibit
A - Restructuring Support Agreement and First Amendment   Page 10 of 11

*Execution Version*

# FIRST AMENDMENT TO RESTRUCTURING SUPPORT AGREEMENT

This FIRST AMENDMENT TO RESTRUCTURING SUPPORT AGREEMENT (this "**Amendment**") is entered into by and among: (i) American Unagi, LLC ("**American Unagi**"), (ii) Maine Community Bank (including as successor to Gorham Savings Bank, "**MCB**"), and (iii) Finance Authority of Maine ("**FAME,**" together with MCB, the "**Lenders**").  The Lenders and American Unagi are each referred to herein as a "**Party**" and, collectively, as the "**Parties**."

**WHEREAS**, on or about September 23, 2025, the Parties entered into that certain Restructuring Support Agreement (the "**RSA**"); and

**WHEREAS**, the Parties desire to amend the RSA as set forth in this Amendment.

**NOW**, **THEREFORE**, the Parties hereby agree as follows:

1. The second **WHEREAS** clause on Page 1 of the RSA is deleted in its entirety and replaced as follows:

> "**WHEREAS**, as of September 23, 2025, the balance owed under the MCB Term Loan was **$2,543,403.50** (exclusive of costs of collection), and the balance owed under the MCB LOC was **$2,342,216.61** (exclusive of costs of collection); and"

2. Except as set forth in Paragraph 1 of this Amendment, all other terms of the RSA shall remain in full force and effect.

3. Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the RSA.

4. This Amendment may be executed in several counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be one and the same agreement.  Execution copies of this Amendment delivered by facsimile or PDF shall be deemed to be an original for the purposes of this paragraph.

*[Signature page to follow]*

Docusign Envelope ID: 054EED0C-406C-4D3E-A1B8-3517DC376846

Case 25-10180    Doc 16-1    Filed 10/01/25    Entered 10/01/25 15:23:06    Desc Exhibit
A - Restructuring Support Agreement and First Amendment    Page 11 of 11

*Execution Version*

IN WITNESS WHEREOF, the Parties have caused this Amendment to be executed and delivered by their respective duly authorized officers, solely in their respective capacity as officers of the undersigned and not in any other capacity, as of the date first set forth above.

**American Unagi, LLC**

Date: 9/29/2025

By: *Sara Rademaker*

Name: Sara Rademaker

Title: CEO

**Maine Community Bank**

Date: 9/29/2025

By: *karl Suchecki*

Name: Karl Suchecki

Title: EVP

**Finance Authority of Maine**

Date: 9/29/2025

By: *Christopher Roney*

Name: Christopher Roney

Title: General Counsel