*RELIEF REQUESTED WITHOUT A HEARING*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>AMERICAN UNAGI, INC.,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 25-10180 |

**APPLICATION OF THE DEBTOR FOR ORDER PURSUANT TO §§ 327 AND 328 OF THE BANKRUPTCY CODE AUTHORIZING EMPLOYMENT OF CORPORATE FINANCE ASSOCIATES NEW ENGLAND, LLC AND CORPORATE FINANCE SECURITIES, INC. AS BUSINESS BROKER AND TRANSACTION ADVISOR TO THE DEBTOR, EFFECTIVE AS OF THE PETITION DATE**

American Unagi, Inc., the above-captioned debtor and debtor-in-possession (the "**Debtor**"), hereby move this Court (the "**Application**"), for entry of an order, pursuant to §§ 327 and 328 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 9013-3 of the Local Rules of the United States Bankruptcy Court for the District of Maine (the "**Local Rules**"), authorizing the employment of Corporate Finance Associates New England, LLC and Corporate Finance Securities, Inc. (collectively, "**CFA**"), as business broker and transaction advisor for the Debtor, effective as of the Petition Date (defined below). Simultaneously with the filing of this Application, the Debtor is filing the Declaration of Peter Moore in support hereof (the "**Moore Declaration**"), which is attached hereto as **Exhibit A** and incorporated herein by reference. In further support of the Application, the Debtor states as follows:

---

[1] The last four digits of American Unagi, Inc.'s federal taxpayer identification number are 5308, and its principal place of business is 186 One Pie Road, Waldoboro, Maine 04572.

1

## JURISDICTION, VENUE AND STATUTORY BASIS

1. The United States District Court for the District of Maine (the "**District Court**") has original, but not exclusive, jurisdiction over the Debtor's chapter 11 case pursuant to 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157 and Rule 83.6 of the District Court's local rules, the District Court has authority to refer and has referred this proceeding to this Court.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court has constitutional authority to enter final judgment in this proceeding.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1408, and venue over this proceeding is proper in this district pursuant to 28 U.S.C. § 1409.

4. The predicates for the relief sought herein are §§ 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rule 2014 and 2016, and Local Rules 2014-1 and 9013-3.

## BACKGROUND

5. On September 29, 2025 (the "**Petition Date**"), the Debtor commenced its chapter 11 case by a filing voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.

6. The Debtor continues to operate its business and manage its property as debtor and debtor-in-possession. To date, no operating trustee, examiner, or statutory committee has been appointed in the case by the United States Trustee.

## RELIEF REQUESTED

7. Subject to the approval of this Court, the Debtor seeks to employ CFA to serve as its business broker and transaction advisor, and to provide necessary, related broker services in connection with the Debtor's going concern sale strategy in the bankruptcy case, upon the terms set forth in the engagement agreement (the "**Engagement Agreement**") attached to the Moore Declaration as **Exhibit 3** and incorporated herein by reference.

2

## BASIS FOR RELIEF

### A. Legal Standard

8. Section 327(a) of the Bankruptcy Code provides that a debtor-in-possession is authorized to employ one or more professionals who do not hold or represent an interest adverse to the estate and that are "disinterested persons," as that term is defined in § 101(14), to represent or assist the debtor in carrying out its duties under the Bankruptcy Code. See 11 U.S.C. §§ 101(14), 327(a). Section 328(a) of the Bankruptcy Code provides that professionals employed pursuant to section 327(a) may be employed "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." See id. § 328(a).

### B. Background and Services to be Provided by CFA

9. The Debtor retained CFA on or about September 19, 2025, to provide marketing and sale services for the Debtor's strategy of executing a going concern sale of some or all of the Debtor's assets. The Debtor selected CFA because of CFA's extensive experience, through Peter Moore, in running sale processes for businesses in Maine and elsewhere, and on its track record and reputation concerning the marketing and sale of businesses and their assets. Accordingly, the Debtor submits that CFA is well qualified to provide the necessary broker services in the case.

10. Further, the services to be provided by CFA are set forth in more detail in the Engagement Agreement and include (without limitation) the following:

    (a)    Conduct such investigation and analysis as CFA considers appropriate with respect to the business and operations of the Debtor and of the industry and markets in which it serves.

    (b)    Develop a list of potential buyers, investors, and other parties, including those provided by the Debtor.

    (c)    Prepare an up-to-date Confidential Information Memorandum ("**CIM**") and other evaluation material as is customary.

