**Exhibit A**
**Declaration**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>**AMERICAN UNAGI, INC.,**<br><br>Debtor.[1] | **Chapter 11**<br><br>**Case No. 25-10180** |

**DECLARATION OF PETER MOORE IN SUPPORT OF APPLICATION OF THE DEBTOR FOR ORDER PURSUANT TO §§ 327 AND 328 OF THE BANKRUPTCY CODE AUTHORIZING EMPLOYMENT OF CORPORATE FINANCE ASSOCIATES NEW ENGLAND, LLC AND CORPORATE FINANCE SECURITIES, INC. AS BUSINESS BROKER AND TRANSACTION ADVISOR TO THE DEBTOR, EFFECTIVE AS OF THE PETITION DATE**

I, Peter Moore, declare (this "**Declaration**"), pursuant to § 1746 of title 28 of the United States Code, as follows:

1.  I am the Managing Director & Principal of Corporate Finance Associates New England, LLC and the Registered Representative & Principal of Corporate Finance Securities, Inc. (collectively, "**CFA**").

2.  I submit this Declaration in the chapter 11 case of the above-referenced debtor (the "**Debtor**") in support of the above-referenced application to employ CFA (the "**Application**").

**DISINTERESTEDNESS OF PROFESSIONAL**

3.  I am not related and, to the best of my knowledge, no other professional at CFA is related, to any United States Bankruptcy Judge in this District or the United States Trustee for this District or any employee thereof.

4.  In accordance with Local Rule 2014-1:

    (a)  Based on CFA's conflicts search conducted to date and described herein, to

---

[1] The last four digits of American Unagi, Inc.'s federal taxpayer identification number are 5308, and its principal place of business is 186 One Pie Road, Waldoboro, Maine 04572.

1

    the best of my knowledge, neither I, nor CFA, nor any member thereof, insofar as I have been able to ascertain, holds an interest adverse to the Debtor, its creditors, or any other party in interest, or their respective attorneys and accountants. CFA's connections with creditors and other parties in interest are disclosed below; CFA believes that none of those connections is disqualifying under the applicable statutes and rules.

 (b) I am, and each member of CFA is, a "disinterested person" as that term is defined in § 101(14) of the Bankruptcy Code, as modified by § 1107(b) of the Bankruptcy Code, in that CFA and its employees and members:

  (i) are not creditors, equity security holders, or insiders of any of the Debtor; and

  (ii) are not and were not, within two (2) years before the date of filing of the Debtor's case, directors, officers, or employees of the Debtor.

5. CFA has conducted a search of its records for any connections to the persons and entities listed on **Exhibit 1** attached to this Declaration, which comprises secured creditors, accounts payable parties, taxing authorities, and utility providers relating to the Debtor. The information listed on **Exhibit 1** may be updated or may change during the pendency of the bankruptcy case. I will update this Declaration when necessary and promptly after I become aware of additional material information.

6. CFA discloses the following connections with the entities listed on **Exhibit 1**:

 (a) CFA maintains a copier lease through Wells Fargo.

 (b) CFA's Evan Keefer is a client of Wipfli.

7. With respect to the entities listed on **Exhibit 1**, CFA has not and will not represent such party in any matters related to these bankruptcy case. Moreover, in the past, CFA may have served as a professional person in matters wholly unrelated to the Debtor or the bankruptcy case (including the chapter 11 case of Cozy Harbor Seafood and affiliates), in which many other attorneys, accountants, and other professionals of the Debtor, creditors, or other parties in interest also may have served or serve as professional persons. I do not believe any of these ordinary

2

interactions constitute conflicts.

## SCOPE OF ENGAGEMENT

8. CFA began working for the Debtor on or about September 19, 2025, and has provided broker services to the Debtor since that time. CFA proposes to provide the services to the Debtor as set forth in the Application and the Engagement Agreement.

