UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>**AMERICAN UNAGI, INC.,**[1]<br><br>Debtor. | **Chapter 11**<br><br>Case No. 25-10180 |

**ORDER (A) APPROVING BID PROCEDURES, (B) SCHEDULING AUCTION AND SALE HEARING, (C) APPROVING FORM AND MANNER OF NOTICE THEREOF, (D) APPROVING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (E) GRANTING RELATED RELIEF**

The Debtor has filed a motion [Docket No. 16] (the "**Motion**") in connection with the potential sale (the "Sale") of substantially all of the Debtor's assets.[2] This Court has reviewed the Motion and has heard the statements in support of the bid procedures relief requested therein at a hearing on October 16, 2025. The legal and factual bases set forth in the Motion and at the hearing establish just cause for granting certain requested relief, as detailed in this order (the "Bid Procedures Order").

**THE COURT FINDS THAT:**

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law.

B. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

C. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

D. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The last four digits of American Unagi, Inc.'s federal taxpayer identification number are 5308, and its principal place of business is 186 One Pie Road, Waldoboro, Maine 04572.
[2] Capitalized terms used as defined terms herein, but not otherwise defined, shall have the meanings ascribed to such terms in the Motion or the Bid Procedures, as applicable.

E.    Good and sufficient notice of the request to approve the Bid Procedures and the hearing was sufficient under the circumstances, and such notice complied with the applicable requirements under the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice need be provided as to the relief herein.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

1. The Motion is **GRANTED** as to the Bid Procedures relief as set forth herein.

2. The Bid Procedures, attached hereto as **Exhibit 1**, are approved and are incorporated into this Order. The Bid Procedures shall govern the terms on which the Debtor will proceed with the Auction and/or Sale.

3. Bids for the Assets, as well as the deposit and the other requirements for a bid to be considered a Qualified Bid (as defined in the Bid Procedures), must be received by no later than **November 18, 2025** (the "**Bid Deadline**"). The Bid Deadline may not be extended without further order of this Court for good cause shown.

4. The Debtor shall conduct the Auction at **10:00 a.m. on November 20, 2025, at Bernstein Shur, 100 Middle Street, Portland, Maine**, or such other time on such day or other place as this Court may direct through a further order. The Debtor is authorized, subject to the terms of this Order and the Bid Procedures, to take all actions reasonably necessary to conduct and implement the Auction.

5. Only Qualified Bidders, as determined in accordance with the Bid Procedures, shall be entitled to make any bids at the Auction.

6. No person or entity shall be entitled to any expense reimbursement, break-up fee, topping or termination fee, or other similar fee or payment.

7. No later than two (2) business days after entry of this Order, the Debtor shall serve on all counterparties to any executory contracts and unexpired leases (the "**Contract Counterparties**") that may be assumed by the Debtor and assigned to the Successful Bidder, which notice shall be substantially in the form attached hereto as **Exhibit 2** (a "**Cure and Possible Assumption and Assignment Notice**").

8. Objections, if any, to the cure amount set forth on the Cure and Possible Assumption and Assignment Notice or the possible assignment of an executory contract or unexpired lease (each, an "**Objection to Contract Assumption**") must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules; and (iii) be filed with the Bankruptcy Court and served so as to be actually received on or before **November 24, 2025, at 5:00 p.m.**

9. Where a Contract Counterparty files a timely Objection to Contract Assumption, the Debtor's ability to assign the executory contract or unexpired lease to the Successful Bidder shall be determined at the Sale Hearing or, as necessary, at a subsequent evidentiary hearing.

10. Within two (2) business days after the entry of this Order, the Debtor shall serve the Bid Procedures Order by first-class mail or electronic mail upon: (a) the Office of the United States Trustee for the District of Maine; (b) the holders of the 20 largest, non-insider unsecured claims against the Debtor; (c) counsel to the Official Committee of Unsecured Creditors; (d) any other parties with known secured claims against the Debtor and their counsel, if known; (e) all parties that have executed a non-disclosure agreement with the Debtor or CFA as part of the sale process; (f) the Internal Revenue Service; (g) all state and local taxing authorities with an interest in the Assets; (h) the Attorney General for the State of Maine; (i) all other known governmental agencies with an interest in the Sale and transactions proposed thereunder; (j) all other parties

known or reasonably believed to have asserted an interest in the Assets; (k) the Contract Counterparties; (l) the Debtor's insurance carriers; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002.

