**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re: <br><br> AMERICAN UNAGI, INC.,[1] <br><br> Debtor. | Chapter 11 <br><br> Case No. 25-10180 |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER**
**DISMISSING THE DEBTOR'S**
**CHAPTER 11 CASE**

American Unagi, Inc., the above-captioned debtor and debtor-in-possession (the "**Debtor**"), in the above-captioned chapter 11 case (the "**Chapter 11 Case**") respectfully moves this Court (the "**Motion**") for entry of an order dismissing the Chapter 11 Case upon the terms set forth herein. The Debtor files this Motion following the closing of the sale of substantially all of its assets (as discussed further below) and in coordination with the filing of final fee applications. In support of this Motion, the Debtor states as follows:

**JURISDICTION AND VENUE**

1. The United States District Court for the District of Maine (the "**District Court**") has original, but not exclusive, jurisdiction over the Debtor's chapter 11 case pursuant to 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157 and Rule 83.6 of the District Court's local rules, the District Court has authority to refer and has referred this proceeding to this Court.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court has constitutional authority to enter final judgment in this proceeding.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The last four digits of American Unagi, Inc.'s federal taxpayer identification number are 5308, and its principal place of business is 186 One Pie Road, Waldoboro, Maine 04572.

**BACKGROUND**

4. On September 29, 2025 (the "**Petition Date**"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court.

5. The Debtor continues to manage its remaining property as debtor and debtor-in-possession. To date, no operating trustee or examiner has been appointed in the case by the United States Trustee.

6. The Debtor is a Waldoboro, Maine-based startup that was the only U.S. producer and processor of American eel. Prior to the Sale (defined below), the Debtor grew and sold live and value-added eel products to restaurants, other consumers, and distributors throughout the world. The business began in 2014 through raising a handful of baby eels to adult size, and in 2022, the Debtor completed construction of a multi-million dollar, 27,000-square-foot facility at the Waldoboro Business Park. The Debtor's aquaculture systems facility was the first in the United States to grow Maine eels to market size. The Debtor worked with licensed harvesters in Maine, one of only two U.S. states with an elver fishery. This provided a consistent market for local fishermen and ensures the eels come from a well-managed wild stock.

7. Prior to the Petition Date, the Debtor negotiated a Restructuring Support Agreement with Maine Community Bank ("**MCB**") and Finance Authority of Maine ("**FAME**"). Among other things, the Restructuring Support Agreement provided for MCB to offer debtor-in-possession financing to the Debtor, as well as for a going-concern marketing and sale process.

8. On October 21, 2025, this Court entered its order approving the bid procedures for the proposed sale of the Debtor's assets [Dkt. No. 95] (the "**Bid Procedures Order**"). In accordance with the Bid Procedures Order (and subsequent Court-approved extensions of certain deadlines therein), Corporate Finance Associates conducted a marketing process in advance of the bid deadline on December 23, 2025. The Debtor conducted an auction on December 29, 2025,

and at the conclusion of the auction, the Debtor announced MCB as the winning bidder based on a credit bid in the sum of $1 million. [Notice of Successful Bid, Dkt. No. 165.]

9. On January 2, 2026, the Debtor filed the proposed Asset Purchase Agreement between the Debtor and MCB [Dkt. No. 129] (the "**APA**") reflecting the terms of the proposed sale transaction (the "**Sale**"). Specifically, pursuant to the APA, the Assets (as defined in the APA) to be acquired by MCB included all equipment and furniture, inventory, accounts receivable, intellectual property, and real property improvements. The Excluded Assets (as defined in the APA) not acquired by MCB included cash sufficient to fund the remaining carve outs and the winddown budget (which, in aggregate, is estimated to equal approximately $100,000 to $110,000), chapter 5 causes of action,[2] and the Debtor's Section 366 utility deposit ($10,000).

10. On January 8, 2026, this Court conducted a sale hearing to approve the Sale to MCB in accordance with the APA. This Court entered its order approving the sale [Dkt. No. 175] (the "**Sale Order**") on January 9, 2026. The Sale closed on January 13, 2026.

11. Based on previously advanced debtor-in-possession financing and related budgets, the $50,000 winddown funds[3] under the Restructuring Support Agreement and APA, and the remaining, unused portion of the professional fee carve outs, the Debtor believes that it has, or will

---

[2] As set forth in the Debtor's statement of financial affairs [Dkt. No. 61], the Debtor disbursed $254,951.01 within the 90-days before the Petition Date (based on the applicable criteria for disbursements required to be listed). Excluding insurance, utilities, and professional service payments, only approximately $75,000 to $100,000 of payments remain, with the Debtor generally on pre-payment or cash on delivery terms with its vendors and suppliers during this period. Given the liabilities remaining, the Debtor submits that net recoveries from pursuing preference claims would be close to $0 and would provide de minimis-to-no recovery for creditors, which would not justify the cost of keeping the Chapter 11 Case open.