(d) Contact buyers via written or email communication, telephone calls and/or in person, and provide the CIM and other materials to those potential buyers.

(e) Solicit written offers from buyers outlining a range of value, terms of a sale or investment, sources of funding, and timeline for completion of a transaction.

(f) When appropriate, arrange and participate in visits to the Debtor's headquarters and operating facilities by selected buyers, and make such introductions and perform such services as CFA believes desirable to develop buyers' interest in the business.

(g) Assist the Debtor in negotiations with buyers.

(h) Assist the Debtor in analyzing transaction proposals as received.

(i) Assist the Debtor in executing a "Letter of Intent" that outlines the specific value and terms of a transaction.

(j) Assist the Debtor in managing the due diligence process.

(k) Assist the Debtor in the negotiation and execution of the final definitive agreements and in the closing of the transaction.

**C.  CFA is Disinterested and Does Not Have Any Adverse Interests.**

11. Except to the extent connections are disclosed in the Moore Declaration, CFA does not have any connection with, or any interest adverse to, the Debtor, its creditors, any other party in interest, their respective attorneys and accountants (to the extent known), the United States Trustee, or persons known to CFA as employees of the Office of the United States Trustee. Accordingly, the Debtor believes that CFA does not hold or represent any interest adverse to the Debtor's estate and is a "disinterested person" as that phrase is defined in Bankruptcy Code § 101(14), as modified by § 1107(b).

**D.  Arrangement for Compensation and Reimbursement of Expenses**

12. CFA did not hold a claim against the Debtor as of the Petition Date.

13. The Debtor proposes to pay CFA in this case as follows, as set forth in the Engagement Agreement, and as subject to Court approval following a fee application:

4

    (a)    A non-refundable Engagement and Marketing Work Fee of **$30,000.00** (the "**Work Fee**"), payable as follows:

        (i)    Upon the signing and acceptance of the Engagement Agreement, the Debtor shall pay to CFA **$7,500.00**;[2]

        (ii)    After the date of acceptance by the Debtor, the Debtor shall make three payments of **$7,500.00** each – 30, 60, and 90 days respectively, following the date of acceptance of the Engagement Agreement.

    (b)    CFA will be reimbursed for actual out-of-pocket expenses of the engagement such as travel and lodging (the "**Expense Reimbursement**"). Expenses exceeding **$250.00** will require pre-approval by the Debtor.

    (c)    When each of the Transaction(s) (defined below) are closed, the Debtor agrees and covenants to pay CFA a success fee (the "**Success Fee(s)**") in cash equal to **5.25%** of the Transaction Value (defined below). The minimum Success Fee shall be $**225,000.00**.

14.    The following terms are defined in the Engagement Agreement as follows:

    (a)    **Transaction**: The sale, or recapitalization of the Debtor, and/or its assets, including joint venture interests, and land purchase options, to a strategic or financial buyer or investor target, in one or a series of transactions, on behalf of the Debtor.

    (b)    **Transaction Value**: The total value of and/or all consideration, including cash, securities or interests, loan proceeds, notes, security rights, escrow amounts, contingent payments, or other property, paid or received or to be paid or received, directly or indirectly, by the Debtor or any of its equity holders as consideration for the sale of the assets or securities of the Debtor in connection with a Transaction. Moreover, "**Transaction Value**" also means any and all consideration received by the Debtor, including cash, lines of credit, capital equipment, any assets and all other types of consideration or value received by the Debtor arising directly or indirectly from various forms of senior secured debt, junior debt, mezzanine, asset based loans, capital or operating leases, the full term value of real estate leases, mortgage financing, construction loans, bridge loans, high yield debt and any or all forms of unsecured debt, among any and all other forms of debt.

15.    The Debtor submits that the Work Fee, Expense Reimbursement, and Success Fee(s) structure is reasonable given CFA's experience, knowledge of the Debtor's business, and

---

[2] The amount of $7,500 was paid by the Debtor to CFA prior to the Petition Date.

5

the scope of services to be provided, and this Court should approve the fee structure, subject to a determination of the final amounts to be paid upon application for allowance of compensation.

16. In accordance with Local Rule 2014-1(c), the Debtor states that CFA's compensation will depend on the outcome of the sale process, so an estimate cannot be provided at this time.

17. Further, the Debtor highlights the following additional provisions in the Engagement Agreement:

    (a)     **Term**: The engagement will continue for an initial period of six (6) months from the date of the Engagement Agreement, which period shall be automatically extended for successive thirty (30) day periods unless either party provides written notice to the other of its intent not to extend the period.