## PROFESSIONAL COMPENSATION

9. CFA does not hold a claim against the Debtor as of the Petition Date.

10. My biography is attached as **Exhibit 2** to this Declaration.

11. With respect to fees and expenses incurred after the Petition Date, the Debtor proposes to pay CFA the amounts set forth in the engagement agreement attached hereto as **Exhibit 3** (the "**Engagement Agreement**"), provided that **$7,500.00** the non-refundable Work Fee (as defined in the Engagement Agreement) was paid prior to the Petition Date.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: October 6, 2025                                    /s/ *Peter Moore*
                                                          Peter Moore

**Exhibit 1**
**Searched Parties**

A&L Laboratory
Aca Freight Forwarding Inc.
Alpha Chemical Services Inc.
Americold Logistics
Apsara Research LLC
Araho Transfer
Barbara Lamont
Beaver Enterprises Inc.
Berkshire Refrigerated Warehousing, LLC
Central Maine Power
Charlie Walsh
Chris Herring
Clark Interim LLC
Coastal Enterprises, Inc.
Comerica Bank & Trust NA
Dale Newell
David Stein and Elizabeth March
Dead River Company
Delaware Secretary of State
DFI, LLC
Dirigo Angel Fund I LLC
Drew Sawyer Trust
Elizabeth A. Rademaker & Edward G. Rademaker
Elizabeth C. Saltonstall
EMEC North America Corp.
ERGOS Technology Partners, Inc.
Eric D. Lister, Trustee of the Eric D. Lister Amended and Restated Living Trust
FFE Transportation Services Inc.
Finance Authority of Maine
Fortunat and Shoshana Mueller
Frank Simon II
G & H Wood Products
Gartley & Dorsky Engineering Surveying
General Alum New England Corp
Geraldine R. Canning
Glen Melvin
HARCROS CHEMICALS INC.
Heidi Hood Sappier
Humana Insurance
Ice Cube Logistics LlC-FR1
Indian Township Enterprises, LLC
Interstate Septic Systems Inc.
Jack Downing
James B. Wyeth
James P. Wyeth
Jamie Robbins
John Gavin Watson
John W. Taylor
Joseph Drago Consulting
Jumo Process Control Inc.

```
June Sleeper
Karl Nicholas
Katahdin Analytical Services LLC
Katherine Pope
Kathleen Marciano
Kennebec River Biosciences, Inc.
Lance Geidel
Lou Dana
Maine Community Bank
Maine Environmental Lab Inc.
Maine Oxy
Maine Printing and Embroidery
Malli Gero & Michael Gero
Margaret W. & Christopher Bradley
Mark S Dvorozniak, Trustee of the Mark S. Dvorozniak Trust
Matthew Dana
Memic
Mid-Coast Energy Systems, Inc.
Modern Pest Services LLC
Mook Sea Farm Inc.
Nationwide Insurance
Nextgen Hanson, LLC
O'Hara Corporation
One Group d/b/a Thomas Gregory Associates
PackEdge
Parramatt, LLC
Pavan Enterprises, LLC
ReVision Community Impact Partners LLC
Richard McGoldrick
Ripcord Consulting LLC
Robert G. Hirsch & Kathleen Hirsh
Robert H Gordon
Robert T. Kelley
Roberts Chemical Co. Inc.
Ruprecht - Kilcoy Global Foods
RuralWorks Impact Partners 1, L.P.
Rustin Taylor
Sandra Stone
Sara Rademaker
Shelly Geidel
Small Enterprise Growth Fund d/b/a Maine Venture Fund
Stanley Chao
Stephen M Stroud Trust for Descendents (dated 12/12/12)
Subchapter V Trustee Tanya Sambatakos
Suzanne Smith
Tablecloth Inc.
Tony Dana
Town of Waldoboro
Travis Atwood
Uline
```

Victoria Sorobasin
Viridian Law
Water Quality & Compliance Services, Inc.
Wells Fargo
Wipfli LLP

## Exhibit 2
## Biography

Peter Moore is the Managing Director and Principal of the Portland, Maine, Corporate Finance Associates office. His career spans over 48 years of business experience including 18 years as a corporate banker involving positions with Chemical Bank, New York (now part of J.P. Morgan Chase), several predecessors of Bank of America, the last as a Senior Vice President-Commercial Banking of Fleet Bank. For the last 20 years his focus has been primarily sell-side M&A advisory assignments and financing business growth strategies. This includes extensive experience working with strategic and financial buyers of businesses, and institutional and private capital sources, structuring financing and building long lasting relationships for clients and capital providers alike.