11. The Sale Hearing shall be conducted on **November 26, 2025, at 11:00 a.m.** The Debtor will seek entry of an order of this Court at the Sale Hearing approving and authorizing the sale of the Assets to the Successful Bidder. The Sale Hearing may be continued from time to time without further notice other than such announcement being made in open court or a notice of such continuance filed on the Court's docket.

12. Objections, if any, to the relief requested in the Motion relating to the Sale (each, a "**Sale Objection**") must: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the Bankruptcy Court; and (iv) be served so it is actually received no later than **November 24, 2025, at 5:00 p.m.** A party that fails to timely file a Sale Objection in accordance with this Order may be forever barred from objecting to the Sale, at the Sale Hearing or otherwise, to the relief requested in the Motion, or to the consummation of the Sale and the performance of the related transactions, and may be deemed to be a "consent" for purposes of § 363(f) of the Bankruptcy Code.

13. The Debtor shall file a proposed form of Sale Order and asset purchase agreement on or before **October 17, 2025**.

14. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding any provision in the Bankruptcy Rules or the Local Rules to the contrary.

15. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: October 21, 2025

_____
Michael A. Fagone
United States Bankruptcy Judge
District of Maine

**<u>Exhibit 1 to Bid Procedures Order</u>**

**Bid Procedures**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>**AMERICAN UNAGI, INC.,**[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 25-10180 |

**BID PROCEDURES**

American Unagi, Inc., the above-captioned debtor and debtor-in-possession (the "**Debtor**"), has proposed to sell substantially all of its assets (the "**Assets**"). On _____, 2025, the Bankruptcy Court entered an Order [Dkt. No. \_\_\_] (the "**Bid Procedures Order**") approving, among other things, these bid procedures for the conduct of that sale (the "**Bid Procedures**"). Pursuant to the Bid Procedures, the Debtor will determine the highest or otherwise best price for the sale of the Assets, subject to Bankruptcy Court approval, upon the following general procedures and conditions.

A. **Diligence Materials**

Corporate Finance Associates ("**CFA**"), as broker for the Debtor, has been conducting and will continue to conduct an extensive marketing process and will provide interested buyers with information related to the Bid Procedures and the Assets, including access to a data room (collectively, the "**Diligence Materials**"). To receive the Diligence Materials, a party must submit to CFA an executed confidentiality agreement, which must be based on the form confidentiality agreement supplied by the Debtor or CFA.

The Debtor and CFA will afford any interested party the time and opportunity to conduct due diligence within the deadlines set forth in these Bid Procedures. All due diligence requests shall be directed to CFA's Peter Moore (email: pmoore@cfaw.com).

The Debtor reserves the right, after consultation with the Consultation Parties (defined below), to withhold or modify any Diligence Materials that the Debtor determines in good faith are business sensitive or otherwise not appropriate for disclosure to an interested party who is a competitor, vendor, or customer of the Debtor, or is directly or indirectly affiliated with any competitor, vendor, or customer of the Debtor.

In addition, each potential bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtor, CFA, and the Consultation Parties, including

---

[1] The last four digits of American Unagi, Inc.'s federal taxpayer identification number are 5308, and its principal place of business is 186 One Pie Road, Waldoboro, Maine 04572.

so that the Debtor, CFA, and the Consultation Parties may access such bidder's qualifications for and ability to bid for the assets.

B. **Definition of Qualified Bids and the Auction Qualification Process**

For any bid to render a bidder eligible to participate at the Auction (each a "**Qualified Bid**" and a "**Qualified Bidder**"), the following requirements and conditions must be satisfied and included with such bid (collectively, the "**Bid Requirements**"):

(a) **Executed Agreement**: Each bid must be in the form of an asset purchase agreement (the "**APA**") and must include both a clean version and a comparison ("redline") version against the form asset purchase agreement to be filed by the Debtor and placed in the data room. The APA must be executed by the bidder and include a commitment to close no later than **December 5, 2025**.