[3] The winddown funds are subject to MCB liens and not generally available to pay prepetition claims, but rather are available to ensure the orderly closure and dissolution of the Debtor (such as the filing of final tax returns post-dismissal).

have as of dismissal, sufficient funds to pay allowed administrative expense claims in full but no funds to pay general unsecured claims.

## RELIEF REQUESTED

4. The Debtor seeks entry of an order, substantially in the form filed herewith, dismissing the Chapter 11 Case.

## BASIS FOR RELIEF

5. Section 1112(b)(1) of the Bankruptcy Code provides that "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1).

6. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") changed the statutory language with respect to conversion and dismissal from permissive to mandatory. See H.R. Rep. No. 109-31(I), at 442, reprinted in 2005 U.S.C.C.A.N. 88, 94 (stating that the Act "mandate[s] that the court convert or dismiss a chapter 11 case, whichever is in the best interests of creditors and the estate, if the movant establishes cause, absent unusual circumstances"); see also In re TCR of Denver, LLC, 338 B.R. 494, 498 (Bankr. D. Colo. 2006) ("Congress has purposefully limited the role of this Court in deciding issues of conversion or dismissal, such that this Court has no choice, and no discretion, in that it 'shall' dismiss or convert a case under Chapter 11 if the elements for 'cause' are shown under 11 U.S.C. § 1112(b)(4).").

7. The amendments to § 1112 of the Bankruptcy Code limit the Court's discretion to refuse to dismiss or convert a chapter 11 case upon a finding of cause. See In re Gilroy, No. BAP NH 07-054, 2008 WL 4531982, at *4 (B.A.P. 1st Cir. Aug. 4, 2008). Section 1112(b)(4) of the Bankruptcy Code outlines a non-exhaustive list of grounds constituting "cause" for dismissal of a

chapter 11 case. 11 U.S.C. § 1112(b). One such ground is the "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," id. § 1112(b)(4)(A), which courts have interpreted to refer to the "debtor's ability to restore the viability of its business," Loop Corp. v. U.S. Tr., 379 F.3d 511, 516 (8th Cir. 2004) (citations omitted).

8. Courts in the First Circuit apply a two-part test to determine whether "cause" to dismiss is present; determining first whether there has been "a diminution of the bankruptcy estate" and, if so, "whether the debtor has a reasonable likelihood of rehabilitation." Andover Covered Bridge, LLC, 553 B.R. 162, 175 (B.A.P. 1st Cir. 2016). Courts may find sufficient cause if a debtor is unable to "effectuate a plan" or where there is not a "reasonable possibility of a successful reorganization within a reasonable period of time." In re Am. Capital Equip., LLC, 688 F.3d 145, 161–62 n.10 (3d Cir. 2012) ("[T]he 'inability to effectuate a plan' remains a viable basis for dismissal[.]").

9. Here, the Debtor does not have an ongoing business to rehabilitate following closing of the Sale to MCB and will experience an ongoing diminution of value due to the incurrence of administrative expenses without any corresponding revenue or assets after the Sale closes (including the end of its debtor-in-possession financing). The Debtor has no "reasonable likelihood of rehabilitation" because the Debtor has liquidated substantially all of its assets, leaving no business left to reorganize or assets for which the Debtor may maximize value by remaining in chapter 11 after closing. The Debtor, therefore, submits that cause exists under § 1112(b).

10. Once a court determines that cause exists to dismiss a debtor's chapter 11 case, the court should evaluate whether dismissal or conversion is in the best interests of the debtor's creditors and the estate. See 11 U.S.C. § 1112(b); Andover Covered Bridge, 553 B.R. at 172 ("The bankruptcy court has broad discretion to determine . . . whether conversion or dismissal is in the

5

best interest of creditors and the estate."). Courts consider a variety of factors in determining whether to dismiss or convert, including:

(a) whether some creditors received preferential payments, and whether equality of distribution is better served by conversion rather than dismissal;

(b) whether there would be a loss of rights granted if the case were dismissed;

(c) whether the debtor would simply file a further case upon dismissal;

(d) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors;

(e) in assessing the interest of the estate, whether conversion or dismissal maximizes the estate's value as an economic enterprise;

(f) whether any remaining issues would be better resolved outside of the bankruptcy forum;

(g) whether the estate consists of a "single asset";

(h) whether the debtor engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests;

(i) whether a plan has been confirmed and whether any property remains in the estate to be administered; and

(j) whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

See, e.g., In re Ramallo Bros. Printing, Inc., No. 14-01948, 2015 WL 3862970, at *2 (Bankr. D.P.R. June 22, 2015) (citing In re Costa Bonita Beach Resort, 513 B.R. 184 (Bankr. D.P.R. 2014)). Here, the above factors heavily weigh in favor of dismissal.