    (b)     **Termination**: Either party may terminate the engagement at any time by providing at least thirty (30) days prior written notice of the termination.

    (c)     **Tail**: In the event any Transaction is consummated within a period of twenty-four (24) months subsequent to the termination of the engagement, with one or more parties on CFA's "**Target List**" (as evidenced by a list of such targeted parties to be delivered by CFA within twenty (20) days following the termination of the Engagement Agreement), the Debtor shall pay to CFA the Success Fee (as described above) with respect to such Transaction(s).

    (d)     **Limitation of Liability**: The Debtor agrees that CFA will not be liable to the Debtor for any claims, losses, damages, liabilities, costs or expenses related to the engagement for any amounts in excess of any compensation paid to CFA by the Debtor hereunder, except to the extent finally judicially determined to have resulted from the gross negligence or willful misconduct of CFA. In no event will CFA be liable for consequential, special, indirect, incidental, punitive or exemplary losses, damages, or expenses.

    (e)     **Indemnification**: The Debtor agrees to indemnify and hold harmless CFA and its respective control persons, directors, officers, employees and agents to the fullest legal extent against any and all claims, losses, damages, liabilities, costs and expenses as incurred (including all reasonable fees and disbursements of counsel) in connection with any pending or threatened claim, litigation or other proceeding, arising out of or related to any actual or proposed Transaction or CFA's engagement hereunder; provided, however, there shall be excluded from such indemnification any such

claims, losses, damages, liabilities, costs or expenses that is found in a final judicial determination to constitute willful misconduct or gross negligence on the part of CFA. In no event will the Debtor be liable for consequential, special, indirect, incidental, punitive or exemplary losses, damages, or expenses to CFA.[3]

18. The indemnification provisions were negotiated between the Debtor and CFA at arm's length, and the Debtor respectfully submits that the indemnification provisions are reasonable and in the best interests of the Debtor, its estate, and creditors. Accordingly, as part of this Application, the Debtor requests that this Court approve the indemnification provisions.

E. **CFA's Retention Should be Effective as of the Petition Date.**

19. Local Rule 2014-1(b)(2) provides that "[i]f an application to retain a chapter 11 professional is filed within 30 days of the petition, the order authorizing retention will be effective as of the filing of the petition." Here, CFA began working for the Debtor prior to the Petition Date, and CFA continued that work through the beginning of the case. The Debtor is filing this Application within 30 days of the Petition Date, and, pursuant to Local Rule 2014-1(b)(2), the Court should make CFA's retention retroactive to the Petition Date.

F. **No Duplication with Other Professionals**

20. The Debtor will seek to retain additional professionals in this case, including Bernstein, Shur, Sawyer & Nelson, P.A., as general bankruptcy counsel. The Debtor does not believe that CFA's services will overlap with or duplicate the services of any other retained professional in this case. CFA, moreover, will take all appropriate steps to avoid unnecessary and wasteful duplication of efforts by any other professionals retained in the chapter 11 case, and all professional fees will remain subject to review by this Court and parties in interest.

---

[3] The Engagement Agreement contains an arbitration provision. As set forth in the proposed order filed with this Application, the Debtor requests that this Court maintain exclusive jurisdiction to resolve any dispute with the Debtor arising under or related to CFA's engagement or the Engagement Agreement.

7

## NOTICE

21. Notice of this Application shall be served in the manner set forth in the certificate of service.

## CONCLUSION

22. Based on the foregoing, the Debtor requests that this Court enter an order authorizing the employment of CFA as its business broker and transaction advisor on the terms set forth herein, the Engagement Agreement (as may be modified by the Order granting this Application), and in the proposed form of order filed herewith, and that any and all fees and expenses to be paid in this proceeding shall be approved by this Court in accordance with the Bankruptcy Code and any other applicable orders of this Court.

Date: October 6, 2025

Respectfully submitted,

**BERNSTEIN, SHUR, SAWYER & NELSON, P.A.**

/s/ Adam R. Prescott
Adam R. Prescott, Esq.
D. Sam Anderson, Esq.
100 Middle Street
PO Box 9729, Portland, Maine 04104
Telephone: (207) 774-1200
Facsimile: (207) 774-1127
sanderson@bernsteinshur.com
aprescott@bernsteinshur.com

*Proposed Counsel to the Debtor and Debtor in Possession*