Peter's industry experience is extensive and includes, among others, working with telecommunications, cellular phone, radio and television, electronics, hospitals, health care administration, nursing homes, heavy manufacturing, ship building, boat manufacturing, specialty metal products manufacturing, furniture and wood products manufacturers, food wholesalers and processors, restaurants, retailing, agriculture, lumber mills, concrete products industry, aquaculture, aviation and avionics, real estate development, project financing, professional service firms, specialty laboratories, and much more.

He currently divides his time between client-based M&A advisory services, capital raising for growth-oriented companies, established manufacturing and distribution firms, and real estate project finance clients, throughout New England.

Peter is a member of the Board of Directors of Corporate Finance Associates Worldwide, Inc. (CFAW, Inc.), and a Board Member of Corporate Finance Securities, Inc. a captive broker-dealer affiliated with CFAW, Inc. trade organizations.

Peter is a 1975 graduate of St. Michael's College, Winooski, VT. He has completed graduate studies at Pace University, New York and The University of Southern Maine, Portland, Maine. He holds the FINRA Series 7, 24, 63, 79 and 99 securities licenses.

**Exhibit 3**
**Engagement Agreement**

One Union Street, Ste. #400
Portland, ME 04101

E: pmoore@cfaw.com  M: 207-712-0720

September 9, 2025

Sent Via Email

*Supersedes All Previous Draft Versions*

Sara Rademaker
Founder and Chief Executive Officer
American Unagi, Inc.
183 One Pie Road, Waldoboro, ME 04572
or
P.O. Box 81, Thomaston, ME 04861

*Re*: **Engagement for the Sale of American Unagi, Inc.**

Dear Sara,

This letter agreement confirms our understanding of the engagement of **Corporate Finance Associates New England, LLC** ("Advisor"), and **Corporate Finance Securities, Inc.** ("Broker", and together, referred to herein as "Consultant") by **American Unagi, Inc.** ("AUI"), a Delaware Corporation and/or any of AUI's affiliates, owners, subsidiaries and assignees/designees, (together hereafter referred to as the "Company") as exclusive advisor to the **Company** in connection with the sale, or recapitalization of the **Company,** and/or its assets, including joint venture interests, and land purchase options, to a strategic or financial buyer or investor target, in one or a series of transactions, on behalf of the **Company** (the "Transaction(s)").

*Services:*

Accordingly, the Company is engaging Consultant to perform the services on the following matters (hereinafter defined as the "Services"). Consultant and the Company agree as follows:

Consultant will provide the following services in connection with this engagement:

a. Conduct such investigation and analysis as the Advisor considers appropriate with respect to the business and operations of the Company and of the industry and markets in which it serves.

b. Develop a list of potential buyers, investors, and other parties, including those provided by the Company.

c. Prepare an up-to-date Confidential Information Memorandum ("CIM") and other evaluation material as is customary or as Advisor considers appropriate in the circumstances, describing the Company, its history, the nature of its operations, and such financial and business information as may be appropriate to reflect Company's past performance and future potential.

d. Contact buyers via written or email communication, telephone calls and/or in person, and provide the CIM and other materials to those potential buyers.

e. Solicit written offers ("Indications of Interest") from buyers outlining a range of value, terms of a sale or investment, sources of funding, and timeline for completion of a transaction.

f. Summarize the Indications of Interest for the Company, including background information on each buyer.

g. When appropriate, arrange and participate in visits to the Company's headquarters and operating facilities by selected buyers, and make such introductions and perform such services as Advisor believes desirable to develop buyers' interest in the business.

*Corporate Finance Associates - Securities Offered Through Corporate Finance Securities, Inc.
Registered Broker-Dealer – Member FINRA/SIPC*

One Union Street, Ste. #400
Portland, ME 04101

E: pmoore@cfaw.com    M: 207-712-0720

h. Assist the Company in negotiations with buyers.

i. Assist the Company in analyzing Transaction proposals as received.

j. Assist the Company in executing a "Letter of Intent" that outlines the specific value and terms of a Transaction.

k. Assist the Company in managing the due diligence process.

l. Assist the Company in the negotiation and execution of the final definitive agreements and in the closing of the Transaction.

m. Engage in the above activities with promptness, courtesy, punctuality and professionalism.