(b) **Purchase Price**: Each bid must: (a) clearly specify the purchase price to be paid, assuming a purchase of the applicable Assets and assumption of the assumed liabilities (the "**Purchase Price**"); (b) identify separately any cash and non-cash components (which non-cash components shall be limited only to credit bids and assumed liabilities) of the Purchase Price in United States dollars; and (c) indicate the allocation of the Purchase Price among the applicable Assets (such as inventory, equipment, and accounts, including subsets of certain categories of Assets if required by the Debtor or by any party holding liens on such Assets).

(c) **Good Faith Deposit**: Each bid must be accompanied by a cash deposit in the amount of five percent (5.00%) of the cash portion of the Purchase Price contained in the APA, payable to an escrow account to be identified and established by the Debtor (the "**Good Faith Deposit**"). To the extent a bid is modified before, during, or after the Auction in any manner that increases the cash Purchase Price contemplated by such bid, such bidder shall increase its Good Faith Deposit so that it equals five percent (5.00%) of the increased Purchase Price.

(d) **Good Faith Offer**: Each bid must represent an irrevocable, binding, good faith, and bona fide offer to purchase some or all of the Assets identified in such bid if that bid is selected as the Successful Bid or the Backup Bid (each as defined below).

(e) **Purchased Assets and Assumed Liabilities**: Each bid must clearly provide which of the Assets the bidder seeks to acquire and which of the assumed liabilities the bidder agrees to assume.

(f) **Designation of Assigned Contracts and Leases**: Subject to the terms of the APA, each bid must identify any and all executory contracts and unexpired leases of the Debtors that the bidder wishes to be assumed and assigned to the bidder at the closing.

(g) **Corporate Authority**: Each bid must include written evidence reasonably acceptable to the Debtor demonstrating appropriate corporate or similar governance authorization of the bidder to consummate the proposed transaction; provided that if the bidder is an entity specially formed for the purpose of effectuating the sale transaction, then the bidder must furnish written evidence reasonably acceptable to the Debtor of the approval of the sale transaction by the

equity holder(s) of such bidder and any other governing body of the bidder that is required to approve the sale.

(h) **Disclosure of Identity of and Contact Information for Bidder**: Each bid must fully disclose the identity of each entity (including any equity owners, sponsors, or co-investors) that will be bidding for or purchasing the Assets or otherwise directly or indirectly participating in connection with such bid, as well as contact information for the decision-maker and counsel.

(i) **Proof of Financial Ability to Perform**: Each bid must include written evidence that the Debtor, in consultation with the Consultation Parties, reasonably concludes demonstrates that the bidder has the necessary financial ability to: (a) timely close the transaction contemplated by such bid by the date set forth in the APA; and (b) provide adequate assurance of future performance under all contracts to be assumed and assigned in such sale transaction.

(j) **Adherence to Bid Procedures**: By submitting its bid, each bidder is agreeing to abide by and honor the terms of these Bid Procedures and agrees not to submit a bid or seek to reopen the Auction after conclusion of the Auction.

(k) **Contingencies and Other Provisions**: Each bid shall not include any conditions or contingencies relating to financing, internal approvals, or the absence of any material adverse effect. Each bid shall not include any conditions or contingencies relating to due diligence.

(l) **Irrevocable**: Each bid must be irrevocable unless and until the Debtor accepts a higher bid and such bidder is not selected as the Backup Bidder, provided that if a bid is accepted as the Successful Bid or the Backup Bid, such bid shall continue to remain irrevocable, subject to the terms and conditions of these Bid Procedures.

(m) **Consent to Jurisdiction**: Each bidder must: (a) consent to the jurisdiction of the United States Bankruptcy Court for the District of Maine to enter an order or orders, which shall be binding in all respects, in any way related to the Debtor, the chapter 11 case, the Bid Procedures, the Auction, any APA, or the construction and enforcement of documents relating to any sale transaction with the Debtor; (b) waive any right to a jury trial in connection with any disputes relating to the Debtor, the chapter 11 case, the Bid Procedures, the Auction, any APA, or the construction and enforcement of documents relating to any sale transaction with the Debtor; and (c) consent to the entry of a final order or judgment by the Bankruptcy Court if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

(n) **Acknowledgement of No Collusion**: Each bid shall include a written acknowledgement from the bidder that it has not: (a) engaged in any collusion with respect to the bidding or sale of any of the Assets described herein; or (b) taken any other action to prevent a transparent and competitive auction process.