11. *First*, the Debtor has sold substantially all of its assets to MCB in accordance with the Sale Order and the APA. It has only de minimis assets remaining, which do not justify remaining in a bankruptcy proceeding.

12. *Second*, the Debtor does not believe that any valuable rights would be lost if the

6

Chapter 11 Case were dismissed.

13. **_Third_**, the Debtor will not file a further bankruptcy case upon dismissal, as the Debtor has liquidated its valuable assets and has no basis to file another case.

14. **_Fourth_**, there are virtually no assets for a chapter 7 trustee to administer or pursue. The Debtor has liquidated substantially all of its assets in connection with the Sale, and the purchase price was a credit bid with no cash to the Debtor's estate. A chapter 7 trustee would, therefore, incur administrative expenses that in all likelihood have no source of repayment given the lack of available cash, thus adding an additional layer of administrative expense without any attendant benefit. The chapter 5 causes of action are unlikely to generate any net value.

15. **_Fifth_**, dismissal minimizes the costs of winding down the Debtor's affairs. Following dismissal, the Debtor will be able to dissolve and address any remaining issues related to winding down its affairs under applicable non-bankruptcy law. Beyond that, there is no longer any enterprise value to preserve as of the closing.

16. **_Sixth_**, the Debtor is not aware of issues that would require oversight of this Court prior to dismissal.

17. **_Seventh_**, the Debtor has no remaining assets after the Sale that would generate positive net value for creditors.

18. **_Eighth_**, there are no allegations of misconduct or bad faith justifying the need for a chapter 7 trustee in this Chapter 11 Case. The Debtor has met its obligations as a debtor-in-possession in this case and complied with all applicable Court orders. Although the results of the Sale were disappointing, the Debtor complied with applicable orders and conducted a thorough marketing process in good faith.

19. **_Ninth_**, as noted, there will be no assets of material value in the Debtor's estate

available to be administered after the closing of the Sale.

20.     *Finally*, there are no environmental, safety, or other special concerns warranting a chapter 7 trustee based on the remaining estate assets.

21.     In sum, it is in the best interests of the estate and creditors to dismiss the Chapter 11 Case promptly. Dismissal eliminates the continued accrual of any administrative expense obligations and brings closure to the Chapter 11 Case in a timely and efficient manner. As such, the Debtor has met its burden of showing that "cause" exists to dismiss, rather than convert, the Chapter 11 Case under § 1112(b) of the Bankruptcy Code.

**C.     In the Alternative, Dismissal of the Chapter 11 Case Is Warranted Under § 305(a) of the Bankruptcy Code.**

22.     In the alternative, cause exists to dismiss the Chapter 11 Case pursuant to § 305(a) of the Bankruptcy Code. Section 305(a) permits dismissal at any time if "the interests of creditors and the debtor would be better served by such dismissal." 11 U.S.C. § 305(a)(1). Dismissal under § 305(a) requires that both creditors and the debtor benefit from the dismissal, rather than applying a simple balancing test to determine whether dismissal is appropriate. See In re Costa Bonita Beach Resort Inc., 479 B.R. at 46. As described above, cause exists for dismissal. The Debtor has sold substantially all of its assets and is unlikely to confirm a plan of liquidation (and no party would benefit from such a plan effort given the lack of assets to distribute or to fund such an endeavor). Dismissal, therefore, provides the most efficient, cost-effective method of effectuating the winddown of the Debtor and its estate.

23.     WHEREFORE, the Debtor respectfully requests entry of an order: (a) granting the relief requested herein and (b) granting such other relief as is just and proper.

| | |
|---|---|
| Dated: January 16, 2026 | Respectfully submitted,<br>**BERNSTEIN, SHUR, SAWYER & NELSON, P.A.**<br><br>*/s/ Adam R. Prescott*<br>Adam R. Prescott, Esq.<br>D. Sam Anderson, Esq.<br>100 Middle Street<br>PO Box 9729<br>Portland, Maine 04104<br>Telephone: (207) 774-1200<br>Facsimile: (207) 774-1127<br>aprescott@bernsteinshur.com<br>sanderson@bernsteinshur.com<br><br>*Counsel to the Debtor and Debtor in Possession* |