In addition to the above listed activities Consultant will undertake the following general activities:

n. Advisor and Company will enter into a process with targeted strategic and financial buyers. The process is meant to establish a level of interest and positions with various targets on different structures and pricing and, upon review and approval by the Company, prospectively close a Transaction(s) with one or more of these targeted opportunities.

o. Advisor will review all information provided by Company, including: a completed management questionnaire, financial statements, projections as appropriate, among other related pertinent information as may be reasonably necessary and/or requested by targeted investors or buyers.

p. Upon review and approval by the Company, of the Advisor's marketing presentation materials, Advisor will proceed to market with a targeted process, including without limitation, with one or more of the following types of qualified targets: private equity; family offices, industry strategic buyers, or other financial buyers ("Target(s)").

*Compensation*:

a. The Company agrees and covenants to pay Advisor a non-refundable Engagement and Marketing Work Fee of $30,000 (the "Work Fee"), payable as follows:
1.) Upon the signing and acceptance of this Agreement, Company shall pay Advisor $7,500.00
2.) After the date of acceptance by the Company, Company shall make three payments of $7,500.00 each - 30, 60, and 90 days respectively, following the date of acceptance of this engagement.

b. Advisor will be reimbursed for actual out-of-pocket expenses of the engagement such as travel and lodging. Expenses exceeding $250.00 will require pre-approval by the Company.

c. All payments and expense reimbursements due hereunder shall be made by wire transfer or direct deposit, or as otherwise mutually agreed to by both Advisor and Company.

d. When each of the Transaction(s) are closed, the Company agrees and covenants to pay Consultant a Success Fee (the "Success Fee(s)") in cash equal to 5.25% of the Transaction Value. The minimum Success Fee shall be $225,000.00

e. **Special Fee Adjustment Provision:**
The Consultant and the Company hereby mutually acknowledge that the Company has been engaged in discussions, prior to the date of this engagement agreement, with a limited number of prospective investors or buyers (the "Pre-engagement Prospects"), identified by name and contact information in Exhibit A attached to this agreement. The Company wishes to exhaust the possibilities of crafting and/or completing either a strategic sale with one or a combination of the Pre-engagement Prospects.

One Union Street, Ste. #400
Portland, ME 04101

E: pmoore@cfaw.com  M: 207-712-0720

Now therefore, the Consultant and the Company hereby agree that the Company shall grant to the Consultant, the responsibility of continuing to explore and negotiate a transaction with one or more of the Pre-engagement Prospects, and exhaust the potential of entering into such transaction(s) concurrent with Consultant's efforts to conduct a market-wide M&A process for the sale or recapitalization of the Company.

In the event that one of the Pre-engagement Prospects enters into a letter of intent, with exclusivity provisions, within 30 days following the date of this engagement agreement (the "Engagement Date"), Consultant hereby agrees, that upon closing of such transaction(s), Consultant will reduce the Success Fees and Bonus Success Fees by 15% of the stated fee amount described herein, for one or a series of transactions with one or more of the Pre-engagement Prospects. Any transactions initiated by Letter of Intent or equivalent non-binding agreement after the first 30 days following the Engagement Date, shall be subject to the regular stated Success Fees.

As used in this letter agreement, the "Transaction Value" means, without duplication, the total value of and/or all consideration, including cash, securities or interests, loan proceeds, notes, security rights, escrow amounts, contingent payments, or other property, paid or received or to be paid or received, directly or indirectly, by the Company or any of its equity holders as consideration for the sale of the assets or securities of the Company in connection with a Transaction.  Moreover, "Transaction Value" also means any and all consideration received by the Company, including cash, lines of credit, capital equipment, any assets and all other types of consideration or value received by the Company arising directly or indirectly from various forms of senior secured debt, junior debt, mezzanine, asset based loans, capital or operating leases, the full term value of real estate leases, mortgage financing, construction loans, bridge loans, high yield debt and any or all forms of unsecured debt, among any and all other forms of debt.

Any Fee, a portion of which is attributable to a Transaction involving a security, as defined by the Securities Act of 1933, shall be paid to directly to Broker. Any other fees shall be paid to Advisor.