A bid received from a bidder before the Bid Deadline (below) that meets the above requirements shall constitute a Qualified Bid, as determined by the Debtor, in its reasonable business judgment, after consultation with the Consultation Parties, and such bidder shall constitute a Qualified Bidder; provided that, if the Debtor receives a Bid that is not a Qualified

Bid, the Debtor shall provide such bidder with a reasonable opportunity to remedy any deficiencies prior to the start of the Auction.

The Debtor, in consultation with the Consultation Parties, may accept a single Qualified Bid or multiple Qualified Bids for non-overlapping material portions of the Assets such that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders will be treated as a single Qualified Bidder for purposes of selecting the Successful Bid; provided that the Debtor also reserves the right to conduct more than one sale process or Auction with respect to non-overlapping material portions of the Assets).

### 1. Bid Deadline

The Debtor must receive any Qualified Bid in writing, and in compliance with the Bid Requirements, on or before **November 18, 2025,** or such later date as may be ordered by the Bankruptcy Court (the "**Bid Deadline**"). Bids must be sent to the following by the Bid Deadline to be considered as a Qualified Bid: (a) counsel for the Debtor, Bernstein, Shur, Sawyer & Nelson, P.A., Attn: Sam Anderson and Adam R. Prescott (email: sanderson@bernsteinshur.com; aprescott@bernsteinshur.com), and (b) CFA, Attn: Peter Moore (email: pmoore@cfaw.com). The Debtor shall promptly transmit any Qualified Bid to the Consultation Parties.

Without the prior written consent of the Debtor, in consultation with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase its Purchase Price, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bid Procedures; provided that any Qualified Bid may be improved at the Auction as set forth in the Bid Procedures.

### 2. Credit Bid

The credit bid rights of all parties are reserved to the extent provided by § 363(k) or by separate Order of the Bankruptcy Court. All permissible credit bids shall be treated as the equivalent of a cash bid of the same amount.

Parties with a right to credit bid, including the Lenders, shall be deemed to be Qualified Bidders that have made Qualified Bids and are, therefore, entitled to participate in the sale process, including any Auction, without satisfying the Bid Requirements.

## C. Auction

### 1. Bid Assessment Criteria

If two or more Qualified Bids are received by the Bid Deadline, the Debtor will conduct an Auction to determine the highest and best Qualified Bid. The determination of the highest and best Qualified Bid shall take into account any factors the Debtor in their reasonable business judgment deem relevant to the value and certainty of the Qualified Bid to the Debtor's estate and may include, but are not limited to, the following: (a) the amount and nature of the consideration; (b) the number, type, and nature of any changes to the APA requested by each Qualified Bidder, including the Assets acquired; (c) the extent to which such modifications are likely to delay closing

of the sale transaction contemplated by such Qualified Bid and the cost to the Debtor of such modifications or delay; (d) the total consideration to be received by the Debtor; (e) any contingencies or conditions to closing the sale transaction contemplated by such Qualified Bid; (f) the likelihood of the Qualified Bidder's ability to close the sale transaction contemplated by such Qualified Bid and the timing thereof; (g) the tax consequences of such Qualified Bid; and (h) any other qualitative or quantitative factor that the Debtor deem reasonably appropriate under the circumstances (collectively, the "**Bid Assessment Criteria**").

The determination of the highest and best Qualified Bid, based on the Bid Assessment Criteria, shall be made by the Debtor in consultation with the Consultation Parties.

### 2. Location and Date of Auction

The Auction, if required, shall commence on **November 20, 2025, at 10:00 a.m. at Bernstein Shur, 100 Middle Street, Portland, Maine**. If held, the Auction proceedings shall be recorded and/or videotaped. If the Auction is not conducted, the Debtor shall file a "notice of no Auction" and other appropriate status report on or before **November 20, 2025, at 4:00 p.m.**

### 3. Attendees

Except as otherwise determined by the Debtor, only the following parties, and their respective professionals, principals, representatives, and counsel, may attend the Auction: (i) the Debtor; (ii) the U.S. Trustee; (iii) any Qualified Bidder; (iv) the Consultation Parties; (v) any party entitled to credit bid at the Auction; and (vi) any other parties that the Debtor deems appropriate, together with the professional advisors to each of the foregoing parties.