*Term:* This engagement will commence on the date of this letter agreement and continue for an initial period of six (6) months, which period shall be automatically extended for successive thirty (30) day periods unless either party provides written notice to the other of its intent not to extend the period.

Either party may terminate the engagement at any time by providing at least thirty (30) days prior written notice of the termination. Further, in the event any Transaction is consummated within a period of twenty four (24) months subsequent to the termination of this letter agreement, with one or more parties on the Advisor's Target List (as evidenced by a list of such targeted parties to be delivered by Advisor within twenty (20) days following the termination of this letter agreement), the Company shall pay to Advisor the Success Fee (as described above) with respect to such Transaction(s).

*Use of Information:* The Company will furnish (or will cause others to furnish) to Advisor such information regarding the Company as Advisor requests for purposes of performing the Services (the "Information").  The Company hereby agrees and represents, to the best of its knowledge, that all Information furnished to Advisor will be accurate and complete in all material respects at the time provided, and that, if the Company is aware of any Information becoming materially inaccurate, incomplete or misleading during the engagement hereunder, the Company will promptly advise Advisor. The Company recognizes and confirms that Advisor assumes no responsibility for the accuracy and completeness of the Information, including all information received from the potential purchasers, and will be using and relying on such information (as well as information available from generally recognized public sources) without assuming responsibility for independent verification or independent evaluation thereof.

*3 of 6*

*Corporate Finance Associates - Securities Offered Through Corporate Finance Securities, Inc.
Registered Broker-Dealer – Member FINRA/SIPC*

One Union Street, Ste. #400
Portland, ME 04101
E: pmoore@cfaw.com    M: 207-712-0720

***Confidentiality:*** The Company further acknowledges that any service, information or advice provided by Advisor to the Company in connection with this engagement is for the confidential use of the board or senior management of the Company and its advisors, in relation to the Transaction, and may not be disclosed or referred to publicly or to any third party, without the prior written consent of Advisor, which consent will not be unreasonably withheld. Advisor will treat confidentially all non-public information relating to the Company provided by the Company to Advisor during this engagement.  Both parties may release information otherwise treated as confidential (a) required in order to perform Services hereunder, including disclosing such information to its officers, employees, agents and other representatives as necessary, (b) such information becomes publicly available other than by disclosure by such party in violation of the terms hereof or (c) otherwise required by law or judicial or regulatory process.

All records, files, financial statements, client and customer lists, brochures, documents and the like relating to the Company or the business of the Company which shall come into Advisor's possession shall remain and be deemed to be the sole property of the Company and Advisor shall promptly return same upon the Company's request. All Presentation Materials shall be deemed the sole property of the Advisor, only to be used in accordance with the proposed activities of this engagement. This confidentiality provision shall supersede any preexisting Confidentiality Agreement.

***Limitation of Liability:*** The Company agrees that Advisor will not be liable to the Company for any claims, losses, damages, liabilities, costs or expenses related to the engagement for any amounts in excess of any compensation paid to Advisor by the Company hereunder, except to the extent finally judicially determined to have resulted from the gross negligence or willful misconduct of Advisor. In no event will Advisor be liable for consequential, special, indirect, incidental, punitive or exemplary losses, damages or expenses.

***Indemnification:*** The Company agrees to indemnify and hold harmless Consultant and their respective control persons, directors, officers, employees and agents ("Indemnified Parties") to the fullest legal extent against any and all claims, losses, damages, liabilities, costs and expenses as incurred (including all reasonable fees and disbursements of counsel) in connection with any pending or threatened claim, litigation or other proceeding, arising out of or related to any actual or proposed Transaction or Consultant's engagement hereunder; provided, however, there shall be excluded from such indemnification any such claims, losses, damages, liabilities, costs or expenses that is found in a final judicial determination to constitute willful misconduct or gross negligence on the part of Consultant. In no event will the Company be liable for consequential, special, indirect, incidental, punitive or exemplary losses, damages, or expenses to Consultant.