Bidders and their representatives may not communicate or coordinate with one another for purposes of submitting a bid or bids or participating in the Auction without the prior consent of the Debtor. All parties are prohibited from: (i) engaging in any collusion with respect to the bidding or sale of any of the Assets described herein; or (ii) taking any other action to prevent a transparent and competitive auction process.

Each Qualified Bidder participating in the Auction must confirm on the record at the commencement of the Auction that: (i) it has not engaged in any of the prohibited actions set forth in the immediately preceding paragraph; (ii) its Qualified Bid is a good faith bona fide offer and it intends to consummate the sale transaction contemplated by such Qualified Bid if selected as the Successful Bidder or Backup Bidder; (iii) it has reviewed, understands, and accepts the Bid Procedures; and (iv) it has consented to the core jurisdiction of the Bankruptcy Court with respect to the sale transaction, including the Bid Procedures, the Auction, any sale transaction, any APA, or the construction and enforcement of documents relating to any sale transaction (as described more fully below). All parties attending the Auction must comply with their applicable confidentiality agreements.

### 4. Conducting the Auction

The Debtor and its professionals shall direct and preside over the Auction, shall consult with the Consultation Parties throughout the Auction process, and the Auction shall be open. Other

than as expressly set forth herein, the Debtor may conduct the Auction in the manner it determines will result in the highest and best offer for the Assets so long as such conduct is not inconsistent in any material respect with the other terms and provisions of these Bid Procedures.

### 5. Auction Baseline Bid and Overbids

The Debtor will notify any Qualified Bidder participating in the Auction of the highest and best Qualified Bid received by the Bid Deadline for purposes of constituting the opening bid at the Auction (the "**Auction Baseline Bid**") and shall provide copies of the APA associated with the Auction Baseline Bid as soon as practicable prior to the commencement of the Auction.

An "**Overbid**" is any bid made at the Auction subsequent to the Debtor's announcement of the Auction Baseline Bid. Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above. Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a description of all changes requested by the Bidder to the APA. Any Overbid must remain open and binding on the bidder until: (a) the Debtor announces that it has received a higher and better Overbid; and (b) such Overbid is not selected as the Backup Bid. To the extent not previously provided, a bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor) reasonably demonstrating such bidder's ability to satisfy the bidder's obligations as set forth in the Qualified Bid requirements set forth above. Further, bidders submitting Overbids may be required to promptly top up their Good Faith Deposit to equal five percent (5.00%) of the cash Purchase Price contained in such Overbids.

### 6. Announcement and Consideration of Overbids

(a) **Announcement of Overbids**: All Overbids shall be made and received on an open basis. The Debtor shall announce at the Auction the material terms of each Overbid, the total amount of consideration offered in each such Overbid, and the basis for calculating such total consideration. The Debtor shall, after submission of each Overbid and after consultation with the Consultation Parties, promptly inform each participant in the Auction which Overbid reflects the highest and best bid. The Debtor will then solicit the next Overbid.

(b) **Consideration of Overbids**: Subject to the deadlines set forth herein, the Debtor reserves the right, in its own reasonable business judgment, and in consultation with the Consultation Parties, to make one or more continuances of the Auction to, among other things: facilitate discussions between the Debtor and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; or give Qualified Bidders the opportunity to provide the Debtor with additional evidence that the Qualified Bidder has sufficient internal resources, or has received sufficient non contingent debt and/or equity funding commitments, to consummate the proposed sale transaction at the prevailing Overbid amount.

### 7. Closing the Auction

The Auction shall continue until there is only one (1) Qualified Bid for the Assets (or one or more Qualified Bids for discrete portions of the Assets) that the Debtor determines, in its

reasonable business judgment, after consultation with the Consultation Parties, is (or are) the highest and best Qualified Bid (or Qualified Bids) at the Auction. Thereafter, the Debtor shall select such Qualified Bid(s) that is (or are) the best Qualified Bid (each such Qualified Bid, a "**Successful Bid**," and the Qualified Bidder(s) submitting any such Successful Bid(s), each a "**Successful Bidder**"), taking into account the Bid Assessment Criteria, as the winner of the Auction and, at the time of such selection, shall announce at the conclusion of the Auction the identity of the Successful Bidder(s) and the amount and material terms of the Successful Bid(s) to all attendees at the Auction.