***Special Condition(s)***: The Company and Consultant mutually acknowledge that the Company is in the process of committing to a Chapter 11 Bankruptcy petition filing, during the month of September 2025.  Therefore, both parties acknowledge that the continuation and operation of this Agreement will be subject to the approval of the presiding Bankruptcy Court. Furthermore, any marketing outreach effort, by Consultant, for the sale of the Company or its respective assets, shall not commence unless and until the Company has fully secured and accepted, a heretofore discussed Debtor In Possession ("DIP") financing commitment, of at least $500,000.00, from Maine Community Bank, or another financial institution acceptable to the Advisor. The purpose of the DIP financing is to provide the Company with sufficient working capital to sustain the business operations of the Company during the engagement period, and allowing for a reasonable period of time for Consultant to run the M&A process as outlined above.

*4 of 6*

*Corporate Finance Associates - Securities Offered Through Corporate Finance Securities, Inc.
Registered Broker-Dealer – Member FINRA/SIPC*

One Union Street, Ste. #400
Portland, ME 04101

E: pmoore@cfaw.com   M: 207-712-0720

**_Miscellaneous:_** This Agreement will be governed by and construed in accordance with the applicable substantive laws of the **State of Maine**. This letter agreement will be governed by and construed in accordance with procedural laws/rules of the American Arbitration Association ("AAA Arbitration") in the case of disputes between the parties herein. The Company hereby irrevocably consents to personal jurisdiction and venue of AAA Arbitration in **Portland, Maine** for the purposes of any claim, action or other proceeding arising out of this letter agreement, except for breaches of confidentiality, which is brought by or against the Company, and hereby irrevocably covenants and agrees that all claims, actions or proceedings shall be heard and determined by AAA Arbitration.

The Company may not assign, transfer or subcontract any rights or obligation hereunder to any other third parties, without the prior written consent of Advisor, such consent not to be unreasonably withheld. The Company confirms that it will rely on its own counsel, accountants and other similar expert advisors for legal, accounting, tax and other similar advice. In the event of consummation of any Transaction, Advisor shall have the right, subject to the approval of the Company, not to be unreasonably withheld, to disclose its participation in such Transaction in its firm marketing material, provided that such marketing material shall not disclose the value of the Transaction without the consent of the Company.

This engagement letter agreement may not be amended or modified except in writing signed by the Company and Advisor. All rights, liabilities and obligations hereunder will be binding upon and inure to the benefit of the Company, Advisor, each Indemnified Party and their respective successors and permitted assigns.

The provisions relating to the payment of compensation, Work Fees, Success Fees, reimbursement of expenses, limitation of liability, indemnification and contribution, confidentiality and dispute resolution will survive the expiration or any termination of this Agreement.
Every provision of this letter agreement is intended to be severable. If any term or provision hereof is illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the validity or legality of the remainder of this letter agreement. This engagement letter agreement may be signed in counterparts.

Please confirm our mutual understanding and acceptance of this engagement letter agreement by signing and returning to us a duplicate copy of this letter agreement via USPS, PDF or email. We look forward to working with you for a successful engagement.

*This Space Deliberately Left Blank*
*Signatures on the following page*

5 of 6

*Corporate Finance Associates - Securities Offered Through Corporate Finance Securities, Inc.*
*Registered Broker-Dealer – Member FINRA/SIPC*

One Union Street, Ste. #400
Portland, ME 04101
E: pmoore@cfaw.com  M: 207-712-0720

Very truly yours,

**Advisor, Corporate Finance Associates New England, LLC**
d/b/a Corporate Finance Associates
**Peter G. Moore**

_____
Its Managing Director and Principal

**Broker: Corporate Finance Securities, Inc.**
**Peter G. Moore**

> Broker is a Delaware "C" Corp and a FINRA-registered Broker-Dealer.

_____
Its Registered Representative and Principal

**Company Acceptance:**

If the foregoing is satisfactory to you please indicate your acceptance by signing in the appropriate places below and returning an executed copy of this letter agreement to Corporate Finance Associates, One Union Street, Suite #400, Portland, ME 04101 or via PDF email to Peter G. Moore at pmoore@cfaw.com, together with your check for $7,500.00 payable to Corporate Finance Associates New England, LLC:

**American Unagi, Inc.**

Agreed to and accepted as
Of the above date hereof by the Company:

_____
**Sara Rademaker, Chief Executive Officer**

6 of 6

*Corporate Finance Associates - Securities Offered Through Corporate Finance Securities, Inc.
Registered Broker-Dealer – Member FINRA/SIPC*