The Auction shall not conclude until the Successful Bidder(s) submit(s) fully executed sale and transaction documents memorializing the terms of the Successful Bid(s). The Debtor shall not consider any bids or Overbids submitted after the Auction has closed, and any and all bids or Overbids submitted after the conclusion of the Auction shall be deemed untimely.

### 8. Backup Bidder

If an Auction is conducted, the Qualified Bidder(s) with the next highest and otherwise best bid to the Successful Bid(s) at the Auction for the applicable Assets, as determined by the Debtor, in the exercise of its reasonable business judgment, after consultation with the Consultation Parties, will be designated as a backup bidder (each, a "**Backup Bidder**" and such bid, the "**Backup Bid**"). The identity of the Backup Bidder(s) and the amount and material terms of the Backup Bid(s) shall be announced by the Debtor at the same time the Debtor announces the identity of the Successful Bidder(s).

The Backup Bidder(s) shall be required to keep its (or their) initial Qualified Bid(s) (or if a Backup Bidder submitted one or more Overbids at the Auction, such Backup Bidder's final Overbid) (each, a Backup Bidder) open and irrevocable until the closing of the sale transaction contemplated by the applicable Successful Bid. Notwithstanding the foregoing, any party that submitted a credit bid at the Auction shall not be required to serve as a Backup Bidder.

If a Successful Bid is terminated for any reason prior to consummation of the sale transaction contemplated thereby, the Debtor will be authorized to consummate the sale transaction contemplated by the applicable Backup Bid with the applicable Backup Bidder; provided that the Debtor shall post a notice on the docket of the chapter 11 case regarding the Successful Bid failure and the consummation of such sale transaction with the applicable Backup Bidder. In such event, the Successful Bidder's Good Faith Deposit shall be forfeited to the Debtor. The Debtor, on its behalf and on behalf of its estate, specifically reserves the right to seek all available damages, including specific performance, from any defaulting Successful Bidder in accordance with the terms of the Bid Procedures, the Bid Procedures Order, or the APA, as applicable.

### 9. Notice of Bid Results

On or before **November 20, 2025, at 11:59 p.m.**, the Debtor shall file a notice designating each Successful Bid(s) and the Backup Bid(s), if any, and the terms of each such bid. If no Successful Bid is designated as of **November 20, 2025, at 11:59 p.m.**, the Debtor shall file a notice stating such outcome.

D.  **Sale Hearing**

The Sale Hearing to consider approval of the Sale to the Successful Bidder(s) and any Backup Bidder(s) shall take place on **November 26, 2025, at 11:00 a.m.**, at the United States Bankruptcy Court for the District of Maine in Bangor, Maine. The Sale Hearing may be continued from time to time without further notice to creditors or other parties in interest other than by announcement of such continuance in open court on the date scheduled for the Sale Hearing or by filing a notice on the docket of the Debtor's chapter 11 case.

E.  **Return of Deposits**

The Good Faith Deposits of all Qualified Bidders shall be held in one or more escrow accounts by the Debtor, but shall not become property of the Debtor's estate absent further order of the Court or as set forth herein. The Good Faith Deposit of any Qualified Bidder that is neither a Successful Bidder, nor a Backup Bidder, shall be returned to such Qualified Bidder not later than two (2) business days after consummation of the Auction or upon the permanent withdrawal of the proposed sale transaction.

If a Successful Bidder timely closes the sale transaction contemplated in the Successful Bid, its Good Faith Deposit shall be credited towards the Purchase Price and become property of the estate. If a Successful Bidder (or, if the sale transaction is to be consummated with the applicable Backup Bidder, then such Backup Bidder) fails to consummate the sale transaction because of a breach or failure to perform on the part of such bidder, then the Debtor and its estate shall be entitled to retain the Good Faith Deposit of such bidder as part of the damages resulting to the Debtor and its estate for such breach or failure to perform. For the avoidance of doubt, the Debtor's retention of a Good Faith Deposit shall not constitute a waiver of any of the Debtor's legal or equitable rights relating to a Successful Bidder's or a Backup Bidder's breach or failure to perform, and all such rights and remedies are preserved.

F.  **Consultation Parties**

The terms "**Consultation Party**" or "**Consultation Parties**" shall mean: (a) the Lenders and their professional advisors and counsel; and (b) the professional advisors and counsel to the Creditors' Committee, if any. For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Bid Procedures shall not limit the Debtor's discretion in any way and shall not include the right to veto any decision made by the Debtor in the exercise of its business judgment and fiduciary obligations. Notwithstanding anything to the contrary in the Bid Procedures Order and the Bid Procedures, if a Consultation Party submits a bid at the Auction, the consultation rights of such Consultation Party shall cease, including the right to be consulted in the determination of which bids are Qualified Bids and in the selection of the Successful Bidder and Backup Bidder, <u>provided</u>, <u>however</u>, that such Consultation Party's consultation rights shall be reinstated if such Consultation Party subsequently irrevocably states on the record that it shall not submit any bid at the Auction in the future.

**<u>Exhibit 2 to Bid Procedures Order</u>**

**Cure and Possible Assumption and Assignment Notice**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MAINE

In re:

AMERICAN UNAGI, INC.,[1]

Debtor.

Chapter 11

Case No. 25-10180

### NOTICE TO COUNTERPARTIES OF POTENTIALLY ASSUMED EXECUTORY CONTRACTS OR UNEXPIRED LEASES

**PARTIES RECEIVING THIS NOTICE SHOULD: (1) READ THIS NOTICE CAREFULLY; AND (2) LOCATE THEIR NAME AND CONTRACT AND/OR LEASE ON APPENDIX I HERETO**

On _____, 2025, the United States Bankruptcy Court for the District of Maine entered an order (the "**Bid Procedures Order**"), which set dates, times, and procedures related to the sale of assets of American Unagi, Inc. (the "**Debtor**"), pursuant to an auction overseen by the Bankruptcy Court.

Approval of the sale after the auction, and the Debtor's assumption and assignment of any contracts and leases in connection therewith, will be considered at a hearing before the Bankruptcy Court in Bangor, Maine, on **November 26, 2025, at 11:00 a.m.**

**In accordance with the Bid Procedures Order, the Debtor may assume and assign executory contract(s) and/or unexpired lease(s) to which you may be a counterparty to the Successful Bidder after the outcome of the Auction.**

The Debtor has reviewed its books and records and has determined the cure amount for unpaid monetary obligations under such contracts and leases, as is set forth on Appendix I (the "Cure Amount"). If you object to the cure amount or to the possible assignment of your executory contract(s) or unexpired lease(s) as set forth in the Bid Procedures Order, you must file an objection with the Bankruptcy Court no later than **November 24, 2025, at 5:00 p.m.** (the "**Objection Deadline**") and serve such objection on the parties listed below:

| **Counsel to the Debtors** | **Counsel to Maine Community Bank and the Finance Authority of Maine** |
|---|---|
| Sam Anderson, Esq.<br>Adam Prescott, Esq.<br>Bernstein, Shur. Sawyer & Nelson, P.A.<br>100 Middle Street, PO Box 9729 | Andrew Sparks<br>Drummond & Drummond LLP<br>One Monument Way |

---

[1] The last four digits of American Unagi, Inc.'s federal taxpayer identification number are 5308, and its principal place of business is 186 One Pie Road, Waldoboro, Maine 04572.

Portland, ME 04104
sanderson@bernsteinshur.com
aprescott@bernsteinshur.com

1 Monument Square
Portland, ME 04101
asparks@ddlaw.com

Jeremy R. Fischer
Kellie W. Fisher
Drummond Woodsum
84 Marginal Way, Suite 600
Portland, ME 04101
jfischer@dwmlaw.com
kfisher@dwmlaw.com

**If you have no objection, you need not take any further action**. If you have any questions about this notice or would like to request additional documents (at no charge), please contact Adam Prescott at (207) 228-7145 or aprescott@bernsteinshur.com.

Dated: _____, 2025

Respectfully submitted,
**BERNSTEIN, SHUR, SAWYER & NELSON, P.A.**

*/s/ draft*
D. Sam Anderson
Adam R. Prescott
100 Middle Street
PO Box 9729
Portland, Maine 04104
Telephone: (207) 774-1200
Facsimile: (207) 774-1127
sanderson@bernsteinshur.com
aprescott@bernsteinshur.com

*Proposed Counsel to the Debtors and Debtors in Possession*

# APPENDIX I

## List of Proposed Assumed Contracts and Leases

*[to be updated in advance of service based on Debtor's good faith review of books and records]*